UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

    ORION HEALTHCORP, INC.

                    Debtors.

Chapter 11
Case No. 18-71748 (AST)
(Jointly Administered)

----------------------------------------------------------------x
HOWARD M. EHRENBERG IN HIS CAPACITY
AS LIQUIDATING TRUSTEE OF ORION
HEALTHCORP, INC., *et al*

                Plaintiff,

      v.

ELIZABETH KELLY; FIDELITY NATIONAL
TITLE INSURANCE COMPANY,

                Defendants.

Adv. Pro. No. 20-08048 (AST)

----------------------------------------------------------------x

## **DEFENDANT ELIZABETH KELLY'S MOTION TO DISMISS COMPLAINT**

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

PLAINTIFF'S COMPLAINT.................................................................................... 1

    Dispositive Documents and Contract  Which Plaintiff Has Intentionally Ignored
    and Omitted........................................................................................................... 4

ARGUMENT

THE ALLEGATIONS OF THE COMPLAINT AND THE DOCUMENTARY
EVIDENCE UPON WHICH IT IS BASED SHOW THAT THE COMPLAINT
FAILS TO STATE CLAIMS FOR RELIEF AND SHOULD BE DISMISSED
WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD ................................... 7

THE DISMISSAL STANDARD................................................................................ 7

I.    THE FIRST CLAIM FOR RELIEF TO RECOVER INTENTIONALLY
    FRAUDULENT TRANSFERS SHOULD BE DISMISSED........................................... 10

  A.    Plaintiff Does Not Have Bankruptcy Code §544(b) Standing To Sue Kelly
      Under The NYDCL................................................................................... 11

  B.    The Trustee Has Not Pled Actual Fraud With Particularity ............................. 12

  C.    The Escrow Funds Belonged To Kelly And Were Not The Debtors' Property ............... 15

II.    THE SECOND CLAIM FOR RELIEF TO RECOVER CONSTRUCTIVE
    FRAUDULENT TRANSFERS SHOULD BE DISMISSED........................................... 15

  A.    Plaintiff Does Not Have Bankruptcy Code §544(b) Standing......................... 16

  B.    Plaintiff Has Merely Recited The Statutes And Has Not Alleged Any Facts ................ 16

  C.    As Previously Shown, The Property Transferred Belonged To Kelly............................. 17

  D.    The Transfers Could Not Have Left NYNM Acquisition Insolvent or With
      Unreasonably Small Capital ..................................................................... 17

  E.    Kelly Provided Consideration For The Transfers ............................................. 18

III.    THE THIRD CLAIM FOR RELIEF TO SET ASIDE PREFERENTIAL
    TRANSFERS SHOULD BE DISMISSED .................................................... 18

  A.    The Debtors Had No Interest In The Transfers ............................................. 19

  B.    Kelly Was Not A Creditor For Purposes Of The Transfers Which Did Not
      Satisfy an Antecedent Debt Owed To Kelly................................................... 21

C.    The Court May Take Judicial Notice Of The Facts That Establish That NYNM Acquisition Was Not Insolvent ........................................................................... 22

D.    The Transfers Did Not Enable Kelly To Receive More Than She Would In a Chapter 7 Liquidation ..................................................................................... 23

IV.    THE FOURTH CLAIM FOR RELIEF FOR TURNOVER BY FIDELITY SHOULD BE DISMISSED ............................................................................. 23

V.    THE FIFTH CLAIM FOR RELIEF UNDER BANKRUPTCY CODE §550 SHOULD BE DISMISSED ............................................................................. 23

VI.    THE SIXTH CLAIM FOR RELIEF OBJECTING  TO KELLY'S PROOF OF CLAIM SHOULD BE DISMISSED ........................................................... 24

VII.    THE SEVENTH CLAIM FOR RELIEF SEEKING TO EQUITABLY SUBORDINATE KELLY'S CLAIM SHOULD BE DISMISSED ................................ 25

VIII.    THE EIGHTH CLAIM FOR RELIEF SEEKING A DECLARATORY JUDGMENT SHOULD BE DISMISSED ...................................................... 29

IX.    THE NINTH CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED ............................................................................. 30

CONCLUSION .................................................................................................... 35

ACA/2427996.2/068019

# **TABLE OF AUTHORITIES**

## Cases

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank*,
169 B.R. 832 (Bankr. S.D.N.Y. 1994) ............................................................26

*9281 Shore Rd. Owners Corp. v. Seminole Realty Co.*,
187 B.R. 837 (E.D.N.Y. 1995) ........................................................................27

*Abercrombie v. College*,
2006 U.S. Dist. LEXIS 39671 (S.D.N.Y. 2006) ........................................ 13, 31

*Alnwich v. European Micro Holdings, Inc.*,
281 F. Supp.2d 629 (E.D.N.Y. 2003) ...............................................................13

*Amusement Inds., Inc. v. Stern*,
693 F. Supp. 2d 301 (S.D.N.Y. 2010) ...............................................................30

*Anwar v. Fairfield Greenwich Ltd.*,
118 F Supp 3d 591 (S.D.N.Y. 2015) .................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................. 8, 16, 19

*Baranski v. NCO Fin. Sys.*,
2014 U.S. Dist. LEXIS 37880 (E.D.N.Y. 2014) ...............................................12

*Begier v. IRS*,
496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) ......................................20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................ 8, 19

*Bello v. Rockland County*,
2020 U.S. Dist. LEXIS 82468 (S.D.N.Y. 2020) ...............................................10

*Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*,
601 F. Supp. 770 (S.D.N.Y. 1985) ...................................................................32

*BLT Rest. Grp. LLC v. Tourondel*,
855 F. Supp. 2d 4 (S.D.N.Y. 2012) .....................................................................8

*Burton v. Iyogi, Inc.*,
2015 US Dist. LEXIS 33809 (S.D.N.Y. 2015) ....................................................9

*Cedar Rapids Meats, Inc. v. Hager*,
121 B.R. 562 (Bankr. N.D. Iowa 1990) .............................................................21

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ...............................................................................9

*Chorches v. Ogden*,
437 B.R. 731 (D. Conn. 2010) ..........................................................................28

*Corley v. Vance*,
365 F. Supp. 3d 407 (S.D.N.Y. 2019) ...............................................................12

*Cosoff v. Rodman*,
699 F.2d 599, 610-11 (2d Cir. 1983) ................................................................28

iii

*Cruz v. United Auto. Workers Union Local 2300*,
　2019 US Dist. LEXIS 119662 (N.D.N.Y. 2019) ................................................................. 9

*Decker v. Massey-Ferguson, Ltd.*,
　681 F.2d 111 (2d Cir. 1982) .................................................................................... 13

*DFP Mfg. Corp. v. Northrop Grumman Corp.*,
　999 U.S. Dist. LEXIS 22998 (E.D.N.Y. 1999) ............................................................. 32

*Diamond Phoenix Corp. v. Small*,
　2005 U.S. Dist. LEXIS 12798, No. Civ. 05-79, 2005 WL 1530264 (D. Me. 2005).............. 31

*DiFolco v. MSNBC Cable LLC*,
　622 F.3d 104 (2d Cir. 2010).................................................................................... 9

*DiJoseph v. Erie County*,
　2020 US Dist. LEXIS 78580 (W.D.N.Y. 2020)............................................................. 9

*Dopp v. Teachers Ins. and Annuity Ass'n of Am.*,
　1993 U.S. Dist. LEXIS 13980 (S.D.N.Y. 1993) .......................................................... 32

*Enron Corp. v. Ave. Special Situations Fund II, LP*,
　333 B.R. 205, n.44 (Bankr. S.D.N.Y. 2005) ......................................................... 26, 27

*Fernandez v. UBS AG*,
　222 F Supp. 3d 358 (S.D.N.Y. 2016) ....................................................................... 31

*Foman v. Davis*,
　371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ........................................... 10

*Frota v. Prudential-Bache Secs., Inc.*,
　639 F. Supp. 1186 (S.D.N.Y. 1986)........................................................................ 31

*Geltzer v. Lefkowitz*,
　2011 Bankr. LEXIS 1566 (Bankr. S.D.N.Y. 2011) ................................................. 34, 35

*Global Network Commc'ns, Inc. v. City of New York*,
　458 F.3d 150 (2d Cir. 2006)..................................................................................... 9

*Goldman v. Belden*,
　754 F.2d 1059 (2d Cir. 1985)................................................................................... 9

*Granda v. Trujillo*,
　2019 US Dist. LEXIS 14884 (S.D.N.Y. 2019) ...................................................... 12, 13

*H&H Envtl. Sys. v. Evanston Ins. Co.*,
　2019 US Dist LEXIS 39700 (W.D.N.Y. 2019)............................................................ 30

*Hassett v. Blue Cross and Blue Shield of Greater New York*,
　46 Bankr. 661 (Bankr. S.D.N.Y. 1985)..................................................................... 20

*Henneberry v. Sumitomo Corp. of Am.*,
　415 F. Supp. 2d 423 (S.D.N.Y. 2006)....................................................................... 32

*Henry v. Lehman Commercial Paper, Inc.*,
　471 F.3d 977 (9th Cir. 2006).................................................................................. 26

*Hill v. Curcione*,
　657 F.3d 116 (2d Cir. 2011)................................................................................... 10

iv

*Homere v. Inc. Vil. of Hempstead*,
   2019 U.S. Dist. LEXIS 36211 (E.D.N.Y. 2019 ..................................................... 31

*ICD Capital, LLC v. CodeSmart Holdings, Inc.*,
   2020 US Dist. LEXIS 28174 (S.D.N.Y. 2020) ...................................................... 31

*In re Adelphia Commc'ns Corp.*,
   365 B.R. 24 (Bankr. S.D.N.Y. 2007) ................................................................... 29

*In re Brown Schools*,
   368 B.R. 394 (Bankr. D. Del. 2007) ................................................................... 12

*In re Brunson*,
   486 B.R. 759 (Bankr. N.D. Tex. 2013) ............................................................... 25

*In re Coco*,
   67 B.R. 365 (Bankr. S.D.N.Y. 1986) ................................................................. 20

*In re Envirodyne Indus., Inc.*,
   79 F.3d 579 (7th Cir. 1996) ............................................................................... 26

*In re Fabricators, Inc.*,
   926 F.2d 1458 (5th Cir. 1991) ........................................................................... 26

*In re Gorman*,
   495 B.R. 823 (Bankr. E.D. Tenn. 2013) ............................................................ 25

*In re Johnson*,
   No. 12-02072-TLM, 2012 Bankr. LEXIS 5231 (Bankr. D. Idaho 2012) .......................................... 25, 26

*In re Kincaid*,
   388 B.R. 610 (Bankr. E.D. Pa. 2008) ................................................................ 25

*In re Mobile Steel Co.*,
   563 F.2d 692 (5th Cir. 1977) ............................................................................. 27

*In re Newcomb*,
   744 F.2d 621 (8th Cir. 1984) ............................................................................. 20

*In re Oakwood Homes Corp.*,
   325 B.R. 696 (Bankr. D. Del. 2005) ................................................................. 12

*In re Pace*,
   456 B.R. 253 (Bankr. W.D. Tex. 2011) .............................................................. 24

*In re Platinum-Beechwood Litig.*,
   377 F. Supp. 3d 414 (S.D.N.Y. 2019) ............................................................... 32

*In re Pursley*,
   451 B.R. 213 (Bankr. M.D. Ga. 2011) .............................................................. 25

*In re R's Prepared Foods*,
   251 B.R. 24 (Bankr. D. Conn. 2000) ................................................................. 27

*In re Rehman*,
   479 B.R. 238 (Bankr. D. Mass. 2012) ........................................................... 25, 26

*In re Reynolds*,
   470 B.R. 138 (Bankr. D. Colo. 2012) ........................................................... 25, 26

ACA/2427996.2/068019

*In re Sabine Oil & Gas Corp.*,
  547 B.R. 503 (Bankr. S.D.N.Y. 2016) ................................................................ 29

*In re Simon*,
  606 B.R. 695 (Bankr. W.D. La. 2019) ................................................................ 25

*In re Stephenson*,
  2019 Bankr LEXIS 980 (Bankr. W.D. La.2019) ................................................ 25

*In re Tatro*,
  2015 Bankr LEXIS 1648 (Bankr. W.D.N.Y. 2015) ............................................ 25

*In re Thelen LLP v. Seyfarth Shaw LLP*,
  736 F.3d 213 (2d Cir. 2013) ................................................................................ 9

*Intellectual Capital Partner v. Institutional Credit Partners LLC*,
  No. 08-CV-10580, 2009 U.S. Dist. LEXIS 58768, 2009 WL 1974392 (S.D.N.Y. 2009) ..................... 30

*Jansson v. Stamford Health, Inc.*,
  2017 U.S. Dist. LEXIS 51767 (D. Conn. 2017) ................................................ 10

*Kalisch v. Maple Trade Fin. Co.*,
  413 B.R 115 (Bankr. S.D.N.Y. 2008) ................................................................ 28

*Katchadurian v. NGP Energy Capital Mgmt., LLC*,
  2020 Bankr. LEXIS 1081 (Bankr. S.D. Tex. 2020) .......................................... 24

*Khatibi v. FIA Card Servs., N.A.*,
  2014 U.S. Dist. LEXIS 79873 (Bankr. M.D. Ga. 2014) .................................... 25

*Knopf v. Meister, Seelig & Fein, LLP*,
  2016 U.S. Dist. LEXIS 37079  (S.D.N.Y. 2016) .............................................. 13

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2013) .............................................................................. 31

*Kurtzman v. Bergstol*,
  40 A.D.3d 588, 835 N.Y.S.2d 644 (2d Dept. 2007) ........................................ 32

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ................................................................................ 8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir.2015) .............................................................................. 13

*Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Socy. of NY, Inc.*,
  2012 US Dist LEXIS 95693, S.D.N.Y. 2012) .................................................. 30

*Lucente v. Int'l Bus. Machs. Corp.*,
  310 F.3d 243 (2d Cir. 2002) .............................................................................. 10

*Lyme Regis Partners, LLC v. Icahn*,
  2011 Bankr LEXIS 1025 (Bankr. S.D.N.Y.  2011) .......................................... 27

*Maalouf v. Salomon Smith Barney, Inc.*,
  2003 U.S. Dist. LEXIS 5913 (S.D.N.Y. 2003) ................................................ 33

*MC Asset Recovery, LLC v. Southern Co.*,
  No. 1:06-CV-0417-BBM, 2006 U.S. Dist. LEXIS 97034, 2006 WL 5112612 (N.D. Ga. 2006) ........... 11

*Meisel v. Grunberg*,
    651 F. Supp. 2d 98 (S.D.N.Y. 2009) ................................................................. 32

*Mendelsohn v. Kovalchuk*,
    585 B.R. 306 (Bankr. E.D.N.Y. 2018) .............................................................. 11

*Midlantic Nat'l Bank N., N.A. v. Borg-Warner Acceptance Corp.*,
    112 B.R. 607 (Bankr. D. Vt. 1990) ................................................................... 27

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ............................................................................. 13

*N.J. Steel Corp. v. Bank of N.Y.*,
    1997 U.S. Dist. LEXIS 18137 (S.D.N.Y. 1997) ............................................... 27

*O'Connel v. Shallo*,
    323 B.R. 101 (Bankr. S.D.N.Y. 2005) .............................................................. 34

*Official Comm. Of Unsecured Creditors of Hydrogen LLC v. Blomen*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) ....................................................... 19, 28

*O'Toole v. McTaggart*,
    466 B.R. 596 (Bankr. S.D.N.Y. 2012) .............................................................. 31

*Palmetto Partners, L.P. v. AJW Qualified Partners*,
    83 A.D.3d 804, 921 N.Y.S.2d 260 (2d Dept. 2011) ......................................... 32

*Papasan v. Allain*,
    478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ........................... 8

*Rodriguez v. Touchette*,
    2020 U.S. Dist. LEXIS 82563 (D. Vt. 2020) ................................................... 10

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ............................................................................. 13

*Rosen v. Chowaiki & Co. Fine Art*,
    593 B.R. 699 (Bankr. S.D.N.Y. 2018) ................................................................ 8

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ............................................................................. 10

*S.E.C. v. Great White Marine & Recreation, Inc.*,
    428 F.3d 553 (5th Cir. 2005) ............................................................................ 26

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972) ............................................................................. 13

*Sharp Int'l Corp. v. State Street Bank and Trust Co.*,
    403 F.3d 43 (2d Cir. 2005) ......................................................................... 13, 16

*Silverman v. 3D Total Solutions, Inc.*,
    2019 U.S. Dist. LEXIS 153048 (S.D.N.Y. 2019) ............................................. 32

*Silverman v. Sound Around, Inc.*,
    392 B.R. 24 (Bankr. E.D.N.Y. 2008) ............................................................... 12

*Solow v. Stone*,
    994 F. Supp. 173 (S.D.N.Y. 1998) ..................................................................... 8

vii

*Southmark Corp. v. Schulte, Roth & Zabel, LLP*,
   242 B.R. 330 (N.D. Tex. 1990)........................................................................24

*Spizz v. Eluz*,
   543 B.R. 464 (Bankr. S.D.N.Y. 2016) ...........................................................31

*Springel v. Robert F. Craig P.C.*,
   2013 Bankr LEXIS 1786 (Bankr. D.V.I.  2013) ............................................12

*Steinfeld v. Richard A. Eisner & Co.*,
   423 B.R. 790 (S.D.N.Y. 2010).......................................................................35

*Sure-Snap Corp. v. State Street Bank & Trust Co*.,
   948 F.2d 869 (2d Cir. 1991)...........................................................................27

*Thimbler*, *Inc. v. Unique Solutions Design, Ltd.*,
   2013 U.S. Dist. LEXIS 129912 (E.D. No. Car. W.D. 2013) .................17

*Tow v. Speer*,
   2015 U.S. Dist. LEXIS 29267 (S.D. Tex. 2015)............................................24

*Tronox Inc. v. Kerr McGee Corp.*,
   503 B.R. 239 (Bankr. S.D.N.Y. 2013) ...........................................................11

*U.S. SEC v. Spongetech Delivery Sys.*,
   98 F. Supp. 3d 530 (E.D.N.Y. 2014)..............................................................27

*United States ex rel. Raffington v. Bon Secours Health Sys.*,
   285 F. Supp. 3d 759 (S.D.N.Y. 2018)............................................................10

*Vargas Realty Enters. v. CFA W. 111 St., L.L.C.*,
   440 B.R. 224 (S.D.N.Y. 2010).......................................................................27

*Walker v. City of New York*,
   974 F.2d 293 (2d Cir. 1992).............................................................................7

*Wooley v. Faulkner*,
   532 F.3d 355 (5th Cir. 2008)..........................................................................28

*Young v. Paramount Commc'ns Inc.*,
   178 B.R. 938 (Bankr. S.D.N.Y. 1995) ...........................................................11

*Zazzali v. Hirschler Fleischer, P.C.*,
   482 B.R. 495 (D. Del. 2012) .....................................................................12, 16

## Other Authorities

Federal Rule of Bankruptcy Procedure 7012 ...........................................................1

Federal Rule of Civil Procedure 8.............................................................................1

Federal Rule of Civil Procedure 9...............................................................1, 10, 12, 13

Federal Rules of Civil Procedure 15 .......................................................................10

New York Limited Liability Company Law §102 ....................................................34

New York Limited Liability Company Law §401 ...............................................33, 34

New York Debtor & Creditor Law §272 ..................................................................16

New York Debtor & Creditor Law §274 ..................................................................16

ACA/2427996.2/068019

New York Debtor & Creditor Law §275 ............................................................................ 16

ACA/2427996.2/068019

## PRELIMINARY STATEMENT

Defendant Elizabeth Kelly ("Kelly") submits this memorandum in support of her motion to dismiss plaintiff's complaint (the "Complaint") pursuant to the Federal Rule of Civil Procedure ("FRCP") 12(b) and Federal Rule of Bankruptcy Procedure ("FRBP") 7012.[1]

As shown below, plaintiff's Complaint should be dismissed in its entirety without leave to replead because the documentary evidence referred to in, and relied upon by, the Complaint renders each of plaintiff's nine claims for relief is fatally defective.

In sum, plaintiff's Complaint fails to meet even the relaxed pleading standard under FRCP 8 much less the more stringent requirements of FRCP 9.  Plaintiff simply repeats either the elements of a claim or the provisions of the statutes under which he seeks relief without any supporting facts whatsoever.[2]  Plaintiff has failed to refer to undisputed documentary evidence in his possession and which conclusively demonstrates that his claims for relief should be dismissed with prejudice and without leave to replead.  As a general matter, the few facts that are set forth in plaintiff's Complaint are almost invariably wrong.  Under the circumstances, plaintiff's Complaint should be dismissed with prejudice and without leave to replead.

## PLAINTIFF'S COMPLAINT

### The Sparse Allegations Of Plaintiff's Complaint

Plaintiff commenced the above-captioned adversary proceeding against Kelly and Fidelity National Title Insurance Company ("Fidelity") (a) to set aside alleged actual and constructive fraudulent conveyances, (b) to set aside alleged preferential transfers, (c) for turnover and recovery

---

[1] A copy of the Complaint is annexed to the June 29, 2020 Affidavit of Elizabeth Kelly ("Kelly Affidavit") as **Exhibit 1**.

[2] For example, plaintiff's state law fraudulent conveyance claims must be dismissed because plaintiff has failed to allege the existence of a triggering creditor.

of alleged property of the estates, (d) to equitably subordinate Kelly's claim, (e) for declaratory relief, and (f) to recover for Kelly's alleged breach of fiduciary duty.

The Complaint alleges that the Debtors were a consolidated group of companies that operated several businesses in the medical field, including a physician practice management and an independent practice association business.  **Exhibit 1**, Complaint ¶12.  The Complaint further alleges that Parmjit Parmar ("Parmar"), Sotirios Zaharis ("Zaharis"), and Ravi Chivukula (Chivukula") (collectively, the "Parmar Parties"), all of whom were and are wholly unrelated to Kelly, "moved money and established off-balance sheet accounts to redirect monies of the Debtors for their own personal use" for which they were ultimately indicted by the Office of the United States Attorney.  **Exhibit 1**, Complaint ¶¶12-14.

The Complaint does ***not*** allege, nor can it, that Kelly had any involvement whatsoever in connection with the wrongdoing of the Parmar Parties, the manner in which those individuals structured the acquisition of her company, or that she benefited in any way from their activities. Rather, in an effort to bolster his bare bones Complaint, plaintiff makes those allegations in order to improperly associate Kelly with the Parmar Parties, the individuals who actually defrauded ***her,*** and who are alleged to have caused the Debtors' financial collapse.

The unvarnished facts alleged in the Complaint are that, on March 10, 2017, Kelly, together with certain of her family members, sold all of the membership interests (the "Membership Interests") of New York Network Management, LLC ("NYNM") to NYNM Acquisition LLC ("NYNM Acquisition") pursuant to a Membership Interest Purchase Agreement ("MIPA"). **Exhibit 1**, Complaint ¶16.  A copy of the MIPA is annexed to the Complaint as an exhibit to Kelly's proof of claim.  For ease of reference, the MIPA is annexed to the Kelly Affidavit as **Exhibit 2**. The Complaint also alleges that, at the closing of the MIPA on March 10, 2017, Kelly

and her family members were paid $15,589,500 for the Membership Interests and, under the MIPA, were owed additional sums and earn-outs over the following years.  **Exhibit 1**, Complaint ¶16.

The Complaint incorrectly alleges that from March 10, 2017 through her resignation from NYNM in June 2018, Kelly operated NYNM as its President and CEO.  **Exhibit 1**, Complaint ¶18. As evidenced by the Kelly Affidavit and the documentary evidence attached thereto, after NYNM was acquired, Kelly was ***never*** in control of NYNM's operations, but merely held the title of CEO only.  Kelly Affidavit at ¶6.  The Complaint alleges that Kelly was somehow an "insider" of ***all*** of the Debtors when she was only employed by, and an independent consultant of, NYNM.  **Exhibit 1**, Complaint ¶54.  Kelly Affidavit at ¶6.

It is from those basic (and often misplaced) allegations that plaintiff concludes that, within one year prior to the commencement of the "bankruptcy cases,"  "the Debtors transferred property to or for the benefit of [Kelly] in an amount not less than $5,890,00" (the "Transfers").  **Exhibit 1**, Complaint ¶19.  The Complaint lumps the Debtors into an indistinguishable group and does not even attempt to allege which of the Debtors allegedly made the Transfers.  The Complaint further alleges that on or about January 26, 2018, the Debtors transferred $1.795 million to Fidelity for Kelly's benefit.  **Exhibit 1**, Complaint ¶20.

The Complaint alleges that three (3) of the Transfers totaling $300,000 were allegedly made on March 20, 2017 to Kelly from the Chase Operating Account (the "Chase Transfers").  **Exhibit 1**, Complaint, Exhibit A.  That is simply not true.  As the documents annexed hereto as **Exhibit 11** show, only $50,000 of the Chase Transfers ***were made to Kelly***.  The remaining transfers were made on March 20, 2017 (a) in the sum of $125,000 to Aju Associates LLC, Brooklyn, NY," and (b) in the sum of $125,000 via wire transfer to "Ideal Healthcare Technologies

LLC Allendale NJ." The deposit portion of that very same bank statement shows that those exact sums, including the $50,000 paid to Kelly, were deposited into the Chase Account on March 17, 2017 and March 20, 2017 to return the erroneous payments. Kelly Affidavit at ¶7. Exhibit A to the Complaint further shows allegedly fraudulent transfers from a Wells Fargo-IOLA Account on October 12, 2017 in the sum of $2 million and on January 16, 2018 in the sum of $1,795,000 (the "Wells Fargo Transfers"). Complaint, Exhibit A. The balance of $1,795,000 was transferred by Fidelity to Kelly on January 26, 2018 (the "Fidelity Transfers"). **Exhibit 1**, Complaint, Exhibit A.

Consequently, the Chase Transfers ***were all repaid*** prior to the commencement of the adversary proceeding. Plaintiff's claims relating to the Chase Transfers should be dismissed in their entirety with prejudice and without leave to replead.

**Dispositive Documents and Contract**
**<u>Which Plaintiff Has Intentionally Ignored and Omitted</u>**

The Complaint acknowledges Kelly's $49,659,099 million proof of claim (the "Proof of Claim") and annexes it as Exhibit C. The MIPA is annexed as an exhibit to the Proof of Claim. Despite referring to the MIPA in his Complaint, plaintiff has intentionally failed (a) to refer to, or even acknowledge the existence of, the operative provisions of that document, or (b) to refer to any of the other critical operative documents that were part of NYNM Acquisition's purchase of the Membership Interests. As demonstrated below, those MIPA contract provisions and those undisclosed documents mandate the immediate dismissal of plaintiff's Complaint with prejudice and without leave to replead.

More specifically, MIPA §1.2(a) provides that the "Closing Payment" for the Membership Interests shall be $22,000,000. **Exhibit 2**. MIPA §1.2(b) provides:

The Closing Payment is payable at the Closing as follows: (i) $3,590,000 (the "Escrow Payment") will be placed in escrow with Robinson Brog Leinwand et al. (the "Escrow Agent") to be held and released pursuant to an escrow agreement (the "Escrow Agreement") to be entered into at the closing amount Buyer, the Selling Member Representative and the Escrow Agent (the monies held from time to time by the Escrow Agent pursuant to the Escrow Agreement are referred to as the "Escrow Fund"), substantially in the form annexed hereto as Exhibit 1.2(a), (ii) such amount required to be placed in escrow (the "Second Escrow Payment") pursuant to the order issued by the Supreme Court of the State of New York in the Matter of New York Network Management LLC against Kevin Kelly and Auciello Law Group LC (such order, as it may be amended, the (Order") will be placed in escrow with Holland & Knight LLP (the "Second Escrow Agent") to be held and released pursuant to an escrow agreement (the "Second Escrow Agreement") to be entered into at the closing among the Selling Member Representative and the Second Escrow Agent (the monies held from time to time by the Second Escrow Agent pursuant to the Second Escrow Agreement are referred to as the "Second Escrow Fund") substantially in the form annexed hereto as Exhibit 1.2(b), (iii) $2,000,000 (the "Third Escrow Payment") will be placed in escrow with the Escrow Agent to be held and released pursuant to an escrow agreement (the "Third Escrow Agreement") to be entered into at the Closing among the Selling Member Representative and the Escrow Agent (the monies held from time to time by the Escrow Agent pursuant to the Third Escrow Agreement are referred to as the "Third Escrow Fund"), substantially in the form annexed hereto as Exhibit 1.2(c), the remaining amount of the Closing Payment (the "Non-Escrowed Closing Payment") will be paid to the Selling Members in immediately available funds by wire transfer to accounts designated by the Selling Member Representative in writing to Buyer no later than three (3) Business Days before the Closing Date.

**Exhibit 2**, MIPA at page 2 (emphasis in original omitted).  Copies of the fully executed First Escrow Agreement, Second Escrow Agreement, and Third Escrow Agreement are annexed to the Kelly Affidavit as **Exhibits 3**, **4**, and **5**, respectively.

Again, although not pled by plaintiff, the MIPA further provides for the release of the escrow funds as follows:

The Escrow Fund shall be disbursed as follows: (i) an amount equal to fifty percent (50%) of the Escrow Payment less the aggregate amount of indemnity and offset payments made to Buyer pursuant to the terms hereof and any other bona fide claims of Buyer to indemnity or offset

hereunder (to the extent such claims, if any remain unresolved) will be paid to the Selling Member Representative on the nine (9) month anniversary of the Closing Date in accordance with the Escrow Agreement; and (ii) the remainder of the Escrow Payment less the aggregate amount of indemnity and offset payment made to Buyer pursuant to the terms hereof and any other bona fide claims of Buyer to indemnity or offset hereunder (to the extent such claims, if any, remain unresolved) will be paid to the Selling Member Representative on the first anniversary of the Closing Date in accordance with the Escrow Agreement. The Second Escrow Fund shall be disbursed in accordance with the Second Escrow Agreement. The Third Escrow Fund shall be disbursed in accordance with the Third Escrow Agreement.

**Exhibit 2**, MIPA at page 2.

Under the First Escrow Agreement, the sum of $3,950,000 was placed in escrow with Robinson Brog Leinwand Green Genovese & Gluck P.C. ("Robinson Brog") on March 10, 2017 in order to satisfy any potential indemnification claims under the MIPA. *See* **Exhibit 3**. On January 16, 2018, Robinson Brog released the sum of $1,795,000 to Kelly. *See* Kelly Affidavit, **Exhibit 6**. By Escrow Agreement dated January 22, 2018, the parties removed Robinson Brog as Escrow Agent and replaced it with Fidelity. *See* **Exhibit 7**.

Although contained in the closing documents for the NYNM acquisition, the Complaint does not even refer to, much less include, Kelly's (a) March 10, 2017 resignation as a manager, director, officer, and managing member of NYNM and its related entities, (b) March 10, 2017 Consulting Agreement with NYNM, and (c) March 1, 2017 Employment Agreement with NYNM.

Kelly's resignation, which is annexed to the Kelly Affidavit as **Exhibit 8**, provides that effective March 10, 2017, Kelly resigned "as a manager, director, officer and managing member, as applicable, of New York Network Management, L.L.C., a New York limited liability company" and multiple related entities.

Kelly's Employment Agreement with NYNM (**Exhibit 9** to the Kelly Affidavit) provides that Kelly shall "serve as the Chief Executive Officer of" NYNM and shall "provide such services

to [NYNM] and its subsidiaries and affiliates (the "Company Group") as Paul Parmar or his successors as the Chief Executive Officer of Constellation Healthcare Technologies, Inc. (the 'CHT CEO') may reasonably determine from time to time."   The Employment Agreement provides that Kelly "shall at all times exercise [Kelly's] commercially reasonable best efforts to promote the success of the Company Group and to discharge [Kelly's] duties and responsibilities in a commercially reasonable manner."   Kelly's annual base salary under her Employment Agreement was $50,000.  **Exhibit 9**.

Finally, Kelly's Consulting Agreement (**Exhibit 10** to the Kelly Affidavit) provides that Kelly, as an independent contractor, will perform sales and growth strategy services for NYNM "as Paul Parmar or his successors as the Chief Executive Officer of Constellation Healthcare Technologies, Inc. (the 'CHT CEO') may reasonably determine from time to time."

Based upon the foregoing documentary facts, plaintiff's Complaint should be dismissed with prejudice and without leave to replead.

## ARGUMENT

### THE ALLEGATIONS OF THE COMPLAINT AND THE DOCUMENTARY EVIDENCE UPON WHICH IT IS BASED SHOW THAT THE COMPLAINT FAILS TO STATE CLAIMS FOR RELIEF AND SHOULD BE DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD

### THE DISMISSAL STANDARD

Federal Rule of Bankruptcy Procedure Rule 7012(b) makes Federal Rule of Civil Procedure Rule 12(b)(6) applicable to adversary proceedings.   On a FRCP 12(b)(6) motion to dismiss for failure to state a claim for relief, a court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992).  However, the court it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.

Ct. 2932, 92 L. Ed. 2d 209 (1986).  "Threadbare recitals of the elements of a cause of action supported by conclusory statements" do not constitute sufficient factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Co. Fine Art)*, 593 B.R. 699, 710-12 (Bankr. S.D.N.Y. 2018).

As Bankruptcy Judge Vyskocil stated in *Chowaiki* "[a] complaint states a claim that is facially plausible when the factual content pleaded therein is sufficient to "allow[ ] the  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 711.  The plausibility standard is not akin to a probability requirement but requires more than a sheer possibility that a defendant has acted unlawfully.  *Id*. at 711.  (quoting *Twombly*, 550 U.S. at 557).  "Plausibility" involves a number of considerations, including (a) the full factual picture presented by the complaint and the particular cause of action and its elements, and (b) the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citing *Iqbal*, 129 S. Ct. at 1947-52).  Courts are "not required to draw unreasonable inferences or to credit legal conclusion[s] at odds with the plaintiff's own factual allegations."  *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012) (quoting *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y. 1998).

Although a FRCP 12(b)(6) motion is addressed to the face of the pleading, the Court is permitted to consider extrinsic evidence without converting a motion to dismiss into a motion for summary judgment.  A court may do so when the extrinsic evidence consists of (a) documents attached as an exhibit to the complaint or answer, (b) documents incorporated by reference in the

complaint (and provided by the parties), (c) documents that, although not incorporated by reference, are "integral" to the complaint, or (d) any matter of which the court can take judicial notice for the factual background of the case. *See DiJoseph v. Erie County*, 2020 US Dist. LEXIS 78580, at *9-10 (W.D.N.Y. 2020); *Cruz v. United Auto. Workers Union Local 2300*, 2019 US Dist. LEXIS 119662, at *40-41 (N.D.N.Y. 2019); *see also In re Thelen LLP v. Seyfarth Shaw LLP*, 736 F.3d 213, 219 (2d Cir. 2013); *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985). Documents are integral to the complaint when the complaint relies heavily on their terms and effect. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). However, even if a document is integral to the complaint, no dispute must exist concerning its accuracy, authenticity, or relevance. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *see also Cruz*, 2019 US Dist. LEXIS 119662 (N.D.N.Y. 2019)

The exception is generally applied when the incorporated material is a contract or other legal document containing obligations on which the plaintiff's complaint stands or falls, "but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Burton v. Iyogi, Inc.*, 2015 US Dist. LEXIS 33809, at *9-10 (S.D.N.Y. 2015).

Here, the MIPA, the First Escrow Agreement, the Second Escrow Agreement, the Third Escrow Agreement, and the other documents related to Kelly's sale of NYNM to NYNM Acquisition as well as the Debtors' financial and bank account information are all integral to plaintiff's Complaint. Those documents are not in dispute with respect to their accuracy, authenticity, or relevance and should be considered by the Court in connection with Kelly's motion to dismiss. Nevertheless, those and other documents were omitted from the Complaint because

they severely undermine all nine of plaintiff's claims for relief.  For the reasons set forth below, the Complaint does not state claims for relief and should be dismissed in its entirety with prejudice and without leave to replead.[3]

## I.

### THE FIRST CLAIM FOR RELIEF TO RECOVER
### INTENTIONALLY FRAUDULENT TRANSFERS SHOULD BE DISMISSED

Plaintiff's first claim for relief seeks to set aside the Transfers allegedly made to Kelly as "intentionally fraudulent" under Bankruptcy Code §548 and the New York Debtor & Creditor Law ("NYDCL") §276.  The infirmities with plaintiff's first claim for relief are extensive and pervade the entirety of the Complaint.

In summary, the NYDCL portion of the first claim for relief should be dismissed because the Complaint does not allege the existence of the requisite "triggering creditor" under Bankruptcy Code §544.  Further, the Complaint does not identify which of the "Debtors" made the alleged transfers and wholly fails to plead a claim for an actual fraudulent conveyance with the necessary particularity under FRCP 9(b).  The Complaint is devoid of any specific allegations of fraudulent intent or any reference to any "badges of fraud."  The Transfers to Kelly were not the Debtors' property but rather were part of the MIPA purchase price that had been held in escrow for Kelly's

---

[3] Federal Rules of Civil Procedure 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend may "properly be denied for ... 'futility of amendment.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Rodriguez v. Touchette*, 2020 U.S. Dist. LEXIS 82563, at *19 (D. Vt. 2020); *United States ex rel. Raffington v. Bon Secours Health Sys.*, 285 F. Supp. 3d 759, 765-66 (S.D.N.Y. 2018); *Jansson v. Stamford Health, Inc.*, 2017 U.S. Dist. LEXIS 51767, at *15-17 (D. Conn. 2017).  An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss under to Rule 12(b)(6).  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  *See also Bello v. Rockland County*, 2020 U.S. Dist. LEXIS 82468, at *17-18 (S.D.N.Y. 2020); *Anwar v. Fairfield Greenwich Ltd.*, 118 F Supp 3d 591, 598 (S.D.N.Y. 2015).  In this case, as shown below, the facts alleged by plaintiff are static and do not support plaintiff's existing claims for relief much less any future amendments.  As such, any amendment would not withstand a second dismissal motion and, therefore, would be futile.

benefit and, to the extent that they include the Chase Transfers were repaid prior to the commencement of the adversary proceeding. Finally, as the Complaint readily admits, the alleged fraudulent Transfers were not made from any accounts owned or controlled by the Debtors. Each of these fatal infirmities is addressed below.[4]

### A. Plaintiff Does Not Have Bankruptcy Code §544(b) Standing To Sue Kelly Under The NYDCL

Bankruptcy Code §544(b) authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. §544(b)(1). "In order for a trustee to maintain an action for avoidance of a fraudulent conveyance [under state law], the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law." *Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995); *see also Mendelsohn v. Kovalchuk (In re APCO Merchant Servs.)*, 585 B.R. 306, 316-321 (Bankr. E.D.N.Y. 2018); *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 275 (Bankr. S.D.N.Y. 2013); *MC Asset Recovery, LLC v. Southern Co.*, No. 1:06-CV-0417-BBM, 2006 U.S. Dist. LEXIS 97034, 2006 WL 5112612, at *3 (N.D. Ga. 2006). A "triggering" creditor is a creditor who (a) is an unsecured creditor, (b) holds an allowable unsecured claim under Bankruptcy Code §502, and (c) could avoid the transfers at issue under applicable state law. *See Mendelsohn,* 585 B.R. at 316-321. The burden is on the trustee to show that he has standing under Bankruptcy Code §544(b). *Mendelsohn,* 585 B.R. at 316-21; *Young*, 178 B.R. at 945; *Silverman v. Sound Around, Inc. (In re Allou Distribs.)*, 392 B.R. 24, 31-32 (Bankr. E.D.N.Y. 2008).

---

[4]  Additionally, it is antithetical to allege, as plaintiff does in his first three claims for relief, that the Transfers were both on account of an antecedent debt (as required by Bankruptcy Code §547) and either actually or constructively fraudulent (as required by Bankruptcy Code §548 and the NYDCL). The Transfers simply cannot be both.

The Complaint is devoid of any allegation of the existence of a "triggering creditor" under Bankruptcy Code §544(b).[5]  Consequently, plaintiff does not have standing to maintain a NYDCL claim against Kelly and that portion of his first (as well as his second) claim for relief must be dismissed.

### B.    <u>The Trustee Has Not Pled Actual Fraud With Particularity</u>

Plaintiff's Complaint is a cookie-cutter, one size fits all affair that merely parrots the language of the applicable statutes, draws conclusions, and annexes a schedule of the alleged fraudulent transfers.   That is entirely insufficient and the Complaint must be dismissed.   *See Springel v. Robert F. Craig P.C. (In re Innovative Commun. Corp.)*, 2013 Bankr LEXIS 1786, at *19 (Bankr. D.V.I.  2013); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 520 (D. Del. 2012); *In re Oakwood Homes Corp.*, 325 B.R. 696, 699 (Bankr. D. Del. 2005) (dismissing fraudulent conveyance claims when the complaint merely recited statutory language and annexed an exhibit showing alleged conveyances); *In re Brown Schools*, 368 B.R. 394, 403-04 (Bankr. D. Del. 2007) (dismissing §548(a)(1)(A) claim because complaint failed to "allege enough facts from which the Court [could] conclude that the payment was" made with required intent); *Corley v. Vance*, 365 F. Supp. 3d 407 (S.D.N.Y. 2019); *Baranski v. NCO Fin. Sys.*, 2014 U.S. Dist. LEXIS 37880 (E.D.N.Y. 2014).

An "actual" fraudulent conveyance claim must satisfy the heightened pleading standards of FRCP 9(b).   *Granda v. Trujillo*, 2019 US Dist. LEXIS 14884, at *27-29 (S.D.N.Y. 2019). FRCP 9(b) requires a plaintiff to (a) detail the events giving rise to the fraud, such as the statement/omission that is alleged to be fraudulent, the identity of the speaker, the location of the

---

[5] Kelly does not believe that a triggering creditor existed, or even could have existed, at the time of the Transfers because NYNM Acquisition is the only one of the Debtors to have made any payments to Kelly.  As set forth in section 6.4 of the Debtors' confirmed chapter 11 plan (ECF Doc. No. 645), NYNM Acquisition was a "shell company" which had no creditors (other than Kelly for her post-closing earn-out).

fraud, and the reason the statement is fraudulent and (b) allege facts "that give rise to a strong inference of fraudulent intent."[6]  *See generally Abercrombie v. College*, 2006 U.S. Dist. LEXIS 39671 at *83 (S.D.N.Y. 2006) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Knopf v. Meister, Seelig & Fein, LLP*, 2016 U.S. Dist. LEXIS 37079 (S.D.N.Y. 2016), *aff'd*, 721 F. App'x 96 (2d Cir. 2018).  *See also Granda v. Trujillo*, 2019 US Dist. LEXIS 14884, at *27-29; *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir.2015).

When pleading actual intent to hinder, delay, or defraud creditors, the plaintiff may rely on "badges of fraud" to support the case.  *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).  Those "badges" include (a) "a close relationship between the parties to the alleged fraudulent transaction," (b) "a questionable transfer not in the usual course of business," (c) "inadequacy of the consideration," (d) "retention of control of the property by the transferor after the conveyance," and (e) "secrecy, haste, or unusualness of the transaction." *Id.*  Although a plaintiff may rely on "badges of fraud" to support a claim of actual fraudulent conveyance, here, plaintiff's allegations are too threadbare to be viewed as even signals of fraud.  *Granda v. Trujillo*, 2019 US Dist. LEXIS 14884, at *27-29.

According to plaintiff, the basis for the allegedly "actual" fraudulent transfer to Kelly finds its origin in the MIPA which ***plaintiff*** alleges was the basis for the sale by Kelly to NYNM Acquisition. **Exhibit 1**, Complaint ¶16.  Plaintiff further alleges that the MIPA was consummated and that Kelly (and certain family members) sold and surrendered all of their Membership Interests

---

[6] Under FRCP 9(b), "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Abercrombie v. College*, 2006 U.S. Dist. LEXIS 39671 at *83. citing *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp.2d 629, 639 (E.D.N.Y. 2003) (quoting *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982)). Indeed, a complaint alleging fraud may be maintained only after a wrong is reasonably believed to have occurred and not to find one. *Abercrombie*, 2006 U.S. Dist. LEXIS 39671 at *83 (citing *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972)).

in NYNM to NYNM Acquisition. **Exhibit 1**, Complaint ¶16. Not only has plaintiff failed to allege the requisite intent to defraud with any particularity, but within the four corners of plaintiff's Complaint, plaintiff has alleged that the basis for the Transfers to Kelly arose out of an arms-length business transaction which, in fact, closed and in which Kelly and her family gave up their Membership Interests in, and control of, NYNM to NYNM Acquisition. **Exhibit 1**, Complaint ¶16.

Faced with those insurmountable facts (as alleged in the Complaint), plaintiff does not, and cannot, allege any of the "badges of fraud." Instead, plaintiff's lone allegation regarding the Debtor's "intent" is that the "Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the Transfers were orchestrated through a scheme to divert and redirect monies of the Debtors for the personal benefit of Parmar, his friends and associates, or in a manner to obfuscate the misuse of the Debtors." Complaint ¶25. Plaintiff does not even bother to identify which of the Debtors allegedly initiated the Transfers.[7]

Although that allegation purports to sets forth the Parmar Parties' intent to "benefit" themselves to the detriment of the Debtors and suggests (without explanation) that the NYNM acquisition somehow benefitted that scheme, plaintiff's lone allegation does ***not*** adequately allege how or why the legitimate purchase by NYNM Acquisition of the Membership Interests was, or could be, made with the actual intent to hinder, delay, or defraud the Debtors' creditors when the result of transaction was that NYNM Acquisition acquired 100% of the Membership Interests and complete control over NYNM's profitable business without paying full value for it.[8] There is,

---

[7] The documentary evidence shows that NYNM Acquisition is the only one of the Debtors to have made any payments to Kelly.

[8] The Court may take judicial notice that the indictment of the Parmar Parties does not even suggest that the NYNM acquisition was either a sham or was part of the alleged fraudulent scheme or that Kelly was complicit in any way in the Parmar Parties' illegal activities. Again, Kelly is a victim.

therefore, absolutely no circumstance in which plaintiff can ever satisfy the scienter requirement of his actual fraudulent conveyance claim.

### C.    The Escrow Funds Belonged To Kelly And Were Not The Debtors' Property

As discussed at length below with respect to plaintiff's third claim for relief pursuant to Bankruptcy Code §547,[9] the Escrow Funds held by Robinson Brog and Fidelity were no longer the property *any* of the Debtors once those Escrow Payments were placed in escrow in accordance with the Escrow Agreements.  Accordingly, the Transfers from escrow were not transfers "of an interest of the debtor in property" as required by Bankruptcy Code § 548 and are thus not avoidable.

Plaintiff's first claim for relief should be dismissed with prejudice and without leave to replead.

## II.

### THE SECOND CLAIM FOR RELIEF TO RECOVER CONSTRUCTIVE FRAUDULENT TRANSFERS SHOULD BE DISMISSED

Plaintiff's second claim for relief seeks to recover allegedly constructive fraudulent conveyances under Bankruptcy Code §548 and the NYDCL based upon plaintiff's recitation of the statutory elements of those claims and nothing more.  In sum, the second claim for relief must be dismissed because (a) plaintiff does not have Bankruptcy Code §544(b) standing to maintain the NYDCL portion of the claim, (b) the Complaint pleads only conclusions and not facts, (c) the funds transferred to Kelly were not the Debtors' property (in the case of the Chase Transfers, have already been returned), (d) Kelly provided consideration for the transfer, and (e) the Debtors were not insolvent or rendered insolvent by the Transfers.

---

[9] Bankruptcy Code Sections §§547 and 548 contain identical language, each requiring that the alleged transfer be "of an interest of the debtor in property" in order to be avoidable.

### A.    Plaintiff Does Not Have Bankruptcy Code §544(b) Standing

Plaintiff has not alleged the existence of a triggering creditor under Bankruptcy Code §544(b) and does not have standing to bring the NYDCL claim.

### B.    Plaintiff Has Merely Recited The Statutes And Has Not Alleged Any Facts

Bankruptcy Code §548(a)(1)(B) provides that a trustee may set aside a conveyance as constructively fraudulent if the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation and the debtor was (a) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation,[10] or (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital, or (c) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

To establish claims under Bankruptcy Code §548(a)(1)(B), *Iqbal* requires more than "[t]hreadbare recitals of the elements" of a claim supported by mere conclusory statements. Rather, a plaintiff must allege *facts* showing that the debtor received less than reasonably equivalent value and that the debtor was insolvent or rendered insolvent by the conveyance. *See Zazzali*, 482 B.R. at 520.

Here, the Complaint merely recites the elements of a Bankruptcy Code §548(a)(1)(B) claim. Plaintiff does not allege any facts regarding the inadequacy of the consideration or the lack of reasonably equivalent value. Plaintiff also does not allege any facts relating to the Debtors'

---

[10] A conveyance by a debtor may be avoided as constructively fraudulent if made without fair consideration under NYDCL §272 and one of the following additional elements has been established: (a) the debtor was insolvent or was rendered insolvent as a result of the transfer, NYDCL §273; (b) the debtor was left with unreasonably small capital, NYDCL §274; or (c) the debtor intended or believed it would incur debts beyond its ability to pay such debts as they matured, NYDCL §275. *See Sharp*, 403 F.3d 53-54.

financial condition sufficient to allow the Court or Kelly to draw reasonable inferences that the NYNM Acquisition was insolvent or that its remaining assets were unreasonably small in relation to the transaction. *See Thimbler*, *Inc. v. Unique Solutions Design, Ltd*., 2013 U.S. Dist. LEXIS 129912 (E.D. No. Car. W.D. 2013) (holding that the plaintiff failed to plead facts about the defendant's finances other than two conclusory statements that mirrored the language of the statute). The second claim for relief should be dismissed on that basis alone. However, as shown below, plaintiff can *never* allege any of the requisite elements of his Bankruptcy Code §548(a)(1)(B) claim or any NYDCL claim for constructive fraud.

C.    <u>As Previously Shown, The Property Transferred Belonged To Kelly</u>

As discussed above with respect to plaintiff's first claim for relief and at length below with respect to plaintiff's third claim for relief pursuant to Bankruptcy Code §547, the Transfers were made from funds which were held in escrow and were *not* property of the Debtors at the time of the Transfers or were returned prior to the commencement of the adversary proceeding. Accordingly, the Transfers from escrow were not "of an interest of the debtor in property" as required by Bankruptcy Code §548 and plaintiff's second claim for relief must be dismissed.

D.    **The Transfers Could Not Have Left NYNM**
      **<u>Acquisition Insolvent or With Unreasonably Small Capital</u>**

It is an actual impossibility for the Transfers to have left the Debtors "insolvent" or "with unreasonably small capital" because, as discussed above and at length with respect to plaintiff's third claim for relief, the Transfers were of Escrow Funds which were *not* the Debtors' property at the time of the Transfers. The Transfers could not have resulted in any change whatsoever to the Debtors' financial conditions.

Moreover, even if this Court determined that the Transfers were somehow of an interest in the Debtors' property, it is abundantly clear from the documentary evidence that the Transfers

originated from NYNM Acquisition, an entity that admittedly had no creditors. Because a shell entity without creditors cannot, by definition, ever be insolvent or left with unreasonably small capital to continue its operations, the Transfers cannot be considered to have done so.

### E.  Kelly Provided Consideration For The Transfers

Finally, the documentary evidence annexed to the Complaint conclusively demonstrates that, through the MIPA, Kelly and her family gave consideration to NYNM Acquisition in the form of 100% of their Membership Interests in NYNM.

Under all of these circumstances, plaintiff's second claim for relief fails to state a claim against Kelly and must be dismissed with prejudice and without leave to replead because, as a result of the documentary evidence in plaintiff's possession, there is no state of facts under which he can possibly prevail.

## III.

## THE THIRD CLAIM FOR RELIEF TO SET
## ASIDE PREFERENTIAL TRANSFERS SHOULD BE DISMISSED

Plaintiff's third claim for relief seeks to set aside alleged preferential transfers from the Debtors to Kelly. Again, the documentary evidence requires the dismissal of that claim.

Bankruptcy Code §547 provides the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property (a) to or for the benefit of a creditor, (b) for or on account of an antecedent debt owed by the debtor before such transfer was made, (c) made while the debtor was insolvent, (d) made (i) on or within 90 days before the date of the filing of the petition, or (ii) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider, and (e) that enables such creditor to receive more than such creditor would receive if (i) the case were

a case under chapter 7 of Title 11, (ii) the transfer had not been made, and (iii) such creditor received payment of such debt to the extent provided by the provisions of Title 11.  For purposes of pleading sufficiency, a complaint must allege enough facts regarding each of the elements of §547 to put the defendant on notice.  *See In re Hydrogen,* 431 B.R. at 355-56.  Here, the Complaint amounts merely to "a formulaic recitation of the elements."  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

### A.    The Debtors Had No Interest In The Transfers

Contrary to the allegations in Complaint ¶24, the Transfers were not paid from "off-balance sheet bank accounts," but rather from identified IOLA and other escrow accounts.[11]  Those Escrowed Funds were part of the purchase price paid by NYNM Acquisition and none of the sums transferred belonged to, or were in the control of, any of the Debtors at the time of the Transfers.  Accordingly, the Transfers were not transfers of an "interest of the debtor in property" as required by Bankruptcy Code §547.

The phrase "interest of the debtor in property" is not defined in the Bankruptcy Code for purposes of analyzing a §547 preference claim.  Courts that have addressed that dilemma, including the United States Supreme Court, have concluded that "the term 'interest of the debtor in property' under §547(b) is … equivalent to the term 'property of the estate' under §541 and therefore encompasses 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Criswell*, 102 F.3d at 1415 (quoting 11 U.S.C. §541 (a)(1)); *see also Begier v. IRS*, 496 U.S. 53, 58-59, 110 S. Ct. 2258, 2263, 110 L. Ed. 2d 46 (1990) ("For guidance,

---

[11] Indeed, although plaintiff's allegations are that the Transfers from the Escrow Accounts were made in connection with NYNM Acquisition's purchase of the NYNM Membership Interests, plaintiff does not even bother to allege which of the numerous Debtors made the alleged Transfers.  Based upon that fact alone, the Complaint is deficient under the *Twombly* standard and under Federal Rule of Civil Procedure and cannot survive Kelly's motion to dismiss.

then, we must turn to §541, which delineates the scope of 'property of the estate' and serves as the post-petition analog to §547(b)'s 'property of the debtor'").

Bankruptcy Code §547(e)(1)(B) states that "[f]or the purposes of this section (B) a transfer of ... property ... is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Accordingly, the relevant inquiry with respect to whether the Escrow Funds were property of the estate is whether, under New York law, a judgment lien creditor of NYNM Acquisition could have acquired an interest greater than Kelly's interest by attachment of the Escrow Fund in the escrow accounts. *See In re Coco*, 67 B.R. 365, 369 (Bankr. S.D.N.Y. 1986).

Under New York law, it is the general rule that unless the judgment debtor (in this case, NYNM Acquisition), as grantor, retains an interest in the property over and above the interest of the grantee (in this case, Kelly), the escrow account cannot be reached by the debtor's judgment creditors. *See Hassett v. Blue Cross and Blue Shield of Greater New York* (*In re O.P.M. Leasing Services, Inc.*), 46 Bankr. 661, 667 (Bankr. S.D.N.Y. 1985).

For purposes of Bankruptcy Code §547, the vast majority of courts, including those in the Second Circuit, have held that the relevant transfer of property in an escrow arrangement is the ***deposit*** of funds into the escrow, ***not*** any transfers later made out of the escrow fund. *See In re Newcomb*, 744 F.2d 621, 626-27 (8th Cir. 1984); *In re Coco*, 67 Bankr. 365, 369 (Bankr. S.D.N.Y. 1986). "The preference, by its very definition, is a transfer that benefits a creditor. By holding that the creditor attains the benefit when the money is deposited in escrow, the courts recognize that the debtor retains only a contingent interest in the fund from that point forward." *Cedar Rapids Meats, Inc. v. Hager* (*In re Cedar Rapids Meats, Inc.*), 121 B.R. 562, 570 (Bankr. N.D. Iowa 1990).

Under the First Escrow Agreement and the Third Escrow Agreement (the only relevant escrow agreements to the Transfers), the **only** party with **any** control over the distribution of the funds held in escrow was **Kelly**.  *See* First Escrow Agreement, ¶4; Third Escrow Agreement, ¶4.[12] After the Escrow Payments were made and the Escrow Funds were placed in escrow, NYNM Acquisition only retained, at best, a contingent interest in those Escrow Funds solely to the extent that Kelly did not meet her obligations under the MIPA.  The Complaint contains no allegation that Kelly violated any portion of the MIPA which would have entitled NYNM Acquisition or any other Debtor to any portion of the Escrow Funds because Kelly did not, in fact, violate the MIPA. Accordingly, the only transfer of NYNM Acquisition's property occurred when the Escrow Payments were made which was long before the one-year look-back period for preferential transfers under Bankruptcy Code §547.

Since the Transfers to Kelly from the Escrow Accounts were made using Escrow Funds which already belonged to Kelly, such Transfers were **not** transfers "of an interest of any Debtor in property" as required under Bankruptcy Code §547 and cannot be avoided.  Moreover, the Chase Transfers were made to Kelly in error and were immediately returned to the Debtors.[13]

## B. Kelly Was Not A Creditor For Purposes Of The Transfers Which Did Not Satisfy an Antecedent Debt Owed To Kelly

It is clear from the MIPA, the related transactional documents, and Kelly's Proof of Claim, that the sale of 100% of the NYNM Membership Interests to NYNM Acquisition occurred in two stages.  The first stage involved the transfer of all of the Membership Interests in NYNM to NYNM

---

[12] "The Selling Member Representative [Kelly] may give written notice (a 'Notice') to the Escrow Agent specifying the amount to released from the Escrow Fund (but no more than the Escrow Fund) and the person (which shall be either a Seller Party, the Buyer or an Affiliate of the Buyer) to whom such amount is to be released, and Escrow Agent shall promptly pay the dollar amount set forth in the Notice from (and only to the extent of) the Escrow Fund."

[13] Among other things, the subsequent return of the Chase Transfers to the Debtors is a complete defense against their avoidance pursuant to Bankruptcy Code §547(c)(4).

Acquisition in consideration of the Closing Payment which consisted of an immediate cash payment and the deposit of the Escrow Funds with the Escrow Agents under the Escrow Agreements.  Consequently, the Closing Payment was made as a contemporaneous exchange for value for Kelly's transfer of 100% of NYNM's Membership Interests to NYNM Acquisition.

The second stage of the NYNM Membership Interest purchase consisted of the earn-out which has never been paid and which is the subject of Kelly's Proof of Claim.  When the Escrow Funds were released to Kelly in accordance with the terms of the MIPA and the Escrow Agreements, those funds *already belonged to Kelly* and were not released in payment of any antecedent debt.  They certainly were not made in connection with the Earn-Out which represented the only debt owed to Kelly under the MIPA.  Consequently, the release of the Escrow Funds was not made in payment of any antecedent debt and Kelly was never a creditor for purposes of the Transfers.  The only debt that Kelly is owed is reflected in the Proof of Claim and remains unpaid in its entirety.

### C.  The Court May Take Judicial Notice Of The Facts That Establish That NYNM Acquisition Was Not Insolvent

As discussed above, the MIPA was entered into between NYNM's members (including Kelly) and NYNM Acquisition.  The Closing Payment made pursuant to the MIPA (which included the transfers to the Escrow Accounts) was made by NYNM Acquisition.  Accordingly, even if the Court finds that the Escrow Funds in the Escrow Accounts were not property of Kelly at the time of the Transfers, such funds could *only* be considered property of NYNM Acquisition.

As described in section 6.4 of the Debtors' confirmed chapter 11 plan (ECF Doc. No. 645), of which the Court can take judicial notice, NYNM Acquisition is considered one of the "Shell Debtors" because it was a shell company which had no creditors.  Thus, the Debtors' plan did not need to, and in fact did not, classify creditors of NYNM Acquisition.  It is axiomatic that a

company which has no creditors cannot be insolvent because its non-existent liabilities can never exceed its assets. Accordingly, by the Debtors' own admission, NYNM Acquisition could not have possibly been insolvent at the time of the Transfers.

### D. The Transfers Did Not Enable Kelly To Receive More Than She Would In a Chapter 7 Liquidation

As explained above, the Chase Transfers were never made to Kelly and, in any event, were immediately returned. **Exhibit 11**. That portion of plaintiff's preference claim must be dismissed. The Transfers from the Escrow Accounts were made from Escrow Funds which were already Kelly's property and would not have been property of the Debtors' bankruptcy estates. Accordingly, Kelly did not receive more than she would have in a hypothetical chapter 7 liquidation by virtue of the Transfers because the Debtors provided no value to Kelly by virtue of the Transfers.

### IV.

### THE FOURTH CLAIM FOR RELIEF FOR TURNOVER BY FIDELITY SHOULD BE DISMISSED

The fourth claim for relief which seeks turnover of property under Bankruptcy Code §§541 and 542 from Fidelity should be dismissed because, as set forth above, the Escrow Funds deposited with Fidelity actually belonged to Kelly whose interest in those funds was, and is, superior to any alleged rights belonging to the Debtors' estate.

### V.

### THE FIFTH CLAIM FOR RELIEF UNDER BANKRUPTCY CODE §550 SHOULD BE DISMISSED

Plaintiff's Bankruptcy Code §550 claim should be dismissed. The Bankruptcy Code provides a two-step process for recovering a money judgment for a fraudulent transfer. *Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Group, LLC)*, 2020

Bankr. LEXIS 1081, at *80-82 (Bankr. S.D. Tex. 2020); *Tow v. Speer*, 2015 U.S. Dist. LEXIS 29267 (S.D. Tex. 2015). Bankruptcy Code §544 permits a claim for avoidance of a transfer found under state law, prescribes the rights and liabilities of a transferee of an avoided transfer, and authorizes the trustee to recover the property or value of the property transferred. *In re Pace*, 456 B.R. 253, 276 (Bankr. W.D. Tex. 2011).

Accordingly, Bankruptcy Code §550 is a recovery statute rather than a primary avoidance basis for action and provides an avenue of recovery for a trustee who prevails under an avoidance section. *See Katchadurian*, 2020 Bankr. LEXIS 1081, at *80-82; *Southmark Corp. v. Schulte, Roth & Zabel, LLP*, 242 B.R. 330, 337 (N.D. Tex. 1990). Plaintiff's fifth claim for relief is superfluous and should be dismissed with prejudice.

## VI.

## THE SIXTH CLAIM FOR RELIEF OBJECTING TO KELLY'S PROOF OF CLAIM SHOULD BE DISMISSED

Plaintiff's sixth claim for relief objects to Kelly's Proof of Claim based upon plaintiff's allegation that the Proof of Claim is without evidentiary support and is contradicted by the Debtors' books and records. The sixth claim for relief ignores Kelly's robust Proof of Claim with its exhibits as well as plaintiff's admissions regarding the NYNM Membership Interest purchase, the MIPA, and the related transaction documents.

A majority of courts have adopted the view that Bankruptcy Code §502 sets forth the exclusive grounds for disallowance of a claim, and that the failure to file documentation is not among them. *In re Simon*, 606 B.R. 695 (Bankr. W.D. La. 2019); *In re Stephenson*, 2019 Bankr LEXIS 980 (Bankr. W.D. La.2019); *In re Tatro*, 2015 Bankr LEXIS 1648, at *9-17 (Bankr. W.D.N.Y. 2015); *In re Brunson*, 486 B.R. 759, 770 (Bankr. N.D. Tex. 2013); *Khatibi v. FIA Card Servs., N.A.*, 2014 U.S. Dist. LEXIS 79873, at *13-15 (Bankr. M.D. Ga. 2014); *In re Gorman*, 495

B.R. 823, 835 (Bankr. E.D. Tenn. 2013); *In re Johnson*, No. 12-02072-TLM, 2012 Bankr. LEXIS

5231, at *5 (Bankr. D. Idaho 2012); *In re Rehman*, 479 B.R. 238, 242 (Bankr. D. Mass. 2012); *In*

*re Reynolds*, 470 B.R. 138, 145 (Bankr. D. Colo. 2012).

In "exclusive view" jurisdictions, in order for a Court to disallow a claim, the objectant

must allege a substantive basis under Bankruptcy Code §502(b).  If, as in this case, the only

allegation relates to the sufficiency of the documentation, the objection must be overruled.[14]  *See*

*Brunson*, 486 B.R. at 769; *In re Simon*, 606 B.R. at 702-03; *In re Stephenson*, 2019 Bankr LEXIS

980 at * 7-8; *Tatro*, 2015 Bankr LEXIS 1648, at *13; *In re Brunson*, 486 B.R. at 770); *Khatibi v.*

*FIA Card Servs., N.A.*, 2014 U.S. Dist. LEXIS 79873, at *13-15; *In re Gorman*, 495 B.R. at 835; *In*

*re Johnson*, 2012 Bankr. LEXIS 5231, at *5; *In re Rehman*, 479 B.R. at 242; *In re Reynolds*, 470

B.R. at 145.  As explained in *In re Tatro*, Bankruptcy Code §502(b) provides the ***exclusive*** basis

for the disallowance of claims.  Plaintiff's Complaint does not even mention, much less allege,

any of the nine substantive bases for the disallowance of the Proof of Claim and his sixth claim

for relief should be dismissed.

## VII.

## THE SEVENTH CLAIM FOR RELIEF SEEKING TO EQUITABLY SUBORDINATE KELLY'S CLAIM SHOULD BE DISMISSED

---

[14] As explained in *Tatro*, "[c]ourts have offered various explanations to support the majority viewpoint. First, courts reason that the exclusive view is dictated by the plain language of 11 U.S.C. § 502(b), which does not enumerate noncompliance with the Bankruptcy Rules as a basis for disallowance of a claim. *In re Pursley*, 451 B.R. 213, 226 (Bankr. M.D. Ga. 2011). A second rationale is that a contrary view would undermine the bankruptcy system by permitting debtors to defeat claims "they admittedly owe based on perceived evidentiary advantages." *In re Kincaid*, 388 B.R. 610, 618 (Bankr. E.D. Pa. 2008). A third reason offered in support of the majority view is derived from the "historic principle in proof of claim jurisprudence that a proof of claim should be treated as if it were a verified complaint or a deposition." *Pursley*, 451 B.R. at 227. If the proof of claim is considered as evidence — rather than a pleading — "it becomes apparent that the proof of claim may include sufficient detail regarding the claim for a court to accord it *prima facie* status and require the objector to come forward with some evidence to contest the claim, even though the proof of claim does not comply with all of the requirements of Rule 3001." *Id.* at 226. Finally, the majority view encourages the "fair and inexpensive resolution of claims objections through  a summary procedure," allowing courts to strike a balance between the interest of the claimant, without undue burden or expense, and the interest of the debtor in obtaining sufficient information to evaluate proofs of claim. *Id.*

Plaintiff's seventh claim for relief seeks the equitable subordination of Kelly's claim under Bankruptcy Code §510(c).  The infirmities with the seventh claim are legion.

Equitable subordination is an extraordinary remedy that is to be used sparingly and should only be invoked to rectify obvious inequities.  *See Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205, n.44 (Bankr. S.D.N.Y. 2005); *In re Fabricators, Inc*., 926 F.2d 1458, 1464 (5th Cir. 1991).  Whether to impose equitable subordination as a remedy is within the Court's discretion.  *Enron Corp.*, 333 B.R. at 218; *Henry v. Lehman Commercial Paper, Inc*. (*In re First Alliance Mortgage Co*.), 471 F.3d 977, 1006 (9th Cir. 2006); *S.E.C. v. Great White Marine & Recreation, Inc*., 428 F.3d 553, 556 (5th Cir. 2005); *In re Envirodyne Indus., Inc*., 79 F.3d 579, 583 (7th Cir. 1996).

The doctrine of equitable subordination is codified in Bankruptcy Code §510(c) which authorizes the Bankruptcy Court to subordinate a claim when (a) "[t]he claimant engaged in some type of inequitable conduct," (b) "[t]he misconduct caused injury to the creditors or conferred an unfair advantage on the claimant," and (c) "[e]quitable subordination of the claim is consistent with bankruptcy law."  *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) (quoting *In re Mobile Steel Co*., 563 F.2d 692, 700 (5th Cir. 1977)).  *See also Sure-Snap Corp. v. State Street Bank & Trust Co*., 948 F.2d 869, 876 (2d Cir. 1991); *Vargas Realty Enters. v. CFA W. 111 St., L.L.C. (In re Vargas Realty Enters.)*, 440 B.R. 224, 240-241 (S.D.N.Y. 2010); *In re Enron Corp*., 379 B.R. 425, 433 (S.D.N.Y. 2007); *9281 Shore Rd. Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Rd. Owners Corp.)*, 187 B.R. 837, 852 (E.D.N.Y. 1995).

In order to plead equitable subordination adequately the complaint must contain enough facts to satisfy each part of the three-part test.  *Lyme Regis Partners, LLC v. Icahn (In re*

*Blockbuster Inc.)*, 2011 Bankr LEXIS 1025, at \*9-12 (Bankr. S.D.N.Y.  2011).  As Bankruptcy Judge Lifland explained in *Lyme*, "[s]tated in more colloquial terms, to plead equitable subordination adequately, [the plaintiff] must allege two critical elements: the defendant must have done something wrong and second, the creditor has to have been harmed by the defendant's conduct." *Lyme*, 2011 Bankr LEXIS 1025, at \*9-12.  Failure to do either requires dismissal of the complaint. *Id*.  *See also U.S. SEC v. Spongetech Delivery Sys.*, 98 F. Supp. 3d 530, 553-55 (E.D.N.Y. 2014).

The first element, inequitable conduct, is generally defined as either (a) fraud, illegality, or breach of fiduciary duties; (b) undercapitalization; or (c) the claimant's use of the debtor as a mere instrumentality or alter ego.  *N.J. Steel Corp. v. Bank of N.Y.*, 1997 U.S. Dist. LEXIS 18137 (S.D.N.Y. 1997); *Vargas*, 444 B.R. at 240-41.

Regarding the second element, Courts in the Second Circuit have held that equitable subordination requires a conjunctive showing that the creditor unfairly advantaged itself and that the creditor harmed the debtor or other creditors.  *See generally In re R's Prepared Foods*, 251 B.R. 24, 29 (Bankr. D. Conn. 2000); *Midlantic Nat'l Bank N., N.A. v. Borg-Warner Acceptance Corp*. (*In re Mayo*), 112 B.R. 607, 651 (Bankr. D. Vt. 1990) (citing *Cosoff v. Rodman* (*In re W.T. Grant Co*.), 699 F.2d 599, 610-11 (2d Cir. 1983).  In all cases concerning equitable subordination, actual harm to creditors is a necessary component to application of the doctrine.  *See Wooley v. Faulkner (In re SI Restructuring Inc.)*, 532 F.3d 355, 361 (5th Cir. 2008); *Chorches v. Ogden (In re Bolin & Co., LLC)*, 437 B.R. 731, 760-62 (D. Conn. 2010); *Kalisch v. Maple Trade Fin. Co. (In re Kalisch)*, 413 B.R 115, 133 (Bankr. S.D.N.Y. 2008).

Beyond mere conclusions, the Complaint simply does not allege any facts from which the Court could even remotely conclude that plaintiff has a plausible claim for equitable subordination.

The Complaint does not allege any particular wrongful conduct by Kelly.  Except for plaintiff's conclusion that Kelly somehow "breached her fiduciary duty" (which claim is itself subject to dismissal with prejudice), there are no factual allegations that Kelly did anything wrong or that she engaged in egregious or otherwise improper conduct.  Plaintiff does *not* allege that Kelly committed fraud or engaged in any illegal activity.  He does *not* allege that Kelly contributed to any alleged undercapitalization of the Debtors[15] or that Kelly somehow used the Debtors as a "mere instrumentality" or as an alter ego.  In fact, the contrary is true.  Plaintiff alleges that the Parmar Parties used the Debtors as a mere instrumentality for *their* own benefit.

Except for the Transfers (which were always Kelly's money), plaintiff does *not* allege that Kelly improperly took any money or other property from the Debtors.  *Official Comm. Of Unsecured Creditors of Hydrogen LLC v. Blomen (In re Hydrogen, LLC)*, 431 B.R. 337, 361 (Bankr. S.D.N.Y. 2010).  It would be ridiculous for plaintiff to allege that Kelly was somehow unjustly enriched when she continues to be owed tens of millions of dollars of unpaid purchase price from the NYNM sale and has irrevocably lost her Membership Interests.[16]

In sum, plaintiff never identifies anything that Kelly did that was either untoward or unfair as it relates to the Debtors and their creditors.  He certainly never alleges any facts upon which the Court could draw any conclusion that Kelly was unjustly enriched or otherwise inequitably advantaged herself relative to other creditors. The Parmar Parties effectively stole NYNM from

---

[15] As with the Transfers themselves, plaintiff improperly lumps the Debtors together into an indistinguishable entity. Plaintiff's allegation that Kelly somehow contributed to the undefined, unexplained, and undocumented "undercapitalization" of "the Debtors" does not even remotely state a claim for equitable subordination.

[16] In *In re Adelphia Commc'ns Corp.*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007), Bankruptcy Judge Gerber described unjust enrichment as "not enrichment by bon chance, astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close or double dealing or foul conduct." *Id.* at 68-69. Plaintiff has *not* alleged any conduct approaching unconscionable, unjust, or unfair, let alone any double dealing or foul conduct by Kelly.  The paltry facts and conclusions alleged by plaintiff are insufficient to state a colorable claim to equitably subordinate Kelly's claim.  *See generally In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 564-66 (Bankr. S.D.N.Y. 2016).

Kelly, looted the company, and then abandoned Kelly's earn-out.  NYNM represented the most valuable asset in the Debtors' jointly administered bankruptcy cases and the Debtors never paid Kelly full value for it.  Now, it is gone.  In actuality, Kelly has been more severely damaged than other creditors because she has lost NYNM, a company that she founded and built, without receiving fair consideration.

Under the totality of the circumstances, of which the Court may take judicial notice, equitable subordination is rendered implausible by the record of this case and is wholly inappropriate.  Plaintiff's seventh claim should be dismissed with prejudice and without leave to replead.

## VIII.

### THE EIGHTH CLAIM FOR RELIEF SEEKING A DECLARATORY JUDGMENT SHOULD BE DISMISSED

Plaintiff's eighth claim for relief seeks a declaratory judgment based on his lone allegation that by "reason of the fact that the NYNM Acquisition and the subsequent shifting of funds as payments was either or both an avoidable fraudulent transfer and/or avoidable preferential transfer, and are avoidable, plaintiff asserts an ownership right in the Transfer identified on Exhibit "B" superior to that of Defendant, Fidelity National and that such interest should be free and clear of all interests."  **Exhibit 1**, Complaint ¶56.

Plaintiff's declaratory judgment claim is duplicative of his fraudulent conveyance and preference claims, does not seek any relief that is independent of those claims, and should be dismissed with prejudice and without leave to replead.  *See H&H Envtl. Sys. v. Evanston Ins. Co.*, 2019 US Dist LEXIS 39700, at *15 (W.D.N.Y. 2019)(declaratory judgment claim which was duplicative of breach of contract claim was dismissed because "it serve[d] no useful purpose"); *Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Socy. of NY, Inc.*, 2012 US Dist

LEXIS 95693, at *56-57 (S.D.N.Y. 2012) (although "a declaratory judgment 'may clarify or settle the parties' legal relations' as to the Agreements, any 'cloud of uncertainty' regarding the Agreements 'will be dispelled in litigation of the breach of contract claim.' … [B]ecause 'there is a better or more effective remedy than a declaratory judgment action - specifically, the underlying litigation itself' - this claim is dismissed."); *Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08-CV-10580, 2009 U.S. Dist. LEXIS 58768, 2009 WL 1974392, at *6 (S.D.N.Y. 2009); *Amusement Inds., Inc. v. Stern*, 693 F. Supp. 2d 301, 312 (S.D.N.Y. 2010).

## IX.

### THE NINTH CLAIM FOR RELIEF FOR
### BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

Plaintiff's ninth claim seeks unspecified damages based upon Kelly's alleged breach of fiduciary duty "in her capacity as an officer of NYNM." As with plaintiff's eight other claims, his final claim fails to plead with any specificity, is belied by documentary evidence, and should be dismissed with prejudice and without leave to replead.

Initially, the elements of a claim based on breach of fiduciary duty based must be pled with particularity. *See Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006); *Homere v. Inc. Vil. of Hempstead*, 2019 U.S. Dist. LEXIS 36211, at *61 (E.D.N.Y. 2019); *O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, 466 B.R. 596, 618 (Bankr. S.D.N.Y. 2012) ("allegation that a director breached its fiduciary duty by a conscious disregard of such duty must be plead with particularity."); *Frota v. Prudential-Bache Secs., Inc*., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty - statutory, common law, tort, contractual, or fiduciary."). Accordingly, in order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts. *See Diamond Phoenix Corp. v. Small*, 2005 U.S. Dist. LEXIS 12798, No. Civ. 05-

79, 2005 WL 1530264, at *6 (D. Me. 2005). The FRCP do not require the Court to credit the conclusory statements in the Complaint without reference to its factual context. *See Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2013).

Here, although plaintiff concludes that Kelly had a fiduciary duty to "the Debtors," that allegation as well as the other elements of his breach of fiduciary duty claim are generalized, fail to plead non-conclusory facts, and lack the required particularity. *See ICD Capital, LLC v. CodeSmart Holdings, Inc.*, 2020 US Dist. LEXIS 28174, at *23-25 (S.D.N.Y. 2020); *Fernandez v. UBS AG*, 222 F Supp. 3d 358, 388 (S.D.N.Y. 2016). Accordingly, the claim for breach of fiduciary duty should be dismissed on that basis alone. *See Spizz v. Eluz (In re Ampal-American Isr. Corp.)*, 543 B.R. 464, 477-79 (Bankr. S.D.N.Y. 2016).

To state a claim for the breach of a fiduciary duty in New York, a plaintiff must prove (a) the existence of a fiduciary relationship, (b) misconduct by the defendant, and (c) damages that were directly caused by the defendant's alleged misconduct. *See Silverman v. 3D Total Solutions, Inc.*, 2019 U.S. Dist. LEXIS 153048, at *34-36 (S.D.N.Y. 2019); *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644 (2d Dept. 2007); *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 420 (S.D.N.Y. 2019); *Palmetto Partners, L.P. v. AJW Qualified Partners*, 83 A.D.3d 804, 807, 921 N.Y.S.2d 260 (2d Dept. 2011). Here, plaintiff cannot ever establish that Kelly owed any fiduciary duty to NYNM after it was purchased by NYNM Acquisition, that she engaged in any misconduct, or that she damaged NYNM in any way.

"Absent extraordinary circumstances, ... parties dealing at arm' length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 460 (S.D.N.Y. 2006) (Leisure, J.); *see also Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009); *DFP*

*Mfg. Corp. v. Northrop Grumman Corp.*, 999 U.S. Dist. LEXIS 22998 (E.D.N.Y. 1999) ("Generally, commercial transactions do not create fiduciary obligations, absent express language in the contract, or a prolonged prior course of dealings between the parties establishing the fiduciary relationship."); *Dopp v. Teachers Ins. and Annuity Ass'n of Am.*, 1993 U.S. Dist. LEXIS 13980 (S.D.N.Y. 1993) ("The arm's-length relationship of parties in a business transaction is, if anything, antithetical to the notion that either would owe a fiduciary relationship to the other."); *Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985) ("No fiduciary relationship exists under the facts alleged in the pleadings which show that the two parties were acting and contracting at arm's length."). "[D]ismissal is ... appropriate where a plaintiff has not, and cannot as a matter of law, plead a fiduciary relationship." *Maalouf v. Salomon Smith Barney, Inc.*, 2003 U.S. Dist. LEXIS 5913 (S.D.N.Y. 2003); *see also Meisel*, 651 F. Supp. 2d at 114.

After NYNM Acquisition purchased NYNM, Kelly, who resigned on March 10, 2017 (**Exhibit 8**), was not "a manager, director, officer, and managing member of NYNM" from March 2017 and June 2018 as alleged in Complaint ¶¶ 61-67. Indeed, Kelly was not a member of NYNM at all. Under the express terms of Kelly's Employment Agreement ***and*** her Consulting Agreement, Kelly was ***required*** to take direction ***from Parmar*** in his capacity as Chief Executive Officer of Constellation Healthcare Technologies, Inc. **Exhibits 9** and **10**. Indeed, under the Consulting Agreement, Kelly, ***as an independent contractor***, was to provide sales and growth strategy services, again as "reasonably determined from time to time" ***by Parmar***. **Exhibit 10**. Similarly, under her Employment Agreement, Kelly was to provide such services to NYNM and its subsidiaries and affiliates ***as Parmar*** "may reasonably determine from time to time." **Exhibit 9**. The Employment Agreement further provides that Kelly "shall at all times exercise [Kelly's]

commercially reasonable best efforts to promote the success of the Company Group and to discharge [Kelly's] duties and responsibilities in a commercially reasonable manner." **Exhibit 9**. Neither the Employment Agreement nor the Consulting Agreement, both of which evidence an arms'-length commercial relationship, impose any fiduciary duty on Kelly.  Under those circumstances, plaintiff can never establish the existence of a fiduciary duty and his claim against Kelly must be dismissed.

That conclusion is supported by caselaw interpreting New York Limited Liability Law §401(a) which provides that

> Unless the articles of organization provide for management of the limited liability company by a manager or managers or a class or classes of managers, management of the limited liability company shall be vested in its members ....

N.Y. Limited Liability Company Law §401(a) (McKinney 2020) ("LLCL"); *see also Geltzer v. Lefkowitz (In re Kollel Mateh Efraim, LLC)*, 2011 Bankr. LEXIS 1566, at *14-17 (Bankr. S.D.N.Y. 2011).

In *Geltzer*, Bankruptcy Judge Bernstein, citing LLCL §409(a), explained that a managing member or manager of a New York limited liability company must "perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances."  *Geltzer*, 2011 Bankr. LEXIS 1566 at 15-16.  He went on to conclude that managers of limited liability companies are subject to the same fiduciary standard applied to corporate directors.  *Id*.  *See also O'Connel v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 110 (Bankr. S.D.N.Y. 2005).

Judge Bernstein then concluded that the sole member of the LLC was the managing member and owed a fiduciary duty to the LLC.  He also concluded that a co-defendant, did ***not***

meet the statutory definition of member or manager.  Under LLCL §102(q), a "Member" is "a person who has been admitted as a member of a limited liability company in accordance with the terms and provisions of this chapter and the operating agreement."  Further, a "Manager" is someone who, subject to LLCL §401, is "designated by the members to manage the limited liability company as provided in the operating agreement."  LLCL §102(p).  In *Geltzer*, because the co-defendant was not a member or designated as a manager in the operating agreement (which had not been offered into evidence), the co-defendant did not have any fiduciary obligation to the LLC.  The same is true in this case.

Kelly is decidedly not a member of NYNM and was not a member during the period in which plaintiff alleges that she breached her fiduciary duty.  Further, in the unlikely event that post-acquisition NYNM had any operating agreement because Kelly was not a member and was required to take direction from Parmar, it is also unlikely that Kelly is designated as a "manager." Nor is Kelly a *de facto* manager of NYNM.

Again, as explained by Judge Bernstein in *Geltzer*, under the analogous laws governing corporate liability, the *de facto* doctrine is a legal fiction designed to protect **third parties** who rely, in good faith, on the acts of a *de facto* officer.  *Geltzer*, 2011 Bankr. LEXIS 1566 at 15-16.  *See also Steinfeld v. Richard A. Eisner & Co. (In re General Vision Servs., Inc.)*, 423 B.R. 790, 794 (S.D.N.Y. 2010).  As "between the *de facto* director and the corporation, a *de facto* director is not a director in law or fact."  *Geltzer*, 2011 Bankr. LEXIS 1566 at 15-16 quoting *Stile v. Antico*, 272 A.D.2d 403, 707 N.Y.S.2d 227, 228 (2d Dept. 2000).  Because the trustee stood in the shoes of an LLC suing a *de facto* manager he did not have any claim because the *de facto* manager was never an **actual** manager.  *Id*.  Judge Bernstein dismissed the trustee's claims.  *Id*.  The Court should do so in this case on the identical grounds.

## CONCLUSION

Plaintiff's Complaint fails to state claims for relief against Kelly and should be dismissed with prejudice and without leave to replead.

Dated:  Jericho, New York
       June 29, 2020

**SILVERMANACAMPORA LLP**
Attorneys for defendant Elizabeth Kelly
By: _s/ Anthony C. Acampora_
    Anthony C. Acampora
    A Member of the Firm
    100 Jericho Quadrangle, Suite 300
    Jericho, New York 11753
    (516) 479-6300