UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

    ORION HEALTHCORP, INC.                    Chapter 11
                                                        Case No. 18-71748 (AST)
                                                        (Jointly Administered)

                      Debtors.
-----------------------------------------------------------------x
HOWARD M. EHRENBERG IN HIS CAPACITY
AS LIQUIDATING TRUSTEE OF ORION
HEALTHCORP, INC., *et al*

                                Plaintiff,                  Adv. Pro. No. 20-08048 (AST)

                               v.

ELIZABETH KELLY; FIDELITY NATIONAL
TITLE INSURANCE COMPANY,

                                Defendants.
-----------------------------------------------------------------x

**DECLARATION OF DEFENDANT ELIZABETH KELLY
IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012**

**ELIZABETH KELLY**, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.    I am one of the defendants in the above captioned adversary proceeding. I submit this declaration in support of my motion to dismiss plaintiff's complaint (the "Complaint") pursuant to the Federal Rule of Civil Procedure ("FRCP") 12(b) and Federal Rule of Bankruptcy Procedure ("FRBP") 7012. My counsel advises me, and the accompanying memorandum shows, that plaintiff's Complaint (which is annexed hereto as **Exhibit 1**) should be dismissed in its entirety without leave to replead because the documentary evidence referred to in, and relied upon by, the Complaint renders each of plaintiff's nine claims for relief fatally defective.

2. On March 10, 2017, I, together with certain of my family members, sold all of our membership interests (the "Membership Interests") in New York Network Management, LLC ("NYNM") to NYNM Acquisition LLC ("NYNM Acquisition") pursuant to a Membership Interest Purchase Agreement ("MIPA"). Complaint ¶16. For the Court's easy reference, the MIPA is annexed hereto as **Exhibit 2**.

3. MIPA §§1.2(a) and 1.2(b) provide that the "Closing Payment" for the Membership Interests was $22,000,000 and was payable as follows:

> (i) $3,590,000 (the "Escrow Payment") will be placed in escrow with Robinson Brog Leinwand et al. (the "Escrow Agent") to be held and released pursuant to an escrow agreement (the "Escrow Agreement") to be entered into at the closing amount Buyer, the Selling Member Representative and the Escrow Agent (the monies held from time to time by the Escrow Agent pursuant to the Escrow Agreement are referred to as the "Escrow Fund"), substantially in the form annexed hereto as Exhibit 1.2(a), (ii) such amount required to be placed in escrow (the "Second Escrow Payment") pursuant to the order issued by the Supreme Court of the State of New York in the Matter of New York Network Management LLC against Kevin Kelly and Auciello Law Group LC (such order, as it may be amended, the (Order") will be placed in escrow with Holland & Knight LLP (the "Second Escrow Agent") to be held and released pursuant to an escrow agreement (the "Second Escrow Agreement") to be entered into at the closing among the Selling Member Representative and the Second Escrow Agent (the monies held from time to time by the Second Escrow Agent pursuant to the Second Escrow Agreement are referred to as the "Second Escrow Fund") substantially in the form annexed hereto as Exhibit 1.2(b), (iii) $2,000,000 (the "Third Escrow Payment") will be placed in escrow with the Escrow Agent to be held and released pursuant to an escrow agreement (the "Third Escrow Agreement") to be entered into at the Closing among the Selling Member Representative and the Escrow Agent (the monies held from time to time by the Escrow Agent pursuant to the Third Escrow Agreement are referred to as the "Third Escrow Fund"), substantially in the form annexed hereto as Exhibit 1.2(c), the remaining amount of the Closing Payment (the "Non-Escrowed Closing Payment") will be paid to the Selling Members in immediately available funds by wire transfer to accounts designated by the Selling Member Representative in writing to Buyer no later than three (3) Business Days before the Closing Date.

4. Copies of the fully executed First Escrow Agreement, Second Escrow Agreement, and Third Escrow Agreement are annexed hereto as **Exhibits 3**, **4**, and **5**, respectively. Those Escrow Agreement specifically provide for the release of the Escrow Funds to me.

5. Under the First Escrow Agreement, the sum of $3,950,000 was placed in escrow with Robinson Brog Leinwand Green Genovese & Gluck P.C. ("Robinson Brog") on March 10, 2017 to satisfy any potential indemnification claims under the MIPA. *See* **Exhibit 3**. On January 16, 2018, Robinson Brog released the sum of $1,795,000 to me. *See* **Exhibit 6**. By Escrow Agreement dated January 22, 2018, the parties removed Robinson Brog as Escrow Agent and replaced it with Fidelity. *See* **Exhibit 7**.

6. Contrary to the allegations in the Complaint, from March 10, 2017 through my resignation from NYNM in June 2018, I was *never* in control of NYNM's operations, but merely held the title of Chief Executive Officer.[1] I had both an employment agreement and consulting agreement. My Employment Agreement with NYNM (**Exhibit 9**) provides that I would "serve as the Chief Executive Officer of" NYNM and would "provide such services to [NYNM] and its subsidiaries and affiliates (the "Company Group") as Paul Parmar or his successors as the Chief Executive Officer of Constellation Healthcare Technologies, Inc. (the 'CHT CEO') may reasonably determine from time to time." The Employment Agreement provides that I would "at all times exercise [my] commercially reasonable best efforts to promote the success of the Company Group and to discharge [my] duties and responsibilities in a commercially reasonable manner." My annual base salary under my Employment Agreement was $50,000. **Exhibit 9**. My Consulting Agreement (**Exhibit 10**) provides that, as an independent contractor, I would perform

---

[1] My resignation, which is annexed hereto as **Exhibit 8**, provides that effective March 10, 2017, I resigned "as a manager, director, officer and managing member, as applicable, of New York Network Management, L.L.C., a New York limited liability company" and multiple related entities.

sales and growth strategy services for NYNM "as Paul Parmar or his successors as the Chief Executive Officer of Constellation Healthcare Technologies, Inc. (the 'CHT CEO') may reasonably determine from time to time." My counsel advises me that those documents and the few undisputed facts contained in plaintiff's Complaint mandate its dismissal with prejudice and without leave to replead.

7.     The Complaint alleges that three (3) of the Transfers totaling $300,000 were allegedly made to me on March 20, 2017 from the Chase Operating Account (the "Chase Transfers"). Exhibit 1, Complaint, Exhibit A. *That is simply not true*. As the documents annexed hereto as **Exhibit 11** show, only $50,000 of the Chase Transfers were made to me. The remaining transfers were made on March 20, 2017 (a) in the sum of $125,000 to Aju Associates LLC, Brooklyn, NY," and (b) in the sum of $125,000 via wire transfer to "Ideal Healthcare Technologies LLC Allendale NJ." The deposit portion of that very same bank statement shows that those exact sums, including the $50,000 paid to me, were deposited into the Chase Account on March 17, 2017 and March 20, 2017 to return the erroneous payments. Consequently, the Chase Transfers *were all repaid* prior to the commencement of this adversary proceeding. Plaintiff's claims relating to the Chase Transfers should be dismissed in their entirety with prejudice and without leave to replead.

## CONCLUSION

Plaintiff's Complaint fails to state claims for relief against me and should be dismissed with prejudice and without leave to replead.

Executed in Staten Island, New York on June 29, 2020.



_____
ELIZABETH KELLY