UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                    :

In re                                 :        Chapter 11
                                      :

ORION HEALTHCORP, INC.,[1]       :        Case No. 18-71748 (AST)
                                      :

        Debtors.               :        Jointly Administered
------------------------------------------------------------x
                                      :

HOWARD M. EHRENBERG IN HIS CAPACITY :   Adv. Pro. No. 20-08048 (AST)
AS LIQUIDATING TRUSTEE OF ORION   :
HEALTHCORP, INC., ET AL,          :
                                      :

        Plaintiff,            :
                                      :

        vs.                   :
                                      :

ELIZABETH KELLY,            :
                                      :

        Defendant.          :
------------------------------------------------------------x

## PLAINTIFF'S OPPOSITION TO MOTION OF ELIZABETH KELLY TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      PRELIMINARY STATEMENT .................................................................................. 1

II.     FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT ................................... 4

      A.      Third Amended Joint Plan of Liquidation, Creation of the Liquidation
             Trust and Judgment Creditors ................................................................ 4

      B.      Fraud Committed By the Former Executives of the Debtor ................................ 5

      C.      The NYNM Acquisition, Multiple Purchase Agreements and the IOLA
             Account ................................................................................................ 6

      D.      The Employment and Consulting Agreements .................................................. 7

      E.      Defendant Breached the Fiduciary Duties Owed Debtors in Her Post-
             Acquisition Operation of NYNM ......................................................... 7

      F.      Defendant Continues to Serve as the Managing Member and CEO of
             NYNM Following the NYNM Acquisition ........................................... 8

      G.      Defendant's Filed Claim ................................................................................... 9

III.    THE MOTION DOES NOT MEET THE REQUIREMENTS TO DISMISS THE
       COMPLAINT UNDER RULE 12 BASED ON THE SUFFICIENCY OF THE
       PLEADINGS ............................................................................................................ 9

      A.      The Complaint Satisfies Rule 7008 & 7009 Pleading Requirements ................. 10

      B.      Arguing Facts at the Pleading Stage is Improper ............................................... 12

            1.      THE FIRST CLAIM FOR RELIEF FOR INTENTIONALLY
                  FRAUDULENT TRANSFER IS PLEAD WITH SPECIFICITY
                  AS TO THE FRAUD COMMITED BY THE TRANSFEROR ............. 13

                  a.      The Complaint States Facts Evidencing the Trustee Can
                      Step Into the Shoes of Numerous Confirmed Unsecured
                      Claimants ..................................................................... 13

                  b.      The Complaint Properly States the Fraudulent
                      Circumstances Surrounding the Debtors' Usage of the
                      IOLA Account, the Creation of Fictitious Corporate
                      Entities Without Operations, and the Fraudulent Intent of
                      Parmar Which is Present with the NYNM Acquisition ............... 14

                  c.      Defendant's Assertion the Transfers Were Not Made From
                      an Account Controlled by the Debtors and Not "An Interest
                      Of the Debtor In Property" is a Misplaced Factual
                      Argument ..................................................................... 16

2.     FAIR NOTICE WAS PROVIDED TO DEFENDANT OF THE
FACTUAL BASIS OF SECOND CLAIM FOR RELIEF OF
CONSTRUCTIVELY FRAUDULENT TRANSFER CLAIMS. ........... 18

     a.     The Complaint Provides Fair Notice of the Facts to Plead
Constructive Fraud ...................................................................... 19

     b.     The Motion's Claim That the Transfers Were Not Made
From an Account Controlled by the Debtors and Not "An
Interest Of the Debtor In Property" is A Misplaced Factual
Argument .................................................................................... 21

     c.     The Assertion That NYNM Acquisition Made the Closing
Payment and Was Solvent is Argument of Counsel .................... 21

3.     FAIR NOTICE WAS PROVIDED TO DEFENDANT OF THE
FACTUAL BASIS OF THIRD CLAIM FOR RELIEF OF
AVOIDANCE OF PREFERENTIAL TRANSFERS ............................ 22

     a.     Plaintiff has Both a Legal and an Equitable Right in the
Transfers and Since it Exercised Control Over the IOLA
Account, Has a Possessory Interest in the Transfers .................. 22

     b.     To or For the Benefit of a Creditor .............................................. 22

     c.     Made For or On Account of an Antecedent Debt Owed by
the Debtors Before Such Transfer Was Made ............................. 22

     d.     "Made While the Debtor Was Insolvent" .................................... 23

     e.     That Enables Such Creditor to Receive More Than Such
Creditor Would Receive If—(A) the Case Were a Case
Under Chapter 7 of This Title; (B) the Transfer Had Not
Been Made; and (C) Such Creditor Received Payment of
Such Debt to the Extent Provided By the Provisions of This
Title ............................................................................................ 24

     f.     The Motion Gets it Wrong that Affirmative Defenses Such
as a Constructive Trust, Contemporaneous Exchange, or
the Ordinary Course of Business Defense, Can be
Established on a Motion to Dismiss ............................................. 24

4.     THE MOTION AS TO THE FOURTH CLAIM FOR RELIEF IS
MOOT AS PLAINTIFF DISMISSED FIDELITY NATIONAL
TITLE INSURANCE COMPANY .......................................................... 25

5.     FAIR NOTICE TO DEFENDANT OF FACTUAL BASIS OF
THE FIFTH CLAIM FOR RELIEF FOR RECOVERY OF
PROPERTY UNDER § 550 AND NY DEBT &
CRED. LAW §278 .................................................................................. 25

6.    THE SIXTH CLAIM FOR RELIEF OBJECTING TO DEFENDANT'S FILED CLAIM IS LEGALLY PROPER AND ALLOWS DISCOVERY TO PROCEED AS A CONTESTED MATTER ............................................................................... 26

7.    THE SEVENTH CLAIM FOR RELIEF TO EQUITABLY SUBORDINATE DEFENDANT'S FILED CLAIM IS WELL PLED ........................................................................................................... 28

8.    THE MOTION CHALLENGING THE EIGHTH CLAIM FOR RELIEF IS MOOT AS PLAINTIFF DISMISSED FIDELITY NATIONAL TITLE INSURANCE COMPANY .................................... 29

9.    THE TRUSTEE HAS SUFFICIENTLY PLED THAT DEFENDANT WAS A FIDUCIARY OF NYNM AND BREACHED HER FIDUCIARY DUTIES ............................................. 30

    a.    Defendant Owed Fiduciary Duties as the Managing Member and CEO of NYNM ...................................................... 30

    b.    Defendant's Breach of Her Fiduciary Duties Caused NYNM to Lose Revenue and Inhibited Growth .......................... 32

IV.    CONCLUSION ............................................................................................... 33

DOCS_LA:345386.4 65004/003

## <u>TABLE OF AUTHORITIES</u>

### CASES

*9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.)*
   187 B. R. 837 (Bankr. E.D.N.Y. 1995)................................................................. 13

*Abercrombie v. College*
   438 F. Supp. 2d 243 (S.D.N.Y 2006) ................................................................ 10

*Acevedo v. Monsignor Donovan High Sch.*
   420 F.Supp.2d 337 (D.N.J. 2006) ..................................................................... 12

*Adelphia Communs. Corp. v. Bank of Am., N.A. (In re Adelphia Communs. Corp.)*
   365 B.R. 24 (Bankr. S.D.N.Y. 2007)................................................................. 29

*Adelphia Recovery Trust v. Bank of Am., N.A.*
   624 F. Supp. 2d 292, 308 (S.D.N.Y. 2009)....................................................... 14

*Ashcroft v. Iqbal*
   556 US 662, 129 C. Ct. 1937 (2009) ................................................................. 16

*Babitt v. Schwartz (In re Lollipop, Inc.)*
   205 B.R. 682 (Bankr. E.D.N.Y., 1997).............................................................. 13

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)..................................................................................... 10, 32

*Benjamin v. Diamond (In re Mobile Steel Co.)*
   563 F.2d 692 (5th Cir. 1988) ............................................................................. 28

*Bergner v. Bank One, N.A. (In re P.A. Bergner & Co. Holding Co.)*
   187 B.R. 964 (Bank. E.D.WI. 1995).................................................................. 22

*Boley v. Pineloch Associates, Ltd.*
   700 F. Supp. 673 (S.D.N.Y. 1988) .................................................................... 30

*Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*
   906 A.2d 27, 48 (Del. 2006) .............................................................................. 32

*Brown v. Dellinger (In re Brown)*
   734 F.2d 119 (2d Cir. 1984)............................................................................... 16

*Brown v. Samalin & Bock, P.C.*
   168 A.D.2d 531, 563 N.Y.S. 2d 426 (2d Dept. 1990) ....................................... 27

*Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*
   435 B.R. 819 (Bkrtcy. N.D.N.Y. 2005) ............................................................. 23

*Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.)*
   356 B.R 327 (Bkrtcy. S.D.N.Y. 2006)............................................................... 24

*Calcutti v. SBU, Inc.*
   273 F. Supp. 2d 488 (S.D.N.Y. 2003)................................................................ 10

*Cedar Rapids Meats, Inc. v. Hager (In re Cedar Rapids Meats, Inc.)*
121 Bankr. 562 (Bankr. N.D. Iowa 1990).............................................................. 17

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*
*(In re Bayou Group, LLC)*
439 B.R. 284 (S.D.N.Y. 2010)................................................................................ 15

*Citizens United v. Schneiderman*
882 F.3d 374 (2018)................................................................................................ 32

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*
840 F.Supp.2d 473 (D. Mass. 2012) ...................................................................... 12

*Creditor Trust v. Harari (In re G. Survivor Corp.)*
217 B.R. 433 (Bkrtcy. S.D.N.Y. 1998) ................................................................. 23

*Currie v. Sanchez (In re Sanchez)*
No. 14-22667 (SHL), 2016 Bankr. LEXIS 3481, at *18 (Bankr. S.D.N.Y. 2016).................. 30

*Dixie Yarns, Inc. v. Forman*
906 F. Supp. 929 (S.D.N.Y. 1995) ......................................................................... 20

*Doe v. Delie*
257 F.3d 309 (3d Cir. 2001).................................................................................... 12

*Dolphin Titan Int'l, Inc. v. Gray & Co., Inc. (In re: Dolphin Titan Int'l, Inc.)*
93 Bankr. 508 (Bankr. S.D. Tex. 1988) ................................................................. 17

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*
794 F.3d 297 (2d Cir. 2015).................................................................................... 14

*Farm Stores, Inc. v. Sch. Feeding Corp.*
102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984)....................................... 19, 20

*FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp.*
*(In re FBI Wind Down, Inc.)*
581 B.R. 116 (Bankr. D. Del. 2018) ...................................................................... 26

*Flickinger v. Harold C. Brown & Co.*
947 F.2d 595 (2d Cir. 1991).................................................................................... 30

*Freudenberg v. E*Trade Fin. Corp.*
712 F. Supp. 2d 171 (S.D.N.Y 2010)........................................................................ 9

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*
722 Fed. Appx. 12 at *15 (2d Cir. 2018) ............................................................... 30

*Geltzer v. Barish (In re Geltzer)*
502 B.R. 760 (S.D.N.Y. 2013)................................................................................ 18

*Geltzer v. Lefkowitz (In re Kollel Mateh Efraim, LLC)*
2011 Bankr. LEXIS 1566 at *15 (Bankr. S.D.N.Y. April 28, 2011)................................. 31, 32

*Geron v. Schulman (In re Manshul Constr. Corp.)*
2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 20, 2000)............ 20

*Gilligan v. Jamco Development Corp.*
  108 F.3d 246 (9th Cir. 1997) ......................................................................... 9

*Gillingham v. GEICO Direct*
  2008 U.S. Dist. LEXIS 4169, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) .................. 10

*Global Network Commc'ns, Inc., v. City of N.Y.*
  458 F.3d 150 (2d Cir. 2006).......................................................................... 12

*Gordon v. Harrison (In re Alpha Protective Servs.)*
  531 B.R. 889 (Bankr. M.D. Ga. 2015)................................................................. 23

*Greater Miami Baseball Club Ltd. P'ship. v. Selig*
  171 F.R.D. 73 (S.D.N.Y 1997) ....................................................................... 32

*Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus.)*
  329 B.R. 411 (Bankr. S.D.N.Y 2005).................................................................. 30

*HBE Leasing Corp. v. Frank*
  61 F.3d 1054 (2d Cir. 1995)....................................................................... 15, 19

*In re 80 Nassau Assocs.*
  169 B.R (Bankr. S.D.N.Y. 1994)...................................................................... 29

*In re Adelphia Comm. Corp.*
  2006 Bankr. LEXIS 4600, 2006 WL 687153 at *11 (Bankr. S.D.N.Y. 2006)......................... 19

*In re Adler, Coleman Clearing Corp.*
  277 B.R. 520 (Bankr. S.D.N.Y. 2002)................................................................. 29

*In re Brunson*
  486 B.R. 759 (Bankr. N.D. Tex. 2013).............................................................. 27, 28

*In re Coco*
  67 B.R. 365 (Bankr. S.D.N.Y. 1986).................................................................. 17

*In re Granite Partners, L.P.*
  210 B.R. 508 (Bankr. S.D.N.Y. 1997)................................................................. 29

*In re Haven Trust Bancorp, Inc.*
  461 B.R. 910 (Bankr. N.D. Ga. 2011) ................................................................ 23

*In re LATAM Airlines Grp. S.A.*
  2022 Bankr. LEXIS 2048 (Bankr. S.D.N.Y 2022) ...................................................... 23

*In re Lewis H. Shurtleff*
  778 F. 2d 1416 (9th Cir., 1985) ..................................................................... 24

*In re Lois/USA*
  264 B.R. 69 (Bankr. S.D.N.Y. 2002).................................................................. 29

*In re Mid-Island Hosp., Inc.*
  276 F.3d 123 (2d Cir. 2002).......................................................................... 30

*In re O.P.M. Leasing Servs., Inc.*
  35 B.R. 854 (Bankr. S.D.N.Y. 1983) aff'd in part, rev'd in part on other grounds,
  48 B.R. 824 (S.D.N.Y. 1985).......................................................................... 15

*In re Pan Trading Corp., S.A.*
   125 Bankr. 869 (Bankr. S.D.N.Y. 1991) ............................................................... 23

*In re Rehman*
   479 B.R. 238 (Bankr. D. Mass. 2012) .................................................................. 28

*In re Reynolds*
   470 B.R. 138 (Bankr. D. Colo. 2012) ................................................................... 28

*In re Tatro*
   2015 Bankr. LEXIS 1648, *7 (W.D.N.Y. 2015) ................................................. 28

*In re Taylor*
   132 F.3d 256 (5th Cir. 1998) ............................................................................... 26

*In re Western World Funding, Inc.*
   54 Bankr. 470 (Bankr. D. Nev. 1985) .................................................................. 23

*In re White Metal Rolling and Stamping Corp.*
   222 B.R. 417 (Bankr. S.D.N.Y. 1998) ................................................................ 11

*Johnsrud v. Carter*
   620 F.2d 29 (3d Cir. 1980) ..................................................................................... 9

*Kramer v. Mahia (In re Khan)*
   2014 Bankr. LEXIS 4205, 41 (Bankr. E.D.N.Y, 2014) ...................................... 20

*Master Cutlery, Inc. v. Panther Trading Co., Inc.*, Slip Copy
   2013 WL 4517860, *3 (D.N.J. 2013) .................................................................. 12

*Mendelsohn v. Kovalchuk (In re APCO Merch. Servs.)*
   585 B.R. 306 (Bankr. E.D.N.Y 2018) ................................................................. 13

*Mendelsohn v. Louis Frey Co. (In re Moran)*
   188 B.R. 492 (Bankr. E.D.N.Y. 1995) ................................................................ 23

*Miller v. Hartford Life Ins. Co.*
   64 F. App'x 795 (2d Cir. 2003) ........................................................................... 25

*Miller v. Wolpoff & Abramson, L.L.P.*
   321 F.3d 292 (2d Cir. 2003) ................................................................................ 10

*Mitchell v. Garrison Protective Servs., Inc.*,
   579 F. App'x 18 (2d Cir. 2014) ........................................................................... 20

*Neilson v. Union Bank of California, N.A.*
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................. 11

*New York Network Management LLC v. Kevin Kelly*
   Index. No. 522203/2016 (April 20, 2018) ........................................................... 31

*Nisselson v. Drew Indus.(In re White Metal Rolling & Stamping Corp.)*
   222 B.R. 417 (Bankr. S.D.N.Y. 1998) ................................................................ 19

*Nisselson v. Salim (In re Big Apple Volswagen, LLC)*
    2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016) ...................................... 16

DOCS_LA:345386.4 65004/003

*Nisselson v. Softbank AM Corp.* (*In re MarketXT Holdings Corp.*)
  361 B.R. 369 (Bankr. S.D.N.Y. 2007) ................................................................ 19

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.*
  (*In re Verestar, Inc.*)
  343 B.R. 444 (Bankr. S.D.N.Y. 2006) ................................................. 10, 14, 28

*Parks School of Business v. Symington*
  51 F.3d 1480 (9th Cir. 1995) ............................................................................ 9

*Picard v. Merkin* (*In re Bernard L. Madoff Inv. Secs. LLC*)
  2011 U.S. Dist. LEXIS 97647 (S.D.N.Y. 2011) .............................................. 15, 25

*Picard v. Taylor* (*In re Park S. Sec., LLC*)
  326 B.R. 505 (Bankr. S.D.N.Y. 2005) .............................................................. 15

*Picard v. Taylor* (*In re Park South Securities, LLC*)
  326 B.R. 505 (Bankr. S.D.N.Y. 2005) .............................................................. 11

*Res. Fin. Co. & RFC I, LLC v. Cynergy Data, LLC*
  2013 NY Slip Op 32944(U) .............................................................................. 31

*Reyes v. Cty. of Suffolk*
  995 F. Supp. 2d 215 (E.D.N.Y. 2014) ................................................................ 12

*Roth v. Jennings*
  489 F.3d 499, 2007 WL 1629889 at *1 (2d Cir. Jun. 8, 2007) .............................. 10

*Sapir v. Keener Lumber Co.*
  143 B.R. 347 (Bankr. S.D.N.Y. 1992) .............................................................. 24

*Satriale v. Key Bank USA* (*In re Burry*)
  309 B.R. 130 (Bankr. E.D. Pa. 2004) ............................................................... 19

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*
  403 F.3d 43 (2d Cir. 2005) ............................................................................... 19

*Sharp Int'l Corp. v. State Street Bank & Trust Co.* (*In re Sharp Int'l Corp.*)
  281 B.R. 506, 524 (Bankr. E.D.N.Y. 2002), *aff'd on other grounds*,
  302 B.R. 760 (E.D.N.Y. 2003), *aff'd on other grounds*, 403 F.3d 43 (2d Cir. 2005) ............... 11

*Signature Apparel Grp. LLC v. Laurita* (*In re Signature Apparel Grp. LLC*)
  No. 09-15378 (RG), 2015 Bankr. LEXIS 671, at *28 (Bankr. S.D.N.Y. Mar. 4, 2015) .......... 30

*Stoebner v. San Diego Gas & Elec. Co.* (*In re LGI Energy Solutions*)
  482 B.R. 809 (BAP 8th Cir. 2012) .................................................................... 23

*Todd v. Exxon Corp.*
  275 F.3d 191 (2d Cir. 2001) .............................................................................. 10

*Togut v. RBC Dain Correspondent Services* (*In re S.W. Bach & Co.*)
  435 B.R. 866 (Bankr. S.D.N.Y. 2010) .............................................................. 18

*United States v. Maciejewski*
  70 F. Supp. 2d 129 (Bankr. N.D.N.Y, 1999) .................................................... 15

*Wang v. Bethlehem Cent. Sch. Dist.*
  2022 U.S. Dist. LEXIS 140153, 89 (Bankr. N.D.NY, 2022) ................... 14

*Winklevoss Capital Fund, LLC v. Shrem*
  351 F. Supp. 3d 710 (S.D.N.Y. 2019)...................................................... 32

*Young v. Paramount Communications. Inc. (In re Wingspread Corp.)*
  178 B.R.. 938 (Bankr. S.D.N.Y.), aff'd. 186 Bankr. 803 (S.D.N.Y. 1995) ............... 13

## STATUTES

11 U.S.C. § 101 ............................................................................... 22

11 U.S.C. § 502 ............................................................................... 27

11 U.S.C. § 541 ........................................................................... 16, 17

11 U.S.C. § 544 ............................................................................... 13

11 U.S.C. § 547 ....................................................................... 22, 23, 24

11 U.S.C. § 548 ............................................................. 10, 11, 14, 15, 19

11 U.S.C. § 550 ...................................................................... 3, 25, 26

## OTHER AUTHORITIES

4 Collier on Bankruptcy P 502.02.......................................................... 26

5 Collier on Bankruptcy P 541.01 (15th ed. rev. 2007)................................. 17

H.R. Rep. No. 595, 95th Cong. 1st Sess. 373-74 (1977)
  reprinted in 1978 U.S.C.C.A.N. at 5787, 6329. .................................... 25

NY Debt & Cred. Law § 275 ............................................................... 19

NY Debt & Cred. Law $ 274 ............................................................... 19

NY Debt & Cred. Law § 272 ............................................................... 19

NY Debt & Cred. Law § 276 ............................................................... 15

NY Debt & Cred. Law § 278 ............................................................... 25

NY Debt & Cred. Law §273 ......................................................... 3, 19, 20

## RULES

Fed. R. Bankr. P. 7000...................................................................... 28

Fed. R. Bankr. P. 7008...................................................................... 11

Fed. R. Bankr. P. 9014................................................................. 26, 28

Fed. R. Civ. P. Rule 8 ....................................................................... 11

Fed. R. Civ. P. Rule 9 ....................................................................... 10

Fed. R. Civ. P. 12 ................................................................ 9, 10, 12, 18, 24

DOCS_LA:345386.4 65004/003

Plaintiff, Howard M. Ehrenberg ("Trustee" or "Plaintiff"), liquidating trustee of the jointly administered bankruptcy estates of Orion HealthCorp., Inc. ("Orion") and Constellation Healthcare Technologies, Inc. ("CHT" collectively, the "Debtors"), hereby oppose *Defendant Elizabeth Kelly's Motion to Dismiss Complaint* (the "Motion"), filed by defendant Elizabeth Kelly ("Defendant").

**PLEASE TAKE NOTICE** that, pursuant to the *Stipulation For Briefing Schedule* (ECF No. 25), any reply to this Opposition must be filed with the Court and served on counsel to the Liquidating Trustee not later than November 2, 2022.

In support of its Opposition, the Committee respectfully states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### PRELIMINARY STATEMENT

1.    In the period immediately leading up to the present bankruptcies, the Debtors were victims of multiple deliberate schemes by non-party directors and executives.  These schemes obligated the Debtors to undertake fictitious acquisitions in order to plunder the Debtors of their value while simultaneously saddling them with insurmountable debt.  (Complaint, ECF No. 1 ("Complaint"), ¶14)

2.    These wrongful acts were directed and executed by CHT's Chief Executive Officer, Paul Parmar ("Parmar"), its Chief Financial Officer Sam Zaharis ("Zaharis"), and its Controller Ravi Chivukula ("Chivukula") and ultimately caused the insolvency of the Debtors. *Id*. ¶ 13.  By July 2018, all Debtors had filed their respective Chapter 11 bankruptcy cases. *Id*. ¶ 3.

3.    The Complaint alleges facts that have been substantiated in various adversaries to date: that Parmar, Zaharis and Chivukula, occupying positions of access and control as officers and directors of the Debtors, operated in combination with one another to create fictitious business entities, balance sheets, documents, and sham acquisitions in an effort to divert monies of the

1

Debtors for improper purposes such as to enrich themselves, family and associates.  The mechanism they employed was various off-balance sheet accounts and a Wells Fargo IOLA account ("IOLA Account") overseen by its lawyers Robinson Brog, Leinwand, Greene, *et al.* ("Robinson Brog") which the Debtors controlled and which included commingled funds.  The Complaint alleges that on March 10, 2017, the NYNM Acquisition, which is the subject of the present adversary proceeding, was yet another fraudulent transaction arranged by Parmar and company such that funds could be diverted through the IOLA account to defraud creditors.  The Complaint outlines the transaction and identifies the payments with particularity.

4.      Defendant's thirty-five (35) page Motion is premised on a single flawed contention: the documentary evidence which the Defendant attaches, namely the Membership Purchase Interest Agreement ("MIPA") and assorted escrow agreements[2] are "undisputed" and their terms mandate the Court immediately dismiss the adversary proceeding.  In other words, Defendant contends that her version of the facts are right, and the Trustee's are wrong.  Defendant contends that she was not an officer or an insider of the Debtors, owed no duties to the Debtors, the Debtors did not have an interest in the Transfers or control the IOLA Account, and the IOLA Account did not contain commingled funds.  Defendant contends that her various affirmative defenses can be summarily adjudicated on a motion to dismiss without affording the Plaintiff the chance to conduct discovery, thus depriving Plaintiff of the right to object to her proof of claim wherein she "estimates" she is owed in excess of forty-nine million dollars.  Defendant will have ample opportunity to litigate her version of the merits based on the facts, but at this stage the Complaint is properly pled, as are the theories of liability stating a plausible right to recovery.

5.      There is no basis to dismiss the Complaint at this stage as to the First Claim For Relief, as the intent of the Transferor, Parmar and the Debtors, not the transferee, is the proper focus in pleading a claim for an intentional fraudulent conveyance under both federal and state law.  The documents Defendant attached to her Motion prove exactly what the Complaint alleges,

---

[2] The Motion also makes the outlandish assertion that the Defendant's documents submitted "are not in dispute with respect to their accuracy". (Motion, p. 9)

Parmar and his confederates defrauded creditors by preparing fictitious contracts and documents for the present transaction.  The second MIPA which states that the acquisition was for $29.5MM, not $22MM as asserted by Defendant, confirms Plaintiff's pleading of fraud is accurate.  Similarly, the Transfers are months later than what was called for under any alleged escrow agreements and only discovery will determine what occurred.  At present, the First Claim is not only plausible, but apparent on the face of the documents.

6.      There is no basis to dismiss the <u>Second</u> Claim For Relief, as the acquirer was a fictitiously created entity and the Defendant an insider who received millions of dollars in the months and weeks prior to March 16, 2018 (the "<u>Petition Date</u>").[3] The Complaint properly pleads that the Defendant received a constructively fraudulent transfer as it is what the Debtors received in exchange for the Transfers, not what the Defendant gave as argued in the Motion.  The issue of insolvency is a question of fact.  However, in New York, if an insider receives payments when judgment creditors existed who were not paid as of the Petition Date, as in the present case, NY Debt & Cred. Law ("<u>NYDCL</u>") §273-a, presumes the debtor was insolvent.  The claim is well pled.

7.      There is no basis to dismiss the <u>Third</u> Claim For Relief as even if Defendant was entitled to receive the Transfers, it would still be a preferential transfer <u>unless</u> the Defendant can prove an applicable affirmative defense.  It is not the Plaintiff's burden to plead, let alone disprove, an unpled affirmative defense.

8.      The <u>Fourth</u> and <u>Eighth</u> Claims For Relief are dismissed or abandoned.  Plaintiff dismissed Defendant Fidelity National Title Insurance Company in September 2020, since they no longer held the funds in dispute.

9.      There is no basis to dismiss the <u>Fifth</u> Claim For Relief as 11 U.S.C. § 550 is adequately pled and consistent with the recovery of avoidable transfers.  If the Defendant desires to waive her defenses that issue has no bearing on the adequacy of the pleading.

---

[3] New York Network Management, LLC ("<u>NYNM</u>") filed its petition months later on July 5, 2018.

10.     The <u>Sixth</u> Claim For Relief is well pled as Claim Number 10044 filed by Defendant (the "<u>Filed Claim</u>") is nothing more than an estimate of damages.  Speculative damage claims are properly subject to objection as are filed claims refuted by the Debtors' books and records.  The Defendant is sued for numerous causes of action and the Filed Claim properly subject to objection until the demanded sums are returned to the Trust.  As a contested matter, the parties will have the opportunity to conduct discovery and an evidentiary hearing.

11.     There is no basis to dismiss the <u>Seventh</u> Claim For Relief seeking to subordinate the Filed Claim as allegations of fraud committed by Defendant need not be pled. Inequitable conduct, including lawful conduct that is nevertheless contrary to equity and good conscience, is sufficient grounds to subordinate a claim especially involving transfers to an insider.   The Complaint properly pleads Defendant's lack of good faith and harm committed to the Debtors and unsecured creditors.

12.     Lastly, there is no basis to dismiss the <u>Ninth</u> Claim For Relief for breach of fiduciary duty as the Defendant owed fiduciary duties to NYNM as its Chief Executive Officer and managing member and breached those duties when she completely failed to conduct any reasonable diligence or oversight of NYNM.  As a result of the abdication of her fiduciary duties, Defendant allowed the CEO of CHT, and others working with him, to effectively loot the company. This caused NYNM to take on debts that could not have been paid, to the detriment of their creditors, ultimately resulting in the current bankruptcy. Moreover, Defendant's poor management of NYNM resulted in substantial lost revenue and failure to meet the growth rates anticipated.

## II.

## FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

**A.      Third Amended Joint Plan of Liquidation, Creation of the Liquidation Trust and Judgment Creditors**

13.     The Complaint alleges Plaintiff is the Liquidating Trustee under the Liquidation Trust Agreement, created according to the Third Amended Joint Plan of Liquidation (the "<u>Plan</u>"). (Complaint, ¶¶1, 5) The Liquidation Trust was created specifically to make distributions to

Allowed Claims and Allowed Interests (Complaint ¶5) and pursue causes of action for their benefit (Complaint ¶6). According to the Plan, the secured lenders maintained an allowed claim for the deficiency they were owed in excess of $100MM. (*See* Request for Judicial Notice ("RJN"), Plan, Ex. 7, p.3; Bankruptcy Schedules, Ex. 9) All of the Transfers alleged in the Complaint were made within one-year of the Petition Date, i.e. between March 20, 2017 and January 26, 2018. (Complaint ¶¶3, 4, 19, 20)

14.     On December 16, 2015, a final judgment was issued against the Debtor Orion Healthcorp, Inc. in the United States District Court for the Southern District of Texas in excess of $200,000. (the "McBride Judgment") The proof of claim was filed in the Debtors' bankruptcy cases and remains unsatisfied. (*See* RJN, Final Judgment, Ex. 2)

15.     On March 9, 2016, a lawsuit was initiated in the Supreme Court of the State of New York by Criterions, LLC, against Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. (*See* RJN, Summons, Ex. 3) Judgment was entered on November 30, 2017, against the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. in the amount of $77,767.26 (the "Criterion Judgment"). (*See* RJN, Judgment, Ex. 4) On March 23, 2018, a Suggestion of Bankruptcy was filed by Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. Supreme Court of the State of New York. (*See* RJN, Ex. 5)

16.     On January 30, 2017, the Credit Agreement with Bank of America ("BOFA") was executed by all of the Debtors as secured by all of the Debtors' assets wherein BOFA advanced to the Debtors up to $145MM in debt to fund the Go-Private Transaction. (*See* Declaration of J. Nolan (the "Dec. of J. Nolan"), Ex. E, Credit Agreement dated January 30, 2017). BOFA and the borrowers are the largest unsecured creditors in the bankruptcy case. (*See* RJN, Ex. 9)

## B.      Fraud Committed By the Former Executives of the Debtor

17.     The Debtors, and namely Parmar, Zaharis, and Chivukula, who occupied positions of access and control as officers and directors of the Debtors, operated in combination with one another to create fictitious business entities and documents and to create sham acquisitions in an

effort to divert money of the Debtors and enrich themselves and their colleagues.  (Complaint ¶14)  The trio fabricated companies, acquisitions and documents in an effort to deceive and defraud creditors of the estate.   (Complaint, ¶17) In 2018, a grand jury sitting in the District of New Jersey issued an indictment finding probable cause that the executives conspired to commit fraud by fabricating companies and falsifying transactions between 2015 and September 2017, including those relating to the Go-Private Transaction. (RJN, Indictment, Ex. 8) The "Go-Private Transaction" referred to a domestic merger transaction occurring on January 30, 2017 where the company was taken private and approximately $130MM in debt was borrowed by the Debtors from BOFA. (RJN, Indictment, Ex. 8, p. 3)   Parmar and company moved monies from their fraudulent conduct through the IOLA Account which they controlled. (Complaint, ¶13)   The off-balance sheet accounts and IOLA Account were utilized to divert monies, conceal transactions, and maintain the appearance the Debtors were solvent. (Complaint ¶¶13, 14, 17)

**C.      The NYNM Acquisition, Multiple Purchase Agreements and the IOLA Account**

18.      On or about March 10, 2017, the Debtors acquired NYNM from selling members owning NYNM, which included Defendant ("NYNM Acquisition").  (ECF No. 13, ¶16, Ex. 2)  Prior to the NYNM Acquisition, Defendant was the majority owner, managing member, and Chief Executive Officer of NYNM. (Complaint, ¶15)

19.      On March 9, 2017, the day before the deal closed, Parmar incorporated NYNM Acquisition, LLC. (RJN, Ex. 1)   Pursuant to the Membership Interest Purchase Agreement ("MIPA"), entered into on March 10 2017, the sum of $15,589,500 in cash was paid to Defendant for the total acquisition price of **$22,000,000**. (Complaint, §16; See MIPA; Dec. of J. Nolan, Ex. A)  The MIPA identified NYNM Acquisition, LLC as the buyer. However, a second MIPA was also entered into on March 10 2017, for the total acquisition price of **$29,500,000**. (Dec. of J. Nolan; *See* MIPA #2, Ex. B)  Contradicting both of these agreements, the beneficiaries of the deal represented to Judge Toussaint of the New York State Supreme Court, Kings County, that the NYNM Acquisition was consummated for **$32,000,000**.  (*See* RJN, Order to Show Cause, Ex. 6, p. 2)

20.     Parmar and his confederates improperly utilized the IOLA Account for their business, litigation and private affairs. (Complaint ¶13)  The Debtors and Parmar controlled the IOLA Account which included commingled funds directed by Debtors' executives to obfuscate their dealings and defraud creditors.  (Complaint ¶17; *See* Dec. of J. Nolan, Parmar email attached as Ex. D)  The Transfers of multiple millions of dollars at issue in the Complaint were made out of the IOLA Account. (Complaint, Ex. A)

**D.     The Employment and Consulting Agreements**

21.     Around the same time as the NYNM Acquisition, Defendant entered into an employment agreement with NYNM.  (ECF No. 13, ¶6, Ex. 9)  As Defendant acknowledges in her Motion, the Employment Agreement provides that Defendant will "***serve as the Chief Executive Officer*** of" NYNM. *Id.* ¶ 6, Ex. 9 at Section 1.A. (emphasis added.) The Employment Agreement also states that "[t]he duties to be performed by the Executive shall be ***commensurate with Executive's position*** [of CEO]." *Id.* ¶ 6, Ex. 9 at Section 1.C. (emphasis added.) Moreover, under a section entitled "**Loyalty and Diligence**," Defendant was required to "exercise [her] commercially reasonable best efforts to promote the success of the Company Group and to discharge [her] duties and responsibilities in a commercially reasonable manner." *Id.* ¶ 6, Ex. 9 at §2.

**E.     Defendant Breached the Fiduciary Duties Owed Debtors in Her Post-Acquisition Operation of NYNM**

22.     Defendant, acting in her capacity as Managing Member and CEO of NYNM, breached the duties she owned NYNM and its investors, by operating and managing NYNM in an unreasonable way and making decisions that had no viable business reasons. (Complaint, ¶¶ 18. 64)  As a consequence of these actions, NYNM's monthly billing and revenue diminished drastically between March 2017 and June 2018. *Id.*  NYNM's poor performance further failed to match the growth rates anticipated at the time of the NYNM Acquisition. *Id.*  Following these failures, Defendant abruptly resigned in June 2018, shortly before NYNM commenced its bankruptcy in July 2018. (Complaint, No. 1 ¶ 18)

**F.**   **Defendant Continues to Serve as the Managing Member and CEO of NYNM**
         **Following the NYNM Acquisition**

23.     Following the NYNM Acquisition, Defendant continued to serve as the Managing Member and CEO of NYNM.  To be sure, in the summer of 2017, Parmar introduced Defendant to others as the "CEO of NYNM."  (*See* Dec. of J. Nolan, email attached as Ex. F).  The Defendant was similarly holding herself out as CEO, including in her email signature block her title of "CEO/President" of NYNM.  (*See* Dec. of J. Nolan, email attached as Ex. G).  In September 2017, Defendant criticized an IT Manager for attempting to work with NYNM's IT company without her permission as CEO.  (*See* Dec. of J. Nolan, email attached as Ex. H) ("Please provide me with a request and understanding of why you are contacting NYNM's IT company without the CEO and NYNM's permission.").

24.     Defendant also ***verified*** and acknowledged that she was the CEO and Managing Member of NYNM after the NYNM Acquisition.  On or about February 1, 2018, Defendants children, Kevin and Edel Kelly, filed an Amended Complaint against NYNM and Defendant seeking damages for failure to pay sums owed as a result of their pre-acquisition minority ownership of NYNM. (*See* RJN, Ex. 10). These damages included wrongfully withheld dividend payments and amounts due as a result of the NYNM Acquisition. Paragraph 6 of the Amended Complaint alleged:

> Elizabeth [Kelly] is **the Managing Member and Chief Executive**
> **Officer of NYNM**, a medical service organization which owns and
> operates independent practice associations in conjunction with insurers.

*Id*. ¶ 6. (emphasis added.)

25.     On or about February 20, 2018, Defendant filed her verified *Answer to the Amended Complaint*. (RJN, Ex. 11). As to Paragraph 6 quoted above, Defendant "admit[ed] the allegations as set forth" therein *without qualification*. *Id*., p. 1. Defendant also attached to her Answer a notarized Verification, wherein she stated:

8

> ***I am the Managing Member of the Defendant, [NYNM]***. . . I have read the foregoing Answer and Counterclaim and I know the contents thereof. The same are true and correct to my knowledge, except as to the matters alleged on information and belief, and to those matters, I believe them to be true.

*Id*., p. 14. (emphasis added.)

26.    As these statements make clear, Defendant was, by her own admission, the Managing Member and CEO of NYNM at the relevant times alleged in the Complaint. Consequently, Defendant's attempts to disavow these facts in the Motion should be rejected by this Court.

## G.    Defendant's Filed Claim

27.    On July 2, 2018, Defendant filed a proof of claim for $49,659,099, where she identified herself as a creditor of the Debtors and claimed she was damaged (a) based on her revenue projections and calculation of damages in year one of $9,017,034 and (b) based off her estimate of revenue projections for year two of $38,803,403. (Complaint ¶¶21, 22)

## III.

## THE MOTION DOES NOT MEET THE REQUIREMENTS TO DISMISS THE COMPLAINT UNDER RULE 12 BASED ON THE SUFFICIENCY OF THE PLEADINGS

28.    In the Second Circuit, as elsewhere, motions to dismiss are greatly disfavored and rarely granted.  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *Freudenberg v. E*Trade Fin. Corp.,* 712 F. Supp. 2d 171, 179 (S.D.N.Y 2010); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir. 1980) (A motion to dismiss under Rule 12(b)(6) is disfavored because it seeks to prevent a claimant to offer evidence in support of its claim). The United States Supreme Court has articulated that a complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957) (emphasis added); *Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he issue

is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . ." *Todd v. Exxon Corp*., 275 F.3d 191, 198 (2d Cir. 2001) (citation omitted).    Accordingly, courts "accept the complaint's factual allegations and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 2007 WL 1629889 at *1 (2d Cir. Jun. 8, 2007).  A case "should not be dismissed unless the court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003). On a motion to dismiss, the Court may consider:

> (1)    the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, i.e., documents that are "integral" to the complaint.  *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted);

*see Gillingham v. GEICO Direct*, 2008 U.S. Dist. LEXIS 4169, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint").  A pleading is sufficient if it provides "enough fact to raise a reasonable expectation that discovery will reveal evidence." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)  Lastly, "[t]he existence of a fiduciary duty normally depends on the facts of a particular relationship, therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Abercrombie v. College,* 438 F. Supp. 2d 243, 274 (S.D.N.Y 2006).

## A.    The Complaint Satisfies Rule 7008 & 7009 Pleading Requirements

29.    On a motion to dismiss, a claim for actual fraudulent transfer pursuant to § 548(a)(1)(A) or applicable State law is held to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp*. (*In re Verestar, Inc.*), 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006) citing to *Picard v. Taylor (In re*

10

*Park South Securities, LLC*), 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005); *Sharp Int'l Corp. v. State Street Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 281 B.R. 506, 524 (Bankr. E.D.N.Y. 2002), *aff'd on other grounds*, 302 B.R. 760 (E.D.N.Y. 2003), *aff'd on other grounds*, 403 F.3d 43 (2d Cir. 2005). These pleading requirements, however, do not apply to claims of constructive fraudulent conveyance under § 548(a)(1)(B) and applicable State law, because they are based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, not on fraud. *See In re White Metal Rolling and Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr. S.D.N.Y. 1998) (a claim for constructively fraudulent transfer pursuant to § 548(a)(1)(B)(ii) or applicable State law are governed by the general rules for pleading requirements of Rule 8(b)). The remainder of the causes of action asserted in the Complaint, are governed by Notice pleading standards of Fed. Rule 8.

30.    Rule 7008 of the Federal Rules of Bankruptcy Procedure incorporates Rule 8 of the Federal Rules of Civil Procedure, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. Rule 8(a) is designed to ensure that a defendant simply has fair notice of the nature of the claim and of the facts on which it is based. *Conley,* 355 U.S. at 47-48. "Effective pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1148 (C.D. Cal. 2003). The guiding principle is stated in Rule 8(f): "All pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f); *Conley,* 355 U.S. at 48. Under the federal rules the Complaint can state alternating allegations and theories of liability. *See* Fed. R. Civ. P. 8(e).[4]

31.    The Rule 12 pleading standards are satisfied here. The Complaint alleges detailed facts and circumstances that, when accepted as true, establish that the Trustee is entitled to the

---

[4] The statement in the Motion, "the Complaint cannot allege Transfers under alternating theories of liability such as with a preferential and/or a fraudulent transfer," is an inaccurate statement of law. (Motion, p. 11, n. 4).

relief sought in the Complaint.  The Motion cites to affirmative defenses and factual arguments demonstrating the Defendant is aware of the issues and can prepare her answer.

**B.**      **Arguing Facts at the Pleading Stage is Improper**

32.      It is black letter law that making factual arguments in a 12(b)(6) motion to dismiss is improper. *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 840 F.Supp.2d 473, 478-479 (D. Mass. 2012).  (At the motion to dismiss stage, the court may not weigh evidence or otherwise decide which version of the facts is true). See, e.g., *Acevedo v. Monsignor Donovan High Sch.*, 420 F.Supp.2d 337, 342 (D.N.J. 2006) (noting that arguments that merely attack the factual accuracy of a plaintiff's allegations are "improper arguments to support a motion to dismiss under Rule 12(b)(6)."); *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001) (observing that on a motion to dismiss "[w]e must accept as true all factual allegations in the complaint," and a defendant may not contest these factual allegations for purposes of the motion). *Master Cutlery, Inc. v. Panther Trading Co., Inc*., Slip Copy, 2013 WL 4517860, *3 (D.N.J. 2013). A motion to dismiss is not the proper vehicle to argue one's side of the story. *See Global Network Commc'ns, Inc., v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006) ("[A summary judgment motion] is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence."); *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 220 (E.D.N.Y. 2014) ("Generally, when a defendant attempts to counter a plaintiff's [c]omplaint with its own factual allegation and exhibits, such allegations and exhibits are inappropriate for consideration by the Court at the motion to dismiss stage.").

33.      The Defendant attaches numerous extrinsic documents such as escrow agreements, amended escrow agreements, banks statements, resignation letters, and the Affidavit of Defendant in an effort to argue her version of the facts.  (ECF No. 13-1)  Arguing select documents and versions of the facts is improper at the pleading stage and is not a sufficient basis to dismiss a cause of action that is well pled.

1.    **THE FIRST CLAIM FOR RELIEF FOR INTENTIONALLY FRAUDULENT TRANSFER IS PLEAD WITH SPECIFICITY AS TO THE FRAUD COMMITED BY THE TRANSFEROR**

34.    The Motion makes five arguments against the First Claim; asserting that the Trustee lacks standing to prosecute fraudulent avoidance claims under state law as no triggering creditor exists, the Complaint fails to allege fraud with particularity, the Complaint fails to allege Defendant's bad intent, and the IOLA account contained funds not controlled by the Debtors and which the Debtors had no legal, equitable or possessory right.  The Complaint adequately pleads each element.

a.    **The Complaint States Facts Evidencing the Trustee Can Step Into the Shoes of Numerous Confirmed Unsecured Claimants**

35.    Pursuant to 11 U.S.C. § 544(b), the Trustee may utilize state fraudulent conveyance law to avoid a transfer if there exists an actual unsecured creditor who could void the transfer under applicable law. *Babitt v. Schwartz (In re Lollipop, Inc.)*, 205 B.R. 682, 687 (Bankr. E.D.N.Y., 1997) citing to *Young v. Paramount Communications. Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr. S.D.N.Y.), aff'd, 186 Bankr. 803 (S.D.N.Y. 1995). To establish a predicate creditor, "the creditor need not have reduced his claim to a lien or judgment."  *9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.),* 187 B. R. 837, 852 (Bankr. E.D.N.Y. 1995).  ). The existence of filed unsecured claims is sufficient to allow the Trustee to assume the position of any one of them. *In re Leonard,* 125 F.3d 543, 544 (7th Cir. 1997)  At the motion to dismiss stage, the Trustee need not identify in the complaint a single unsecured claimant, but rather, must only plead facts from which it can be plausibly concluded there is at least one legitimate creditor of the estate. *Mendelsohn v. Kovalchuk (In re APCO Merch. Servs.)*, 585 B.R. 306, fn. 11 (Bankr. E.D.N.Y, 2018) The Complaint properly pleads the facts for the existence of numerous unsecured creditors which the Trustee can step in to represent and prosecute the present adversary proceeding.

36.    The Complaint alleges Plaintiff is the Liquidating Trustee under the Liquidation Trust Agreement, created according to the Plan.  (Complaint ¶¶1, 5) The Liquidation Trust was

created specifically to make distributions to Allowed Claims and Allowed Interests (Complaint, ¶5) and pursue causes of action for their benefit (Complaint ¶6). The Plan confirmed the existence of allowed deficiency claims which deficiency claims were scheduled as unsecured claims in the bankruptcy cases. (*See* RJN, Ex. 7, p. 3)  The BOFA claim was created as a result of a Credit Agreement which was executed by all of the Debtors as part of the Go-Private Transaction. (*See* Dec. of J. Nolan, Credit Agreement dated January 30, 2017, Ex. E)  BOFA and the borrowers are the largest unsecured creditors in the bankruptcy case with allowed deficiency claims in the amount of $107,612,342.74 as stated in the Plan (*See* RJN, Ex. 7, Plan, p. 3).

37.    Additionally, judgment creditors existed years prior to the NYNM Acquisition. The McBride Judgment and Criterion Judgment are both the result of litigation filed in 2015 and 2016, and which resulted in judgments against the Debtors that were unsatisfied as of the Petition Date.  Numerous unsecured claimants exist to act as a triggering creditor for this adversary proceeding.

> **b.    The Complaint Properly States the Fraudulent Circumstances Surrounding the Debtors' Usage of the IOLA Account, the Creation of Fictitious Corporate Entities Without Operations, and the Fraudulent Intent of Parmar Which is Present with the NYNM Acquisition**

38.    A Plaintiff has no obligation to prove his/her entire case in the pleading stage. *Wang v. Bethlehem Cent. Sch. Dist.*, 2022 U.S. Dist. LEXIS 140153, 89 (Bankr. N.D.NY, 2022) "In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." *See Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459.  A "strong inference" of fraud may be established by alleging facts showing either (1) a "motive and opportunity to commit the fraud"; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (securities law); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 308 (S.D.N.Y. 2009) (applying "motive and opportunity" test to the pleading of a § 548 claim). A court properly takes into

14

consideration a more liberal approach when construing allegations of actual fraud pled by a trustee, because "a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Picard v. Taylor* (*In re Park S. Sec., LLC*), 326 B.R. 505, 517-18 (Bankr. S.D.N.Y. 2005); *In re O.P.M. Leasing Servs., Inc.*, 35 B.R. 854, 862 (Bankr. S.D.N.Y. 1983) aff'd in part, rev'd in part on other grounds, 48 B.R. 824 (S.D.N.Y. 1985). Whether a conveyance is fraudulent under Section 548(a)(1)(A) is determined by reference to the intent of the debtor-transferor in making the transfer; "the state of mind of the transferee is irrelevant." *Picard v. Merkin* (*In re Bernard L. Madoff Inv. Secs. LLC*), 2011 U.S. Dist. LEXIS 97647, p. 12 (S.D.N.Y. 2011) citing to *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Group, LLC*), 439 B.R. 284, 304 (S.D.N.Y. 2010).  Similarly, the weight of legal authority in New York interpreting NYDCL §276 finds that §276 also focuses on the fraudulent intent of the transferor, not the transferee. *Id* at p. 12-13.  (The Second Circuit has stated that "[t]o prove actual fraud under NYDCL § 276, a creditor must show intent to defraud on the part of the transferor.  Where actual intent to defraud is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *Sharp*, 403 F.3d at 56 (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059, fn. 5 (2d Cir. 1995).

39.     The Complaint properly that Parmar, Zaharis, and Chivukula, who occupied positions of control as officers and directors of the Debtor, had the motive and opportunity to create fictitious business entities, fictitious documents, and sham acquisitions in an effort to divert monies of the Debtors to enrich themselves.  (Complaint ¶14) Fabrication of companies and falsification of documents, in an effort to deceive and defraud creditors of the estate, is evidence of an intent to defraud.  *See United States v. Maciejewski*, 70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y, 1999) (false statements and misrepresentations in documents evidence of an intent to defraud).  The illicit transactions utilized the Robinson Brog Wells Fargo IOLA account, which Parmar and his confederates controlled. (Complaint ¶13) This methodology was utilized to delay and defraud creditors as it masked the outflow of funds, illusion of solvency, and obfuscated Parmar's improper dealings. (Complaint ¶¶17, 25)

40.     It is not in dispute that the <u>Defendant</u> and Parmar structured the NYNM Acquisition in 2017.  All of the challenged Transfers were made 6 months after the acquisition while Defendant and Parmar were operating the Debtors.  The Trustee was appointed after executives resigned leaving the Trustee and creditors to step in and figure out what occurred.  The Trustee properly pleads the circumstances of the fraud stepping into a transaction as a non-party.

41.     The documents presented now include two signed MIPA agreements allegedly governing the NYNM Acquisition and three prices: $22MM, $29.5MM, and $32MM.  The Complaint has pled the circumstances, individual actors involved, motive, opportunity and the involvement of yet another fictional entity.  The Complaint need not plead Defendant's intentional conduct into the fraud at this juncture since the transferor's intent is at issue. A motion to dismiss requires the court to draw on its judicial experience and common sense as to whether a claim is plausible.  *Ashcroft v. Iqbal*, 556 US 662, 129 C. Ct. 1937, 1950 (2009)  The factual assertions of fraud in this instance is not an unfamiliar fact pattern and well-grounded in fact.[5]

        c.     **Defendant's Assertion the Transfers Were Not Made From an Account Controlled by the Debtors and Not "An Interest Of the Debtor In Property" is a Misplaced Factual Argument**

42.     Section 541(a)(1) of the Bankruptcy Code's broad definition of "[p]roperty of the estate" includes "all legal and equitable interests of the debtor in property *wherever located or by whomever held.*" (Emphasis added) 11 U.S.C. § 541(a)(1); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, 2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016).  "The phrase 'all legal or equitable interests of the debtor in property' has been given the broadest possible interpretation and the term equitable interest has generally not been interpreted as limited to a debtor's equity in property." *See Brown v. Dellinger (In re Brown)*, 734 F.2d 119, 123 (2d Cir. 1984).  Further, the "legal or equitable interests" of a debtor have been held to encompass an interest even though such interest is contingent. *Id.*  Section 541(a)(3) of the Code includes within its definition of "property

---

[5] In the *Schoor* adversary proceeding, Adv. No. 8-20-08042, the Court ruled on June 3, 2021, after discovery closed that the Trustee demonstrated by irrefutable evidence the creation of a sham transaction by Parmar and Zaharis despite the existence of contracts and invoices which enabled the duo to improperly divert monies from legitimate creditors of the estate.

of the estate" any property of the debtor, or the proceeds thereof, recovered from a "custodian" of the debtor's property.[6]  *Id.*  The Motion concedes the Debtors maintained a "contingent interest" in the escrow accounts at best and a contingent interest suffices. (Motion, p. 21)  However, the Complaint goes further, pleading the Debtors controlled the IOLA account and commingled personal and debtor funds in the IOLA account to disguise the transactions in order to enrich themselves, friends, family and associates. (Complaint ¶¶13, 14).  The Complaint is well pled.

43.    Defendant attacks the Complaint with the conclusory statement that the Court must accept that the Transfers were paid in accordance with escrow agreements and must accept the Robinson Brog IOLA account was a neutral third party escrow not controlled by the Debtors. However, the Motion directs the Court to out of state cases where control of an account <u>was not at issue</u> so Defendant can profess that it is not possible the Debtors can maintain "a legal or equitable property interest" or "control" of the IOLA Account.  Defendant cites to a group of cases in which monies were deposited into an independent third party escrow, clearly not the fact pattern before the Court.  (Motion, p. 20)  *Cedar Rapids Meats, Inc. v. Hager* (*In re Cedar Rapids Meats, Inc.*), 121 Bankr. 562 (Bankr. N.D. Iowa 1990) (under Iowa law, escrow fund established with third party bank to guarantee payment of workers' compensation claims was not property of debtor's estate where numerous unpaid claims pending; *Dolphin Titan Int'l, Inc. v. Gray & Co., Inc. (In re: Dolphin Titan Int'l, Inc.)*, 93 Bankr. 508, 510 (Bankr. S.D. Tex. 1988) (third party bank held the Loss Fund account created by agreement between debtor and insurance carrier); *In re Coco*, 67 B.R. 365, 369 (Bankr. S.D.N.Y. 1986) (funds deposited into a court account)

44.    These cases are not applicable here because the Complaint alleges that the Transfers were (a) <u>not</u> placed in a third party bank account but in the Debtors' IOLA account were it was commingled with funds of the Debtors, and (b) the account was controlled by the Debtors.[7]  *See*

---

[6] Congress intended § 541(a) to be broad in scope, Whiting Pools, 462 U.S. at 205, and § 541(b) lists the items that are specifically excluded from property of the estate. Due to the broad nature of subsection (a), anything not specifically excluded under subsection (b) should be included as property of the estate. 5 Collier on Bankruptcy P 541.01 (15th ed. rev. 2007).

[7] *See* e-mail from Parmar to Robinson Brog advising them to take monies out of any escrow account and send to his friend J. Petrozza.  (Dec. of J. Nolan, Ex. D)

*Geltzer v. Barish* (*In re Geltzer*), 502 B.R. 760, 768 (S.D.N.Y. 2013) (the broad provision, 'any transfer of an interest in property is a transfer, includes a transfer of possession, custody or control, even if there is no transfer of title, because possession, custody, and control are interests in property.'" Citing to *Togut v. RBC Dain Correspondent Services* (*In re S.W. Bach & Co.*), 435 B.R. 866, 877 (Bankr. S.D.N.Y. 2010). The Complaint adequately pleads the Debtors' control of the IOLA account.

45.     The Defendant argues that the MIPA and the escrow agreement are clear and unrefuted evidence that the funds were Defendant's such that the Debtors cannot maintain an interest in the Transfers.  But the existence of a second MIPA contradict the conclusory assertion that the documents at issue are unrefuted. Further undermining this argument, the Transfers do not match the conditions for distribution under the escrow agreements attached to the Motion. For example, the third escrow agreement (ECF No. 13-5) states any sums would be paid prior to April 10, 2017, and the Transfer of $2MM identified in the Complaint was made on October 12, 2017.  According to the first escrow agreement (ECF No. 13-1) the $3.59MM was to be placed in an interest-bearing account, not an IOLA account.  Thus, even if a Rule 12(b) motion could be supported by undisputed facts, which it cannot be, the exhibits that Defendant cites in her motion establish the *Trustee's* case, or at a minimum point to a factual dispute.

## 2.     FAIR NOTICE WAS PROVIDED TO DEFENDANT OF THE FACTUAL BASIS OF SECOND CLAIM FOR RELIEF OF CONSTRUCTIVELY FRAUDULENT TRANSFER CLAIMS.

46.     The Motion makes numerous arguments (two of which are duplicates from the challenge to the First Cause of Action) asserting that the Complaint should be dismissed because Defendant has not pled led the facts of a constructive fraud, her affirmative defenses are established by law, the Trustee has no standing to prosecute the claims, Defendant gave adequate consideration, and NYNM Acquisition, LLC was an operating company that was solvent.  Each argument fails under its own weight.

a.    **The Complaint Provides Fair Notice of the Facts to Plead Constructive Fraud**

47.    New York's constructive fraudulent transfer provisions are set out over several sections. *See* N.Y. Debt. & Cred. L. §§ 273-275 (McKinney 1990). Each provision consists of three elements: (1) a transfer (2) for less than fair consideration (3) at a time when the debtor suffered from an adverse financial condition. The latter includes insolvency (§ 273), the inability to satisfy a judgment rendered in a money damage action that was pending at the time of the transfer (§ 273-a), unreasonably small capital to engage in business or transaction (§ 274), and an intent or belief that the transferor will incur debts beyond its ability to pay as they mature (§ 275) *Nisselson v. Drew Indus.(In re White Metal Rolling & Stamping Corp*.), 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1998)

48.    While state law utilizes "less than fair consideration", the Code sets forth "if the debtor voluntarily or involuntarily-received less than a reasonably equivalent value." *See* 11 U.S.C. § 548(b)(i). Whether the debtor received "reasonably equivalent value" for the alleged fraudulent transfer is ordinarily a question of fact. *In re Adelphia Comm. Corp.,* 2006 Bankr. LEXIS 4600, 2006 WL 687153 at *11 (Bankr. S.D.N.Y. Mar. 6, 2006) (citing *Satriale v. Key Bank USA (In re Burry*), 309 B.R. 130, 137 (Bankr. E.D. Pa. 2004). NYDCL §272 requires that "fair consideration" be given in good faith.  *See Nisselson v. Softbank AM Corp.* (*In re MarketXT Holdings Corp.*), 361 B.R. 369, 398 (Bankr. S.D.N.Y. 2007). New York courts have long recognized that where the transferee is an officer, director, or major shareholder of the transferor, good faith is lacking as a matter of law. *Id.*; *see also Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 54 (2d Cir. 2005); *Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984). When preferences are given to a debtor corporation's shareholders, officers, or directors, such transfers are generally deemed not to be for fair consideration and *per se* violations of the good faith requirement. *Id.* (citing *HBE Leasing Corp. v. Frank*, 61 F.3d 1054 (2d Cir. 1995)

49.    The Complaint properly pleads the Defendant did not give the Debtors value and the Debtors did not receive "reasonably equivalent value" for the Transfers. (Complaint, §30) The value of what was received, if anything, or whether it was "reasonably equivalent" is a question of fact.  As alleged in the Complaint, Defendant was an officer of the NYNM and it would be unfair and inequitable to permit insiders to pay their own debts while the corporation's assets are insufficient to satisfy the other creditors.  *Farm Stores, Inc. v. School Feeding Corp*., 102 A.D.2d 249, 477 N.Y.S.2d 374, 378 (N.Y. App. Div. 1984), aff'd, 64 N.Y.2d 1065, 479 N.E.2d 222, 489 N.Y.S.2d 877 (N.Y. 1985). $5MM was paid by the Debtors on the eve of the Petition Date when monies were diverted to the IOLA Account away from unsecured creditors.(Complaint §13, 17) Not only is the second element pled, but this 11th hour transfer to an insider creates a presumption of a constructively fraudulent transfer.

50.    In effect, § 273-a "substitutes the requirement of an unpaid judgment (or a pending action) for the requirement of insolvency."  *Mitchell v. Lyons Prof'l Servs., Inc*., No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431, at *3 (E.D.N.Y. Sept. 1, 2013) vacated and remanded on other grounds, *Mitchell v. Garrison Protective Servs., Inc*., 579 F. App'x 18 (2d Cir. 2014); *see also Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 938 (S.D.N.Y. 1995) ("a claimant under § 273-a need not demonstrate the insolvency of the judgment debtor.[8]  It is sufficient to support the claim that the judgment has not been satisfied; and if, as here, it has not, the question of insolvency is irrelevant to the considerations at hand.")  As set forth above, the McBride and Criterion Judgments existed and went unsatisfied as of the Petition Date. Similarly, the Complaint references the creation of sham acquisitions by the Debtors' executives and fabricating customers and income streams to inflate the value of the Debtors which led to a federal indictment. (Complaint, 14) The indictments reference Northstar First Health, LLC, Phoenix

---

[8] Under N.Y. Debt. & Cred. Law § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration. *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, 41 (Bankr. E.D.N.Y, 2014) (trustee has met his burden on summary judgment and there is no genuine issue of fact where Debtor transferred property for less than fair consideration or reasonably equivalent value, not on account of antecedent debt, and for insider transfer), citing to *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 20, 2000).

Health, LLC and MDRX Medical Billing which had no real assets or revenue. (RJN, Ex.8, p.6) Further, the Go-Private Transaction which preceded the NYNM Acquisition by one month resulted in the Debtors being saddled in $145,000,000 in debt for the purchase of fictitious entities. (RJN, Ex.8, pp.4-5)  There are a multitude of facts pled to state plausible claims the Debtors suffered from an adverse financial condition at the time of the Transfers. The Complaint pleads the factual underpinning for a constructively fraudulent transfer claim.

> **b.    The Motion's Claim That the Transfers Were Not Made From an Account Controlled by the Debtors and Not "An Interest Of the Debtor In Property" is A Misplaced Factual Argument**

51.    As addressed above, the Debtors had an interest in property in the Transfers made to Defendant.

> **c.    The Assertion That NYNM Acquisition Made the Closing Payment and Was Solvent is Argument of Counsel**

52.    The Motion moves on to claim that "it is abundantly clear from the documentary evidence that the Transfers originated from NYNM Acquisition" an entity without creditors and which could not have been insolvent as it had no creditors.  (Motion, pp. 17-18)  The argument is not only factually wrong, but disingenuous.

53.    The Complaint alleges that the Debtors' IOLA Account, which it controlled, was the source of the Transfers which were identified with particularity in the Complaint.  (Complaint ¶13)  Defendant will have ample opportunity to prove her claim of the legitimacy of the deal and the extensive due diligence she performed in selling her company to a fictional Parmar entity. Defendant will have ample opportunity to submit evidence to support her contention that NYNM Acquisition, LLC paid the Transfers.  This Motion is not the proper forum for Defendant to litigate her factual defense to the Complaint's well pled allegations

**3.     FAIR NOTICE WAS PROVIDED TO DEFENDANT OF THE FACTUAL BASIS OF THIRD CLAIM FOR RELIEF OF AVOIDANCE OF PREFERENTIAL TRANSFERS**

54.     The Motion claims the Complaint cannot state a viable Third Claim For Relief for avoidance of a preferential transfer as the Debtors had no interest in the Transfers, Defendant was not a creditor paid on a debt, NYNM Acquisition made the Transfers and was solvent and Defendant has various defenses.  (Motion, p. 19).

**a.     Plaintiff has Both a Legal and an Equitable Right in the Transfers and Since it Exercised Control Over the IOLA Account, Has a Possessory Interest in the Transfers**

55.     As addressed above, the Debtors had an interest in property in the Transfers made to Defendant.

**b.     To or For the Benefit of a Creditor**

56.     Section 547(b)(1) requires that the transfer be "to or for the benefit of a creditor." This requirement has been loosely construed by the courts. *See In re CVEO Corp*., 327 B.R. 210, 214 (Bankr.D.Del.2005). The Code defines a creditor as any "entity that has a claim against the debtor." 11 U.S.C. § 101(10).  A "claim" is defined as a "right to payment." 11 U.S.C § 101(5)(A). Even a contingent creditor satisfies the definition of "creditor" under the Bankruptcy Code.  *See Bergner v. Bank One, N.A. (In re P.A. Bergner & Co. Holding Co.*), 187 B.R. 964 (Bank. E.D.WI. 1995); *see also* 11 U.S.C. § 101(5). The Complaint properly pleads Defendant was a creditor and insider of one or more of the Debtors.  (Complaint ¶33) The Complaint pleads Defendant is a creditor of the Debtors and Defendant filed a proof of claim in the Orion Healthcorp, Inc. bankruptcy case wherein she stated she was a "Creditor" of Orion. (Complaint ¶¶21, 22, 33; Ex. C)  Defendant claims that she had a "right to payment" when she executed the MIPA. The delayed creditor argument made in the Motion is simply wrong.

**c.     Made For or On Account of an Antecedent Debt Owed by the Debtors Before Such Transfer Was Made**

57.     Under § 547(b)(2), "a debt is antecedent if the debtor incurs it before making the alleged preferential transfer." *See Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach.*

*Corp.)*, 435 B.R. 819, 837 (Bkrtcy. N.D.N.Y. 2005) citing to *Creditor Trust v. Harari (In re G. Survivor Corp.)*, 217 B.R. 433, 440 (Bkrtcy. S.D.N.Y. 1998). A debt is incurred when the debtor first becomes legally obligated to pay. *See Mendelsohn v. Louis Frey Co. (In re Moran)*, 188 B.R. 492 (Bankr. E.D.N.Y. 1995) citing to *In re Pan Trading Corp., S.A.*, 125 Bankr. 869, 875 (Bankr. S.D.N.Y. 1991); *see In re Western World Funding, Inc.*, 54 Bankr. 470, 477 (Bankr. D. Nev. 1985). Thus, the concept of a debt and a claim are coextensive under the Code, and a debtor incurs a debt to a creditor for purposes of § 547(b)(2) as soon as the creditor would have had a claim against the debtor's estate. *Stoebner v. San Diego Gas & Elec. Co. (In re LGI Energy Solutions)*, 482 B.R. 809, 818 (BAP 8th Cir. 2012). The Complaint references the NYNM transaction, the obligation to pay on March 2017, and the existence of a debt. (Complaint ¶¶16, 35) The Complaint adequately pleads the existence of the debt antecedent to the Transfers which occurred well later in October 2017 and in 2018.

### d.    "Made While the Debtor Was Insolvent"

58.    The issue of solvency is a unique question of fact. *In re LATAM Airlines Grp. S.A.,* 2022 Bankr. LEXIS 2048, 25 (Bankr. S.D.N.Y. 2022); *See Gordon v. Harrison (In re Alpha Protective Servs.)*, 531 B.R. 889, 902 (Bankr. M.D. Ga. 2015) (Although the language of the Complaint mirrors elements of § 547, the question of whether a debtor was insolvent at the time of the payments remains a factual issue to be decided at trial or some other juncture. Citing to *In re Haven Trust Bancorp, Inc*., 461 B.R. 910, 913 (Bankr. N.D. Ga. 2011). Further, the Debtor is presumed to be insolvent in the 90 days prior to the Petition Date, or December 16, 2017. *See* § 547(f).

59.    The Complaint alleges Parmar, Chivukula, and Zaharis created fictitious businesses, customers, and created fake income streams to maintain the illusion the Debtors were solvent while simultaneously diverting the Debtors' monies to themselves, their family, and their friends. (Complaint ¶¶14, 17) The Plan and the bankruptcy Schedules identify in excess of $100MM in allowed unsecured debt created by the Go-Private Transaction. The Complaint pleads facts to support a claim of insolvency.

e.      **That Enables Such Creditor to Receive More Than Such Creditor Would Receive If—(A) the Case Were a Case Under Chapter 7 of This Title; (B) the Transfer Had Not Been Made; and (C) Such Creditor Received Payment of Such Debt to the Extent Provided By the Provisions of This Title**

60.      By its plain language, the test set forth in § 547(b)(5) of the Bankruptcy Code is meant to determine what a creditor would receive in a hypothetical Chapter 7 case of the debtor, and whether such amount is more than what was actually received by the creditor through the alleged preferential transfer.  *Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.)*, 356 B.R 327, 336-337 (Bkrtcy. S.D.N.Y. 2006).  As long as the distribution in bankruptcy is less than one-hundred percent, any payment on account to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation.  *See In re Lewis H. Shurtleff*, 778 F. 2d 1416, 1521 (9th Cir., 1985). The Complaint pleads Defendant was paid more than in a Chapter 7 liquidation. (Complaint ¶38) This is sufficient. The Motion sets forth no legal authorities to decide this factual issue as a matter of law on a motion to dismiss.

f.      **The Motion Gets it Wrong that Affirmative Defenses Such as a Constructive Trust, Contemporaneous Exchange, or the Ordinary Course of Business Defense, Can be Established on a Motion to Dismiss**

61.      The burden of proving this affirmative defense to a preference claim is on the transferee. 11 U.S.C. § 547(g). The contemporaneous exchange and ordinary course of business defenses are affirmative defenses. 11 U.S.C. § 547(c)(1), (c)(2) The Motion claims Defendant returned the monies in the ordinary course of business  and/or the closing payments were a contemporaneous exchange.  (Motion, p. 22)  However, these defenses must be pled as affirmative defenses and supported by evidence.  *Sapir v. Keener Lumber Co*., 143 B.R. 347, 353 (Bankr. S.D.N.Y. 1992) For example, a contemporaneous exchange defense has 3 elements and a conclusory statement by counsel such as, "the closing payment was a contemporaneous exchange", is misplaced. As noted in the legislative history, Section 547 looks to both debtor and creditor behavior during the preference period and works to "discourage unusual action by either the debtor

or his creditor during debtor's slide into bankruptcy" when examining the ordinary course of business defense.  *See* H.R. Rep. No. 595, 95th Sess. 373-74 (1977), reprinted in 1978 U.S.C.C.A.N. at 5787, 6329.   The facts surrounding the Transfer are relevant.   Similarly, Defendant argues a constructive trust over the funds but such claim is a defense.  *See Miller v. Hartford Life Ins. Co*., 64 F. App'x 795, 797 (2d Cir. 2003) ("[U]nder New York law, one who seeks to impose a constructive trust must establish the facts giving rise to that remedy by clear and convincing evidence.").   Plaintiff has no obligation to address Defendant's unpled affirmative defenses.

### 4.   THE MOTION AS TO THE FOURTH CLAIM FOR RELIEF IS MOOT AS PLAINTIFF DISMISSED FIDELITY NATIONAL TITLE INSURANCE COMPANY

62.    On September 8, 2020, a Notice of Dismissal was filed in the adversary proceeding dismissing Defendant Fidelity National Title Insurance Company. The Fourth Claim For Relief to which the Motion takes issue is moot.  (ECF No. 18)

### 5.   FAIR NOTICE TO DEFENDANT OF FACTUAL BASIS OF THE FIFTH CLAIM FOR RELIEF FOR RECOVERY OF PROPERTY UNDER § 550 AND NY DEBT & CRED. LAW §278

63.    Citing to inapposite law of Texas, the Motion describes the purpose of Sections 550 and NYDCL §278, and postulates that Section 550 is a "recovery statute" properly stricken from any complaint at the pleading stage.   No case instructs a court to strike a Section 550 cause of action.

64.    Section 550(a) of the Bankruptcy Code sets out the elements a trustee must satisfy to recover transferred property: that the transfer was avoided and where the defendant is an initial or subsequent transferee.  *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC*), 12 F.4th 171, 197 (2d Cir. 2021)  Section 550(b) provides an exception to the trustee's general power of recovery under § 550(a).

65.    The Complaint pleads actionable theories of avoidance under federal and state law for avoidance of the Transfers, and provides adequate notice to Defendant of the cause of action. *See FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.*),

581 B.R. 116, 146 (Bankr. D. Del. 2018) (denial of summary judgment on Section § 550 cause of action as material issue of fact exists) Section § 550 is clearly a cause of action available to the Trustee.  Nonetheless, if Defendant will stipulate she was the "initial transferee" of the Transfers, Plaintiff will dismiss the Fifth Claim For Relief.  Alternatively, Defendant can respond in the Answer.  Either way, the Complaint properly pleads the cause of action.

**6.   THE SIXTH CLAIM FOR RELIEF OBJECTING TO DEFENDANT'S FILED CLAIM IS LEGALLY PROPER AND ALLOWS DISCOVERY TO PROCEED AS A CONTESTED MATTER**

66.    The Motion misstates the basis for the Objection to the Filed Claim and the procedure to file counter-claims.  The fact that Defendant attached documents to a proof of claim does not mean the claim must be accepted let alone accepted at claimant's estimate of value.  As a contested adversary proceeding, the parties will have the opportunity to conduct discovery prior to any evidentiary hearing.

67.    Proofs of claim can be challenged by motion or by filing a complaint.

"An objection to a claim is a contested matter within the meaning of Rule 9014. When the trustee joins certain counterclaims with the objection, a different procedure is envisioned, particularly with respect to the counterclaims. Normally, a trustee's counterclaim will be based on some action described in Rule 7001 and be styled as an adversary proceeding. Part VII of the Bankruptcy Rules govern the procedural elements of adversary proceedings. Should a counterclaim be based on one of the kinds of suits described in Rule 7001, the counterclaim must be asserted in the manner of a complaint to which the creditor would be obliged to interpose an answer. Thus, by force of Rule 3007, should the trustee object to a claim and at the same time assert, by way of counterclaim, a suit to avoid a preference, that counterclaim would be an adversary proceeding within the meaning of the Bankruptcy Rules. As a result, if a trustee wishes to assert a counterclaim with an objection to a claim, at least the counterclaim portions of the trustee's proceeding must proceed under Rule 7001.  4 Collier on Bankruptcy P 502.02[3][b]

68.    The filing of a complaint and an objection to claim creates a "contested matter" under Bankruptcy Rule 9014.  *In re Taylor,* 132 F.3d 256, 260 (5th Cir. 1998)  The provisions for formal litigation and discovery apply in a contested matter, unless the court directs otherwise.  *See*

Bankruptcy Rule 9014(c)  Therefore, a debtor seeking more information from a creditor respecting its proof of claim may take depositions orally or by written questions, serve interrogatories, requests for production, and requests for admission.  *In re Brunson*, 486 B.R. 759, 771 (Bankr. N.D. Tex. 2013)  "The effect of section 502(b)(1) is to make available to the trustee any defense to a claim that would have been available to the debtor.  For example, if a claim would be unenforceable against the debtor or against the property of the debtor because, under applicable non-bankruptcy law, the debtor could raise the defense of usury, fraud, lack of consideration, or unconscionability, such defense affords the trustee a basis for the disallowance of the claim in bankruptcy." 4 Collier on Bankruptcy P 502.02[2][b].  Pursuant to 11 U.S.C §502(d), a claim is also properly subject to objection if the claimant is the recipient of recoverable property by the trustee:

> (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

69.    Defendant's Claim is (a) based on revenue projections and calculation of damages in year one of $9,017,034 and (b) based off estimated revenue projections for a calculation of damages of $38,803,403 in year 2. (Complaint, ¶¶21, 22; Ex. C)  The Objection takes issue with Filed Claim, as the calculations are contradicted by the Debtors' books and records which do not support Defendant's revenue projections and itemization of damages. (Complaint ¶47) *See Brown v. Samalin & Bock, P.C.*, 168 A.D.2d 531, 532, 563 N.Y.S. 2d 426 (2d Dept. 1990) (speculative damages which are incapable of being proven with reasonable certainty properly stricken) Similarly, the Complaint alleges Defendant received intentionally fraudulent, constructively fraudulent and preferential transfers and breached her fiduciary duties as CEO.  Each of the causes

of action present a credible basis to strike the claim. The objections to the Filed Claim are well pled.

70.     The Motion directs the Court to a string of cases discussing the filing of omnibus objection motions under Rule 9014 where the sole objection is lack of documentation. *See In re Tatro,* 2015 Bankr. LEXIS 1648, *7 (W.D.N.Y. 2015) (Debtors filed an omnibus objection to 102 claims); *In re Brunson*, 486 B.R. 759, 762 (Bankr. N. D. Tex. 2013) (objections filed by Debtors to every unsecured claim in case); *In re Rehman*, 479 B.R. 238, 239 (Bankr. D. Mass. 2012) (omnibus objection motion filed for disallowance of 13 out of the 15 proofs of claim filed); *In re Reynolds*, 470 B.R. 138, 140 (Bankr. D. Colo. 2012) (sole basis of objection to disallow claims was failure to attach documents to proof of claims). The cases are not analogous to the present dispute where substantive objections and causes of action are asserted in a complaint. Discovery should go forward pursuant to Bankruptcy Rule 7000 and the Motion denied.

### 7.    THE SEVENTH CLAIM FOR RELIEF TO EQUITABLY SUBORDINATE DEFENDANT'S FILED CLAIM IS WELL PLED

71.     In determining whether a claim should be equitably subordinated, many courts have applied the three-part test set forth in *In re Mobile Steel Co.*: (i) the subordinated creditor must have engaged in some type of inequitable conduct; (ii) the misconduct must have resulted in injury to other creditors or conferred an unfair advantage on the creditor to be subordinated; and (iii) equitable subordination of the claim must not be inconsistent with the other provisions of the bankruptcy laws. *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.),* 343 B.R. 444, 460-461 (Bankr. SDNY 2006)) citing to *Benjamin v. Diamond (In re Mobile Steel Co.*), 563 F.2d 692, 700 (5th Cir. 1988). [9]

72.     The Motion contends that the Complaint must allege that Defendant committed fraud, engaged in illegal activity, contributed to undercapitalization, improperly took monies from Debtors or committed a foul. (Motion, p. 28) The assertion is inaccurate. Inequitable conduct

---

[9] The third prong of the *Mobile Steel* test (requiring that equitable subordination be consistent with the provisions of bankruptcy law) is of little significance today.

encompasses conduct that may be lawful but is nevertheless contrary to equity and good conscience. It includes a secret or open fraud, lack of good faith by a fiduciary, unjust enrichment, or enrichment brought about by unconscionable, unjust or unfair conduct or double-dealing. *In re Lois/USA*, 264 B.R. 69, 134 (Bankr. S.D.N.Y. 2002); *In re Adler, Coleman Clearing Corp.,* 277 B.R. 520, 563 (Bankr. S.D.N.Y. 2002). Other courts have described the type of misconduct that warrants equitable subordination as including: (i) fraud, illegality or breach of fiduciary duty; (ii) undercapitalization of the debtor; and (iii) control or use of the debtor as a vehicle to benefit another. *In re Granite Partners, L.P*., 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997*); In re 80 Nassau Assocs*., 169 B.R. 832, 838 (Bankr. S.D.N.Y. 1994).

73.    The Complaint properly pleads that Defendant owed Debtors fiduciary duties through her roles as Managing Member and CEO. (Complaint ¶¶61, 62) Defendant breached her duties of care, loyalty, and candor and operated the Debtors in an unreasonable manner following her sale of the company. (Complaint ¶¶62-64)  When NYNM did not perform as she projected, rather than take appropriate action, she abruptly quit destroying its value.  During this time Defendant was an insider (Complaint ¶33) and her conduct damaged the Debtors and general unsecured creditors. *Adelphia Communs. Corp. v. Bank of Am., N.A.* (*In re Adelphia Communs. Corp*.), 365 B.R. 24, 69 (Bankr. S.D.N.Y. 2007) (motion to dismiss equitable subordination claims denied as nature of underlying conduct in complaint, knowingly or recklessly assisting in loss of value of debtors assets, will have to be fleshed out as a factual matter)  The Complaint adequately pleads a cause of action for equitable subordination of the Defendant's filed claim.

### 8.    THE MOTION CHALLENGING THE EIGHTH CLAIM FOR RELIEF IS MOOT AS PLAINTIFF DISMISSED FIDELITY NATIONAL TITLE INSURANCE COMPANY

74.    On September 8, 2020, a Notice of Dismissal was filed in the adversary proceeding dismissing the Fidelity National Title Insurance Company. (ECF No. 18)  The Declaratory Relief claim sought a determination as to funds held by Defendant Fidelity National Title Insurance Company and ultimately their turnover.  With the dismissal of Fidelity, the Trustee consents to the withdrawal of the Eighth Claim For Relief.

**9.      THE TRUSTEE HAS SUFFICIENTLY PLED THAT DEFENDANT WAS A FIDUCIARY OF NYNM AND BREACHED HER FIDUCIARY DUTIES**

75.      "Under New York law, a claim for breach of fiduciary duty involves three elements: (1) the existence of a fiduciary relationship, (2) the breach of the fiduciary duty and (3) damages resulting from the breach." *Grumman Olson Indus. v. McConnell* (*In re Grumman Olson Indus.*), 329 B.R. 411 (Bankr. S.D.N.Y 2005). A fiduciary relationship exists "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991).[10] As addressed below, all elements of a claim for breach of fiduciary duty are satisfied here: (1) Defendant owed NYNM fiduciary duties through her roles as Managing Member and CEO; (2) Defendant breached her fiduciary duties by operating NYNM in an unreasonable manner; and (3) this breach caused NYNM damages including lost revenue and growth.

**a.      Defendant Owed Fiduciary Duties as the Managing Member and CEO of NYNM**

76.      Defendant clearly owed fiduciary duties to Debtor NYNM. "The existence of fiduciary duties depends on the facts of a particular relationship." *Boley v. Pineloch Associates, Ltd.*, 700 F. Supp. 673, 680-681 (S.D.N.Y. 1988).  However, it is well-established that managers and officers of New York limited liability companies owe fiduciary duties to the companies they serve and their members. *See, e.g.*, *Currie v. Sanchez (In re Sanchez)*, No. 14-22667 (SHL), 2016 Bankr. LEXIS 3481, at *18 (Bankr. S.D.N.Y. Sept. 26, 2016) ("The Defendant was the Managing Member and CEO of [the LLC] and was responsible for day-to-day operations. As a corporate officer, the Defendant was a fiduciary…."); *Signature Apparel Grp. LLC v. Laurita (In re Signature Apparel Grp. LLC)*, No. 09-15378 (RG), 2015 Bankr. LEXIS 671, at *28 (Bankr. S.D.N.Y. Mar. 4, 2015) ("By default, officers, directors, and members of a limited liability company owe traditional fiduciary duties of loyalty and care to the company."); *Res. Fin. Co. &*

---

[10] *See also Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 722 Fed. Appx. 12 at *15 (2d Cir. 2018) (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) ("[w]hen parties deal at arm['']s length in a commercial transaction" no fiduciary relationship will arise "absent extraordinary circumstances"). "In sum, '[a] fiduciary relationship is necessarily fact-specific and is also grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.'" *Galvstar Holdings, LLC*, 722 Fed. Appx. at *15.

*RFC I, LLC v. Cynergy Data, LLC*, 2013 NY Slip Op 32944(U), ¶ 7 (Sup. Ct.) ("As a corporate officer, Sy owed a fiduciary duty to MPS LLC.").

77.     Indeed, Defendant recognizes as much in her Motion, stating that "[a] Managing Member or Manager of a New York limited liability company must 'perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.'" *Geltzer v. Lefkowitz* (*In re Kollel Mateh Efraim, LLC*), 2011 Bankr. LEXIS 1566 at *15 (Bankr. S.D.N.Y. April 28, 2011) (quoting NY CLS LLC § 409(a)); *see also* Motion at p. 33.

78.     There is therefore no reasonable dispute that Defendant owed fiduciary duties since, not only did Defendant hold herself out as the CEO of NYNM post-acquisition, Defendant ***verified*** that she was "the Managing Member" and CEO of NYNM ***after*** the NYNM Acquisition. RJN, Exs. 10-11; *see also* (Dec. of J. Nolan, Exs. F-H (emails confirming Defendant was CEO of NYNM after the NYNM Acquisition); *New York Network Management LLC v. Kevin Kelly, et al.*, Index. No. 522203/2016 (April 20, 2018) (Decision and Order) (RJN Ex. 6) p. 3 (holding that "Elizabeth [Kelly] is the Managing Member of NYNM").  Moreover, while Defendant attempts to draw parallels between herself and the co-defendant in *Geltzer*, the roles each played in relationship to the respective companies are fundamentally distinct. In *Geltzer*, the trustee contended that an LLC's sole managing member along with his friend of "thirty years" had "breached their fiduciary duties as Managers of the Debtor." 2011 Bankr. LEXIS 1566 at *14. The Court found that the friend, a Rabbi whom the managing member allowed to operate a children's camp as "at worst, . . . a favor," owed no fiduciary duties to the LLC as he "was not designated as the Manager in the Articles of Organization and no operating agreement was offered into evidence." *Id*. at *16.

79.     In contrast, here, Defendant was the pre-acquisition principal owner, Managing Member, and CEO of NYNM. Following the NYNM Acquisition, Defendant remained NYNM's CEO and, by her own verification, was NYNM's Managing Member and CEO until at least

31

February 2018. These facts are distinctly different from a rabbi operating a summer camp, which "spent its own money to make repairs that ultimately inured to the NYNM's benefit" as against Defendant who not only received a salary from NYNM as CEO but also, upon information and belief, obtained profits through the Consulting Agreement. *Id.* at \*25.

80.     Further, even if Defendant did not hold the titles of Managing Member and CEO (alleged facts that the Court must treat as true for purposes of a Rule 12 motion), as Defendant asserts in the Motion, this alleged "dispute" of fact does not absolve Defendant of her fiduciary duties if the facts (as they are alleged in the Complaint) demonstrate that she "discharge[ed] the duties of that office." *Brehm v. Eisner* (*In re Walt Disney Co. Derivative Litig.*), 906 A.2d 27, 48 (Del. 2006); *Greater Miami Baseball Club Ltd. P'ship. v. Selig*, 171 F.R.D. 73, 78 (S.D.N.Y 1997) ("A de facto officer is one who is in actual possession of an office under the claim or color of an election or appointment, and is in the exercise of its functions and in the discharge of its duties") (internal citations omitted.)  Consequently, at a minimum, the Trustee has "'raise[d] a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2018) (quoting *Twombly*, 550 U.S. at 556, 570).[11]

### b.     Defendant's Breach of Her Fiduciary Duties Caused NYNM to Lose Revenue and Inhibited Growth

81.     As Defendant, by her own admission, has established she was a Managing Member and CEO of NYNM and thus owed fiduciary duties to NYNM, the only remaining issues are whether the Complaint demonstrates a breach of duties by Defendant and "clearly alleges an injury" resulting therefrom. *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 720 (S.D.N.Y. 2019). Here, both questions are answered affirmatively.  First, Defendant breached the duties she owed NYNM and its members, by operating and managing NYNM in an unreasonable

---

[11] Furthermore, Defendant can be held to owe NYNM fiduciary duties irrespective of whether she is deemed a Manager of NYNM at the relevant period. For example, in *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 719-720 (S.D.N.Y. 2019), the court rejected defendant's claim that he merely had a "conventional business relationship" with plaintiff LLC and not one creating fiduciary duties. There, plaintiff alleged that defendant, who was neither an employee, manager, or member of plaintiff LLC, had "undertook 'a duty...to act primarily for the benefit' of [plaintiff] in accepting [plaintiff's] funds to purchase Bitcoin on its behalf." *Id*. at 720. Consequently, the court ruled that plaintiff had "adequately allege[d] a claim for breach of fiduciary duty" to survive defendant's motion to dismiss.

way and making decisions that had no viable business reasons.  (Complaint, ¶¶ 18, 64)  Due to these decisions and failures to act, NYNM's monthly billing and revenue diminished drastically between March 2017 and June 2018. *Id.*  Moreover, NYNM's poor performance also failed to match the growth rates that were anticipated at the time of the NYNM Acquisition. *Id.*  Tellingly, Defendant fails to challenge these damages allegations in the Motion.

## IV.

## <u>CONCLUSION</u>

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the Motion be denied in its entirety, and that the Defendant be ordered to file an answer within 20 days.  In the event the motion is deemed granted in any form, Plaintiff should be allowed leave to amend since no such leave to amend has been previously requested or granted. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."; *see* also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Dated:    October 3, 2022                          Respectfully submitted,


By      */s/ Jeffrey P. Nolan*
       Ilan D. Scharf, Esq.
       Jeffrey P. Nolan, Esq.
       780 Third Avenue, 34th Floor
       New York, NY 10017
       Tel: (212) 561-7700
       Email: ischarf@pszjlaw.com
            jnolan@pszjlaw.com

       Attorneys for Plaintiff Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al.*