# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------- :

In re:                                 : Chapter 11
                                       :
ORION HEALTHCORP, INC[1].              : Case No. 18-71748 (AST)
                                       :
                           Debtors.    : (Jointly Administered)
-------------------------------------- :
                                       :
HOWARD M. EHRENBERG IN HIS CAPACITY    :
AS LIQUIDATING TRUSTEE OF ORION        : Adv. Pro. No. 20-08042 (AST)
HEALTHCORP, INC., ET AL.,              :
                                       :
                           Plaintiff,  :
                                       :
v.                                     :
                                       :
HOWARD M. SCHOOR,                      :
                                       :
                           Defendants. :
                                       :
-------------------------------------- :

### AFFIDAVIT OF JEFFREY P. NOLAN IN SUPPORT OF
### PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER
### AWARDING REASONABLE ATTORNEYS' FEES AND EXPENSES

STATE OF CALIFORNIA        )
                           )    ss.:
COUNTY OF LOS ANGELES      )

   JEFFREY P. NOLAN, being duly sworn, deposes and says:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

1.    I am an attorney at law duly licensed to practice before all courts in the State of California.  I am an attorney with the law firm of Pachulski Stang Ziehl & Jones LLP, attorneys of record for Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al., for the estates of the above-captioned debtors, counsel of record in this adversary proceeding.  The facts stated herein are of my own personal knowledge, or made known to me from a review of the files and pleadings in this action which are maintained in the ordinary course of business.  If called upon as a witness to any facts set forth herein, I could and would competently testify thereto.

2.    I make this Affidavit in support of the accompanying Plaintiff's Motion for Entry of an Order Awarding Reasonable Attorneys' Fees and Expenses (the "Motion").[2]

3.    Attached hereto as **Exhibit A** is a true and correct copy of Notice of Ruling transcript from the June 3, 2021 hearing.

4.    Attached hereto as **Exhibit B** is a true and correct copy of the December 9, 2019, demand letter executed by the undersigned and mailed to Defendant, a copy of which is maintained in the client files of this office.

5.    Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff's Request for Admissions, Set One propounded on Defendant on May 1, 2020, a copy of which is maintained in the client files of this office.

6.    Attached hereto as **Exhibit D** is a true and correct copy of Defendant's Responses to Plaintiff's Request for Admissions, Set One dated October 13, 2020 received by Plaintiff, a copy of which is maintained in the client files of this office.

---

[2] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Motion.

2

7.     The hourly billing rate for the undersigned for 2020 was $825.00 per hour.  The current billing rate for 2021 is $925.00 per hour.  The rate is the standard billing rate for the undersigned in this market based on my position as a litigation attorney with the Firm, background and thirty (30) years of experience before federal and state courts.

8.     Attached hereto as **Exhibit E** is a true and correct copy of a summary of the fees entitled "Post-Discovery" incurred after October 14, 2020, following the receipt of Defendant's Responses to Requests for Admission.  The summary contains the actual billing entries to the client, copied verbatim, but redacted to remove certain privileged information.  The amount incurred after receipt of the discovery responses was $77,517.50.  If necessary, the Firm can produce the actual billing records in camera, but for ease of reference utilized the excerpts.

9.     Attached hereto as **Exhibit F** is a true and correct copy of a summary of the fees entitled "Deposition" incurred with respect to the notice and taking of the deposition of Howard M. Schoor in the amount of $14,319.50, following the receipt of Defendant's Responses to Requests for Admission.  The attached summary is a compilation of charges from our attorney invoice billing records for the time period in question.

10.    Attached hereto as **Exhibit G** is a true and correct copy of a summary of the fees entitled "Motion for Summary Judgment Fees" incurred after October 14, 2020, with respect to drafting, responding, appearing and arguing the motion in the amount of $36,919.

11.    Attached hereto as **Exhibit H** is a true and correct copy of the legal research charges received by the Plaintiff for the filing of law and motion practice in the adversary.  The total sum charged to the client, after discounts, is $1,904.57.

3

12.     Attached hereto as **Exhibit I** is a true and correct copy of a summary of the costs incurred of $5,986.62 entitled "In Adversary Orion Healthcorp vs. Howard Schoor", along with a true and correct copy of the Court Reporter's invoice for the deposition of Defendant.

13.     Attached hereto as **Exhibit J** is a true and correct copy of the fees incurred in this adversary at the firm of $97,356.50.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of June, 2021 at Los Angeles, California.



Jeffrey P. Nolan

SWORN TO AND SUBSCRIBED before me this
___ day of June, 2021



> SOPHIA LOUISA LEE
> Notary Public - California
> Los Angeles County
> Commission # 2337676
> My Comm. Expires Dec 16, 2024

4

# EXHIBIT A

```
                                                        Page 1

  1    UNITED STATES BANKRUPTCY COURT

  2    EASTERN DISTRICT OF NEW YORK

  3    Case No. 18-71748-ast

  4    Adv. Case No. 20-08042-ast

  5    - - - - - - - - - - - - - - - - - - - - - - - - - x

  6    In the Matter of:

  7

  8    ORION HEALTHCORP, INC.,

  9

 10            Debtor.

 11    - - - - - - - - - - - - - - - - - - - - - - - - - x

 12    HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE

 13    OF ORION HEALTHCORP, INC., et al.,

 14                   Plaintiffs,

 15            v.

 16    HOWARD SCHOOR,

 17                   Defendants.

 18    - - - - - - - - - - - - - - - - - - - - - - - - - x

 19

 20

 21

 22

 23

 24

 25
```

Page 2

1                United States Bankruptcy Court

2                290 Federal Plaza

3                Central Islip, New York 11722

4

5                June 3, 2021

6                10:11 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1   HEARING re 43 Amended Notice of Motion/Presentment Filed by

2   Plaintiff Howard M Ehrenberg);

3

4   HEARING re 27 Motion for Summary Judgment Filed by Plaintiff

5   Howard M Ehrenberg)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   PACHULSKI STANG ZIEHL & JONES LLP

 4        Attorneys for the Trustee

 5        780 Third Avenue, 34th Floor

 6        New York, NY 10017

 7

 8   BY:  JEFF NOLAN

 9        ILAN SCHART

10

11   PARLATORE LAW GROUP

12        Attorneys for 2 River Terrace

13        One World Trade Center, Suite 8500

14        New York, NY 10007

15

16   BY:  MARYANN HADDEN

17

18   ROSEBURG & PITTINSKY, LLP

19        Attorneys for Residential Board of Managers of

20        Riverhouse One Rockefeller Park Condominium

21        232 Madison Avenue, Suite 906

22        New York, NY 10016

23

24   BY:  LAWRENCE PIITTINSKY

25
```

```
1   GIORDANO HALLERAN & CIESLA, P.C.

2        Attorneys for Howard Schoor

3        125 Half Mile Road, Suite 300

4        Red Bank, NJ 07701

5

6   BY:  DONALD CAMPBELL

7

8   ROSEN & ASSOCIATES, LLP

9        Attorneys for Arvind Walia

10       747 Third avenue, 20th Floor

11       New York, NY 10017

12

13  BY:  SANFORD ROSEN

14       PARIS GYPARAKIS

15

16  ALSO PRESENT TELEPHONICALLY:

17

18  JOSEPH ORBACH

19

20

21

22

23

24

25
```

```
 1                 P R O C E E D I N G S
 2              CLERK:  Good morning.  I am Amy Tenorello, the
 3      courtroom deputy for the Honorable Chief Judge Alan S.
 4      Trust.  This hearing is being recorded.
 5              THE COURT:  All right.  We'll take up.  Ms.
 6      Tenorello, if you want to call the first two matters?
 7              CLERK:  Oh, I'm sorry, Judge.  The first matter is
 8      18-71748 Orion Healthcorp, Inc.
 9              THE COURT:  I'm going to take appearances in the
10      main case on the sale motion as well as in adversary
11      proceeding 20-8051 which is on for status today, Ehrenburg
12      v. Sartison, et al., so who's appearing on those matters?
13              MR. SCHARF:  Sorry, I was on mute.  Good morning,
14      Your Honor.  It's Ilan Scharf and Jeff Nolan of Pachulski
15      Stang Ziehl and Jones on behalf of the Trustee.
16              MR. PITTINSKY:  Good morning, Judge.  Lawrence D.
17      Pattinsky, Roseburg and Pittinsky on behalf of non-party
18      board of managers of the Riverhouse Condominium.
19              MS. HADDEN:  Good morning, Your Honor.  Maryam
20      Hadden from Parlatore Law Group on behalf of 2 River Terrace
21      Apartment 12J LLC, one of the defendants in the adversary
22      and an interested party in the main case.
23              MR. LEV:  Good morning, Your Honor.  Daniel Lev,
24      Sulmeyer Kupetz.  I am general bankruptcy counsel for Howard
25      Ehrenburg, a liquidating trustee.  I will just be monitoring
```

1    today and Mr. Nolan and Mr. Scharf will be handling the

2    hearing.

3            THE COURT:  All right.  Very well.  Anyone else?

4    All right.  So, before I take your arguments or positions on

5    the motion, let me outline some of the questions that the

6    Court has for the parties based upon the pleadings, based

7    upon some prior hearings on this matter.

8            My first question is always the optimistic

9    question, which is have you all reached either an overall

10   settlement of the adversary or at least a protocol

11   concerning the sale of the 2 River Terrace apartment?

12           MR. SCHARF:  No, Your Honor.

13           THE COURT:  Ms. Hadden?

14           MS. HADDEN:  We have not, Your Honor.  We are

15   still working on getting all of the personal property of the

16   manager of the LLC out of the apartment and we're in the

17   midst of selecting a second date for that.

18           But in terms of the sale of the apartment, no,

19   we're still on opposing ends.

20           THE COURT:  All right.  And so then, here are the

21   questions that the Court has, the other questions I suppose.

22           First, it does appear as raised by the 2 River

23   Terrace party in interest that as of right now there is a

24   non-final judgment that was entered in the adversary

25   proceeding which is now subject to what might be an

1    interlocutory appeal to the district court.  It appears that

2    whoever has indicated that it has sought a stay pending

3    appeal but I don't see that on the CMECF docket.

4            So, let me first raise this to Mr. Scharf or Mr.

5    Nolan.  What is the Trustee's position on whether or not the

6    Court's order and judgment from back in March is

7    interlocutory?

8            MR. SCHARF:  Our position, Your Honor, is that the

9    judgment is interlocutory.  We'll brief that in full in

10   front of the district court within the next 12 days or so.

11           THE COURT:  All right.  And so, from this Court's

12   understanding, the purpose of seeking to determine a

13   judgment on appeal to be interlocutory is to have the appeal

14   dismissed.

15           And so, if the appeal is dismissed, where does

16   that then leave 2 River Terrace on attempting to challenge

17   whether or not the property, which is currently subject of

18   an interlocutory partial judgment, should be sold or not

19   before there's at least a final judgment or a final

20   appealable judgment?

21           MR. SCHARF:  Your Honor, I -- well, if there's no

22   appeal -- if the appeal is mooted out, I think they would

23   have to come back before Your Honor and seek some further

24   injunctive relief that Your Honor may or may not grant based

25   on whatever facts they can adduce to prevent the sale of the

1   property.

2          THE COURT:  Wouldn't that then speak in favor of

3   not going forward and allowing the trustee -- the

4   liquidating trustee to sell the property now?

5          MR. SCHARF:  Well, we don't think that that would

6   have any chance of -- a reasonable likelihood or chance of

7   success, Your Honor.  And in addition any relief granted to

8   Mr. Parmar, either with respect to a stay pending appeal or

9   future injunctive relief should absolutely be conditioned on

10   his first posting a bond in the -- in the full amount and

11   value of this property, and second paying the arrears and

12   ongoing expenses that are due to the condo board that caused

13   this to become essentially a wasting asset which is I know

14   unusual for real estate, but given the arrears and ongoing

15   losses and expenses associated with this apartment, it's

16   only appropriate that any relief granted to Mr. Parmar be

17   conditioned on at least -- at the very least a bond and

18   payment of the arrears.

19          THE COURT:  All right.  Thank you, Ms. Hadden,

20   what is 2 River Terrace's position on those issues?

21          MS. HADDEN:  Addressing first the question of

22   whether the judgment is interlocutory and what the effect of

23   that would be if the appeal is dismissed for that reason,

24   and it's in fact for that reason that we initially did not

25   file for stay under Rule 8007.

1          We were aware of the Trustee's position that the

2    order -- that the Court's order granting -- or transferring

3    ownership of the apartment to the Trustee was an

4    interlocutory order.

5          Based on that, it was our position that it was

6    untimely for the Trustee to be attempting to sell it.  If

7    the Trustee doesn't finally, for lack of a better term, own

8    the apartment, the sale of the apartment would be

9    injudicious to say the least, and it certainly puts Mr.

10   Parmar and more essentially the LLC in a position where if

11   the apartment is sold, at that point obviously, as the Court

12   is well aware under the Bankruptcy Code, there would be no

13   possibility of appeal at that particular sale.  Once the

14   asset -- once the real estate is sold, the real estate is

15   gone.  There's no appellate remedy.

16         So, we're in a situation where we have appealed

17   what we believed to be a final order, the Trustee believed

18   not to be a final order and it to be a interlocutory order,

19   and I think at this point it's premature to attempt to sell

20   the apartment when that issue is still outstanding.

21         If the order is final, then it is appealable and

22   at that point the appeal can go forward and either we

23   prevail or we don't.  If it's not final, then we're in a

24   scenario where we would be asking for some form of stay or

25   relief to protect the asset, because it is, as the Court is

1  aware, a unique piece of property.

2       Every piece of property is unique, and you know,

3  finding another apartment or another premises that meets

4  these same specifications is not something that's either

5  easily done or even possibly done under the law.

6       So, in that scenario, I'm, you know, not taking a

7  position one way or the other as to the Trustee's

8  application that Mr. Parmar set forth a bond.  I honestly

9  don't know what his financial ability to do that is or what

10 the bond amount that the Court would set would be, but that

11 certainly is something that we would endeavor to do if the

12 Court were to require it of us.

13      And in that case, presuming that we were able to

14 do it, we would be doing it to attempt to protect the LLC's

15 sole asset from what at this point is at least arguably not

16 a final determination.

17      THE COURT:  And what about the issue that, one, it

18 is in a sense a wasting asset, more because there are costs

19 and expenses of upkeep, maintenance, board fees, etcetera,

20 being incurred that no one is paying, which Mr. Pittinsky

21 has been both quite vocal and quite temperate about on

22 behalf of his client in these proceedings, and it appears

23 that since an agreement was reached to move out the personal

24 property, nobody is living there?

25      MS. HADDEN:  It's correct that nobody is living

1    there, and in fact no one has been able to live there over

2    the last couple of years because -- and Mr. Pittinsky and I

3    are on opposite sides about this issue as well, but it has

4    been our client's position and experience that whenever he

5    would attempt to go to the building, he was refused access

6    to the building.

7          Obviously at this point I'm speaking before the

8    Court's transfer of ownership to the Trustee.  For that

9    reason -- and I see Mr. Pittinsky shaking his head, I'm well

10   aware and I will certainly put on the record that he has

11   informed me that that is not the case.

12         Again, it's yet another thing that we can work oit

13   in mitigation I suppose.  But Mr. Parmar has, because of the

14   denial of access, been unable to use the apartment himself

15   over the last couple of years, since 2018, and it was for

16   that reason that the charges were not being paid initially.

17         It has been his position, and it was the position

18   of a case that we filed in state court and have suspended

19   while all of these other proceedings are being worked out,

20   that the denial of access by the board was depriving him of

21   his real property, and it was his position that the amount

22   of deprivation, the cost of that deprivation, actually

23   outweighed the cost of the fees and charges owed to the

24   board and he was seeking an offset in that state court

25   proceeding.

1      Again, that proceeding has been completely put on

2   hold while all of these other matters are ongoing.

3      THE COURT:  And on the subject of things that are

4   on hold, and again this has been discussed at several

5   hearings, all other things be equal, the condo board has had

6   a judgment that they've been very politely holding off on

7   executing on which where they -- did they go forward on that

8   sale, then that property is going to be lost to the estate.

9      I don't think that issue has been lost on any of -

10   - any of the parties.  I doubt that 2 River Terrace's

11   position is that execution on the state court judgment and

12   whatever value that would bring would be higher or better

13   than at least the current $4.8 million offer in front of

14   this Court.

15      MS. HADDEN:  No, that's certainly not anything

16   that I think anybody could contend.  Although the judgment

17   on behalf of the board is substantial, it's certainly

18   significantly less than the 4.8 million.

19      THE COURT:  So, putting procedure aside for a

20   moment, I'm not shelving it because it is one of the things

21   that we do as trial court judges, but putting procedure

22   aside for the moment, has 2 River Terrace made a decision as

23   to whether or not monetizing these assets and paying the

24   judgment that exists and avoiding continued accrual of costs

25   and expenses of maintenance and upkeep, etcetera, is just

1  better than continuing to fight about maintaining the

2  property as opposed to monetizing it and fighting over who

3  gets the money.

4          MS. HADDEN:  At this point, my client's -- I

5  apologize -- my client's manager is still seeking to

6  preserve the asset itself as opposed to monetizing the

7  asset.

8          Can I say that that will always be the case?  No,

9  I can't, but that's still his current position.

10          THE COURT:  All right.  Mr. Pittinsky, I know

11  you're here because you're here and don't necessarily have a

12  direct dog in the hut, but do you want to weigh in on either

13  the sale issue -- well, on the main case sale issue or

14  anything about the adversary on status?

15          MR. PITTINSKY:  Your Honor, not too much to say

16  other than, yes, the board is now getting extremely antsy as

17  the arrears continue to build.  We do have the sheriff on

18  hold.

19          We obviously deny any claim of lack of access to

20  the LLC.  I just want to point out to the Court and Ms.

21  Hadden whatever Mr. Parmar may think, this unit is owned by

22  a limited liability company.  Nobody from that company has

23  been denied access.  No one who was authorized on behalf of

24  that company has ever been denied access, and she can speak

25  to her partner about that.

1        We support monetizing this, sell it, fight about

2    the money, pay us, we get a new owner in so we have our

3    common charges being paid going forward.  They defaulted

4    after knowing about the supreme court action.  This is all

5    after-the-fact arguments on the apartment.

6        We strongly request the Court permit the sale to

7    go forward, and yes, I could say that if it was sold at the

8    sheriff's sale, the sale price is going to be substantially

9    less.  Even if it's bid over the judgment amount, it's not

10   going to reach the amount that the Trustee has been able to

11   secure on a private sale.

12        THE COURT:  Thank you.

13        MR. SCHARF:  Your Honor, if I may respond to a

14   couple of the points here?

15        THE COURT:  Sure.

16        MR. SCHARF:  The notion that mister -- that the

17   defendant -- that the LLC did not seek a stay pending appeal

18   because the appeal might be interlocutory based on our

19   contention is frankly absurd.

20        They knew this apartment was going to be sold

21   weeks ago.  It's self-evident that a Trustee who's charged

22   with selling an apart -- with liquidating an estate is not

23   going to let an apartment lie fallow, and we filed the sale

24   motion well before there was a request for a stay.

25        I would have expected a request for a stay pending

1    appeal on the judgment, not the underlying sale but on the

2    judgment being enforced to be filed within -- at the same

3    time the appeal was filed or before the appeal was filed and

4    certainly to see one filed if that was their position as of

5    the -- as of the filing of the sale motion.

6              I expect, and this is my conjecture, that they

7    didn't do so because the conditions that would be associated

8    with such a stay would be something like posting a bond or -

9    - and paying arrears so that there is no further

10   depreciation to the asset.

11             I'll also note, Your Honor, when we do talk about

12   depreciation -- or sorry the losses incurred in the asset on

13   the ongoing arrears, the Trustee is making current payments

14   of the ongoing charges.  So, there is that loss.  It's a

15   direct expense being covered by the Trustee since the

16   Trustee took possession of the apartment.

17             And in addition, Your Honor, we have risk here.

18   It's an unoccupied apartment.  There was some minor damage,

19   scratches, holes, things like that, missing knobs from -- or

20   handles from a refrigerator, minor damage.

21             There's a risk there could be further damage.  We

22   could have a flood in that apartment.  We could all be

23   talking about an insurance claim (indiscernible) somebody

24   liable for fixing an apartment rather than monetizing an

25   apartment down the road.

1          So, it's not just the risk of ongoing expenses.

2    There's a risk of something catastrophic happening, and

3    frankly that's all on the Trustee given where we sit with

4    the judgment, Your Honor.

5          THE COURT:  All right.  Thank you.  The sale

6    motion itself, the -- I want to know who the witnesses would

7    be because the Court's -- what the Court's contemplating is

8    I -- I hate to put the practical ahead of the metaphysical

9    but it would seem from a practical standpoint that it would

10   be in everybody's best interest to monetize the asset and

11   fight over the proceeds; 2 River Terrace disagrees, and

12   that's fine.  They're certainly entitled to do so.

13         If I held an evidentiary hearing on the sale

14   motion, I presume the Trustee's witnesses would be Mr.

15   Stanton, the broker who's provided a declaration, and Mr.

16   Ehrenburg, the Trustee?

17         MR. SCHARF:  I believe that would be correct, Your

18   Honor.

19         THE COURT:  All right.  Ms. Hadden, I didn't

20   notice --

21         MR. SCHARF:  And Your Honor, potentially Mr.

22   Pittinsky's client on the losses and ongoing expenses in the

23   apartment, and any issues raised by Ms. Hadden.  I'm not

24   putting your client on the spot, Mr. Pittinsky, but those

25   were issues that were raised.

1            THE COURT:  Ms. Hadden, I didn't notice any

2     affirmative witness declarations in the opposition.  Is 2

3     River Terrace contemplating putting on any witnesses in an

4     evidentiary hearing on a sale?

5            MS. HADDEN:  In the event of an evidentiary

6     hearing, Your Honor, I'd have to discuss it with my co-

7     counsel on the criminal matter, but I would anticipate at

8     least the possibility of calling Mr. Parmar for at least

9     limited testimonial purposes.

10            THE COURT:  What about on the not enough money

11     aspect?  What I'm also trying to figure out is, is 2 River

12     Terrace contending that the purchase price is not fair

13     consideration?

14            MS. HADDEN:  Yes.

15            THE COURT:  All right.  Do you all have an expert

16     lined up to testify about the value of the unit or to

17     challenge whether or not the sale and marketing process was

18     adequate?

19            MS. HADDEN:  I do not, but we would retain one.

20            THE COURT:  All right.  Mr. Pittinsky, this is the

21     part where you again get to talk on behalf of your own

22     client.  Do you -- would the board contemplate putting on

23     evidence at a hearing on whether or not the sale

24     consideration is adequate and the process and procedures

25     that the Trustee -- liquidating Trustee went through were

1    appropriate for a sale of this type?

2         MR. PITTINSKY:  Your Honor, we would not really

3    take a position, I believe.  I would have to double check

4    with the board itself.  I don't have a client; I have a

5    board.

6         From my point of view, the price is not something

7    we would object to and the procedure is not something the

8    condominium board would object to.  If we were to do

9    objections, we would've put in papers on the motion itself.

10        THE COURT:  All right.  I'm not sure that whether

11   or not some person was told you can't go in there two years

12   ago or 17 months ago is really probative on whether or not -

13   - what the Court would be looking at, which is whether or

14   not the process the Trustee -- liquidating Trustee has gone

15   through in setting up a private sale process, whether or not

16   the property's been adequately marketed, your typical 363

17   type of issues.

18        Again, if 2 River Terrace wants to bring those in,

19   I take evidentiary objections as the question is asked

20   before the answer is given, but I don't really know that

21   that -- who shot John is particularly probative for me at

22   this -- at this stage.  From the Court's vantage point it's

23   really more of was the sale process -- was the sale process

24   appropriate and is the amount obtained as a result a fair

25   sales price.

1          On the procedural side of it, it seems to the

2     Court in managing my docket that the best way to go about

3     this is if -- if the liquidating Trustee wants the partial

4     judgment to be rendered a final judgement under Rule 54,

5     then the trustee can file papers and ask the Court to do

6     that.

7          That takes this dance over whether it's an

8     interlocutory appeal out if the Court were to grant it.  It

9     would again seem -- I'm not ruling on a motion that's not in

10    front of me, but since 2 River Terrace would like the

11    opportunity to challenge this Court's ruling on appeal, and

12    they're more than welcome to do so, it would seem

13    procedurally the only way to actually do that is to render

14    that judgment final, which I can do under Rule 54 but won't

15    do until somebody actually asks me to do so.

16         If 2 River Terrace wants a stay pending appeal,

17    which they're certainly entitled to ask for, that should be

18    before me and then as you all know the trial court makes the

19    first determination on whether and under what circumstances

20    to grant a stay pending appeal, and then that can be taken

21    to the district court.  There's a certain synchronicity

22    between the two of those as they then tie into whether or

23    not the Court would approve the sale and approve the sale at

24    the price which has been advanced by the Trustee.  I don't

25    see that -- I'm not a wine connoisseur, but like -- but what

1     I'm told about bottles of wine is some get better with age,

2     but litigation generally does not.

3              I don't -- I don't see that there is a need --

4     because these issues have been percolating for some time, I

5     don't see the reason to put any significant delay on these

6     issues, because I think the parties are fairly well-informed

7     and advised of what the disputes will be.

8              I'm prepared to give you all both an evidentiary

9     hearing on the sale motion as well as procedural hearings on

10    a 54B motion as well as a stay pending appeal motion on June

11    14th.  That's about 10 days from now.  And again, the issues

12    have been fairly well known and laid out.  I don't see a

13    reason to further delay this, and I have a standing protocol

14    and -- both a virtual platform standing protocol for how I

15    take witness testimony and the who can be in the room when

16    it happens kind of things.

17             As I think you all know from other practice before

18    me, I take all of my direct testimony from party-controlled

19    witnesses by affidavits exchanged in advance and then the

20    parties present here virtually for cross-examination.

21             That's how I'll run this trial.  I typically

22    require those affidavits to be exchanged seven days in

23    advance and then the supporting exhibits provided to the

24    Court in a format that my order will set out.

25             I would anticipate following essentially that

```
 1   program.  I'll probably give you a little flex on the

 2   affidavits seven days ahead of time, because there is no --

 3   the only affidavit that I think the Court has is Mr.

 4   Stanton's.

 5           But then have you all, you know, ready to try

 6   these issues or argue these issues on June 14th at 2:00

 7   Eastern Standard Time.  Mr. Scharf, will the Trustee be

 8   ready?

 9           MR. SCHARF:  The Trustee can be ready.  He is not

10   in the courtroom right now.  Mr. Lev may know his schedule

11   better.

12           MR. LEV:  Your Honor, I've been texting Mr.

13   Ehrenburg, who unfortunately has another conflict and he

14   said he is available on June 14th.

15           THE COURT:  All right.  Ms. Hadden, will 2 River

16   Terrace be ready?

17           MR. LEV:  Ms. Hadden's on mute.

18           THE COURT:  Oh, Ms. Hadden.

19           MS. HADDEN:  Sorry about that.  I actually have a

20   conflict the afternoon of the 14th.  Is it possible to do

21   the 15th or the 16th?  Almost any other day that week I can

22   do.  Just the 14th I'm already in another courtroom at that

23   time.

24           THE COURT:  Mr. Lev, will you check with Mr.

25   Ehrenburg on June 16th?
```

1          MR. LEV:  What time, Your Honor?

2          THE COURT:  2:00 Eastern.

3          MS. HADDEN:  Thank you, Your Honor.

4          THE COURT:  All right.  Ms. Hadden, was -- didn't

5     2 River file a stay pending appeal with the district court?

6          MS. HADDEN:  No, Your Honor.  I had actually filed

7     somewhat informally in the course of my opposition to the

8     motion to sell.  I had added an application for a stay

9     within there, but I do need to file a separate application

10    for a stay to fully meet the Court's procedures.

11         THE COURT:  All right.

12         MS. HADDEN:  And obviously, I will file that

13    before Your Honor rather than in the district court.  I'm

14    aware it needs to be in the bankruptcy court first.

15         THE COURT:  All right.  Mr. Scharf, does the

16    liquidating trustee want to ask to sever the judgment -- the

17    partial judgement and render it final for appeal purposes?

18         MR. SCHARF:  I think I'm going to have to have a

19    substantive conversation with the Trustee about that but I

20    suspect we can -- I believe we can get an answer to that

21    tonight or tomorrow morning.

22         THE COURT:  All right.

23         MR. LEV:  Your Honor, Mr. Ehrenburg is available

24    June 16th, 2 p.m. Eastern time.

25         THE COURT:  Great.  So, we'll proceed --

1          MR. PITTINSKY:  Your Honor, part of the -- one --

2    some of the factors for a stay pending appeal include

3    showings of hardship.  We would ask that Mr. Parmar be

4    present to be cross-examined or to be examined by us on

5    those factors at the hearing rather than, you know, rather

6    than skate around whether or not he's relying on comments

7    made by counsel who's not put in an affidavit in connection

8    with that.

9          And or -- or Your Honor can direct if he does not

10   put an affidavit in that there's no -- that he doesn't get

11   another chance for an evidentiary hearing (indiscernible).

12          THE COURT:  Well, I'm going to go with the I'll

13   know what you all are asking me to do when I see it

14   approach.  So, rather than contemplate what's going to come

15   in, I'll decide based on what's actually in front of me.

16          I'll set the June 9th for -- to file whatever --

17   to file the motion seeking whatever relief the parties are

18   going to ask the Court to determine on June 16th at 2:00.

19   Those should be filed in the adversary proceeding.

20          Again, if it's a Rule 54B motion, if it's a stay

21   pending appeal, whatever it's going to be, file those by 5

22   p.m. on June the 9th and then any responses will be due by

23   noon on June the 14th.

24          I don't need replies on those types of issues.

25   There's -- I don't think there's going to be any Supreme

1   Court setting presidential issues for me to decide on those

2   types of issues.  So, June 9th at 5 p.m. for the motions,

3   June 14th at noon, and I'll know what you all are asking me

4   to do once it's been filed.

5           On the evidentiary portion of the hearing, I'm not

6   precluding taking evidence on a motion for a stay pending

7   appeal.  I don't know that I typically do, but whatever you

8   all are going to ask me to do, the standing rule still

9   remains, if there are -- if there are specific facts that

10  are in controversy the parties want me to consider, then I

11  need to have a sponsoring witness who would testify to those

12  facts.  That's the general rule for the motion practice as

13  well.

14          Any affidavits that the parties want the Court to

15  consider at the evidentiary hearing on the sale motions,

16  those affidavits also need to be filed and exchanged by June

17  9th at 5 p.m.

18          Mr. Stanton's is already there.  It doesn't need

19  to be refiled, but any other testifying witness whether for

20  the liquidating Trustee or for 2 River Terrace or should the

21  board decide to weigh in from an evidentiary standpoint,

22  those witness affidavits have to be filed and exchanged by

23  June 9th at 5 p.m. along with any exhibits, documents --

24  documentary evidence that the parties wish to rely on.  And

25  then objections to the affidavits and the documents also due

1    by June 14th at noon.

2            So, we'll have our full package from the court's

3    standpoint by June 14th at noon so that we can then do our

4    prep for the June 16 at 2:00 evidentiary hearing.  Again,

5    the witness affidavits constitute the direct testimony of

6    the witnesses and then I take live cross-examination of them

7    at the evidentiary.

8            In the event that there are evidentiary objections

9    to portions of the affidavits, I rule on those at the

10   beginning of that witness's testimony.  I don't expect any

11   motions in limine, but again, if you're going to object to

12   the other party's witness testimony or the other party's

13   exhibits, those will be due June 14th at noon.

14           This will all be laid out in the control order

15   that the Court will be issuing, but because the timeline is

16   a little bit tight, I wanted you to know today what those

17   issues are because it could be Monday before that order is

18   entered.

19           And then there'll be the protocol for how you

20   deliver the exhibits to each other and to the Court, and

21   again a -- I need to know who's in the room, anybody with

22   the witness, and from where the witness is testifying.  And

23   again, I have a protocol laid out for that that you'll see

24   in the order.

25           Anything else that you all want to address today

```
 1    on the sale motion or the status in the Ehrenberg v.

 2    Sartison adversary?

 3              All right.

 4              MR. NOLAN:  Your Honor?

 5              THE COURT:  Yes.

 6              MR. NOLAN:  Jeff Nolan on behalf of the plaintiff.

 7    To the extent at the -- that a party submits an affidavit

 8    and it is not objected to, would -- does the Court need to

 9    have that witness present or is the affidavit sufficient for

10    the hearing?

11              THE COURT:  The affidavit is the direct testimony,

12    so the affiant is still subject to cross-examination.  If

13    you all work out an agreement that I'm not going to

14    challenge the affidavit of X and I waive cross-examination,

15    then I'll take the affidavit at face value, but the

16    affidavit is only the direct testimony.  It doesn't waive

17    the other side's right to cross-examine.

18              MR. NOLAN:  All right.  Thank you, Your Honor.

19              MS. HADDEN:  Thank you, Your Honor.

20              THE COURT:  All right.  So, then those of you who

21    are logged in for the sale motion or the Sartison adversary,

22    if you all -- you're all welcome to stay but you're also

23    free to go before we go to our other matter.

24              MS. HADDEN:  Thank you, Your Honor.

25              CLERK:  The next matter on the calendar is case
```

1    number -- adversary case number 20-8042, Howard Ehrenberg v.

2    Howard Schoor.

3            THE COURT:  All right.  And so, who is appearing

4    in that adversary proceeding?

5            MR. NOLAN:  Jeff Nolan appearing on behalf of the

6    plaintiff liquidating Trustee.

7            MR. CAMPBELL:  Good morning, Your Honor.  Don

8    Campbell from the law firm of Giordano Halleran & Ciesla on

9    behalf of Howard Schoor.

10           THE COURT:  All right.  Anyone else?

11           All right.  Bear with me, then, for one minute.

12   Have you all settled?

13           MR. CAMPBELL:  Unfortunately, no, Your Honor.

14           THE COURT:  All right.  So, then the Court has on

15   for today the ruling conference on the liquidating Trustee's

16   motion for summary judgment.  The Court will now render its

17   ruling.

18           The procedural history is as follows.  In this

19   adversary proceeding, 20-8042, the Trustee, Mr. Ehrenberg,

20   filed a complaint in March of 2020.  That complaint

21   essentially seeks to recover $160,000 that was paid to the

22   defendant, Mr. Schoor, in January of 2017.

23           The Trustee then moved for summary judgment on the

24   causes of actions set forth in the complaint and supported

25   that summary judgment motion with affidavits from Mr. Nolan

1    and Ms. Edith Wong, which are at docket items 29 and 30

2    along with numerous exhibits.

3            The parties under the Court's instructions had

4    also prepared and filed a joint statement of stipulated

5    facts as well as additional facts upon which the Trustee

6    relies.  That document is at docket 28.  The defendant, Mr.

7    Schoor, filed an objection to the summary judgment motion at

8    docket 33 but did not provide any summary judgment evidence

9    of his own.

10            The Court held a hearing on March 16th of this

11    year on the motion for summary judgment, which I'll just

12    refer to as the motion or the MSJ.  The Court allowed the

13    defendant additional time to seek and submit evidence in

14    opposition to the summary judgment and specifically allowed

15    the defendant to submit affidavits from either Mr. Parmar or

16    Mr. Zaharis, who we'll talk further about.

17            The Court did subsequently receive an affidavit of

18    the defendant, Mr. Schoor, at docket 41, that affidavit

19    details a conversation that Mr. Schoor says he had with Mr.

20    Parmar in April of 2021, but the defendant did not provide

21    any direct affidavit from Mr. Parmar, Mr. Zaharis, or any

22    person who worked for any of the Debtors with knowledge of

23    the facts relevant to the pending motion.

24            The Trustee then moved to strike the predominant

25    portions of the Schoor affidavit that are the objection and

1  the motion to strike is at docket 42.  The Court had set

2  today for a ruling conference, and for the reasons to

3  follow, the summary judgment motion will be granted.

4          The Court will detail now on the record a number

5  of facts relevant to the Court's determination.  There are

6  no genuine -- there is no genuine dispute as to any of these

7  facts.  In fact, the predominance of these facts have been

8  stipulated to by the parties.  Other of these facts are

9  drawn from the defendant's own deposition made a part of the

10  summary judgment record as well as the uncontroverted

11  evidence before the Court.

12          Starting back to 2001, between the years 2001 and

13  2006, Mr. Schoor was a neighbor and at least social

14  acquaintance or friend of Paul Parmar.  In June of 2009, at

15  Mr. Parmar's request, Mr. Schoor loaned him $600,000.  That

16  loan is evidenced by a promissory note executed by Mr.

17  Parmar in favor of Mr. Schoor.

18          At that time in 2009 Mr. Parmar was a

19  businessperson interested in a variety of ventures, but

20  relevant here he later became a principal of one or more of

21  the entities that are now Debtors before this Court or were

22  acquired by or merged into one or more of the Debtors before

23  this Court.  That list of Debtors is detailed in the

24  complaint and the summary judgment motion is uncontroverted.

25          In August of 2009, on August 31st, Mr. Schoor sent

1    a letter to Mr. Parmar advising that the repayment of the

2    $600,000 loan was late, and Mr. Schoor stated, quote, "You

3    clearly indicated your need was for a few weeks of payroll

4    while you resolved an IRS lien placed on multiple accounts

5    and freed up other assets.  Your request and my reply was

6    based on," quote, "'our friendship,'" close quote, "and not

7    a business deal."  That's stipulation 7 at docket 28.

8              In August of 2010, Mr. Schoor sent a follow-up e-

9    mail stating, "I would greatly appreciate payment on the

10   balance of your personal loan.  Again, I repeat, this loan

11   was done on the basis of our friendship, not as a business

12   investment."

13             Fast forwarding several years now to 2017, Mr.

14   Parmar on January 4, 2017 directed an e-mail to Mr. Zaharis

15   who at that time was a high-ranking officer of one or more

16   of the Debtors.  Mr. Parmar directed that the balance of his

17   loan owed to Mr. Schoor be repaid and be paid with money of

18   one or more of the Debtors.

19             The next day, on January 5, 2017, one or more of

20   the Debtors transferred $100,000 to Mr. Schoor to a Debtor

21   bank account.  The next day, January 6th, Mr. Schoor was

22   sent another $60,000 from a bank account owned by one or

23   more of the Debtors.  Those two payments, the $100,000 and

24   the $60,000, are the transfers at issue in this adversary

25   proceeding.

1          Questions were then raised internally at the

2     Debtors' specifically by an accounting manager as to why

3     these payments were made to Mr. Schoor from the Debtors.  In

4     response on May 20, 2017, Mr. Zaharis e-mailed Mr. Parmar

5     stating, "We need to come up with an invoice for a reason

6     for the payments made to Mr. Schoor."  That e-mail is part

7     of the summary judgment record attached to the affidavit of

8     Ms. Wong.

9          The next day on a Sunday, May 21, Mr. Zaharis

10    prepared a service and retainer agreement which identified

11    Mr. Schoor as a consultant of the Debtor and then told Mr.

12    Parmar that he, quote, "needed to beef up the deliverables

13    for the Howard Schoor agreement."  That e-mail is also

14    before the Court.

15         The next morning on May 22, 2017, Mr. Zaharis

16    forwarded a consulting agreement to Mr. Schoor.  That

17    consulting agreement was backdated to August 1, 2016 and

18    identified Mr. Schoor as a consultant for the Debtor.  That

19    e-mail is also before the Court as well as the document.

20    That document was never signed or authorized by Mr. Schoor.

21         It's undisputed that Mr. Schoor was never a vendor

22    of any of the Debtors.  He never sold product to Debtors.

23    He never performed services for any of the Debtors.  He

24    simply made a personal loan to Mr. Parmar in 2019.  When

25    that personal loan had been repaid in partial payments prior

1    to 2017, Mr. Schoor was paid personally by Mr. Parmar.

2         In December of 2019, the liquidated Trustee, Mr.

3    Ehrenberg, sent a letter to Mr. Schoor asking that he return

4    the $160,000. Shortly thereafter in February of 2020, Mr.

5    Schoor e-mailed Mr. Parmar advising him of the Trustee's

6    demand letter and requested that Mr. Parmar, quote, "review

7    and advise of your thoughts about my/our defense," close

8    quote.

9         In addition, Mr. Schoor asked Mr. Parmar to

10    provide any details as to what companies or what operations

11    he had used the loan proceeds for back in 2009. Mr. Parmar

12    never responded.

13         From this Court's review of the uncontroverted

14    evidence, there is no genuine issue of material fact as to

15    any of the allegations raised by the Trustee which are

16    necessary for the Court to determine in order to grant

17    summary judgment and therefore the Trustee is entitled to

18    judgment as a matter of law.

19         The competent summary judgment before the Court

20    demonstrates that the two payments made in January of 2017

21    were made with actual fraudulent intent by the Debtors. The

22    standard is not what intent did Mr. Schoor have when he

23    received the payments. The standard is what was the intent

24    -- what was the reason behind the Debtors, one or more of

25    the Debtors, making the payments at the time they were made.

1          The Court -- because the Court has concluded that

2    they were -- there is adequate evidence for the Court to

3    determine that they were made with actual fraudulent intent,

4    both transfers may be avoided under the Bankruptcy Code

5    under Section 548(a)(1)(A) and under New York Debtor &

6    Creditor Law, Section 276.

7          In reaching these determinations, the Court is

8    relying only on the competent summary judgment effort --

9    evidence in the record.  As has been long clear, and this

10   was noted by the 2nd Circuit almost 50 years ago in Dressler

11   v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964), it is

12   necessary that the Court only rely on competent evidence to

13   reach its determinations because only in this way may the

14   underlying objective of the summary judgment procedure to

15   determine whether one side has no real support for its

16   versions of the facts can be satisfied.

17          Here, the plaintiff has well documented the

18   evidence in support of his motion through the affidavits and

19   the declarations and the exhibits provided, particularly

20   those of Mr. Nolan and its attachments and Ms. Wong and hers

21   as well as the stipulated facts submitted by the parties.

22          When a party such as the defendant offers facts to

23   support his contention that there are genuine issues of

24   material fact, it must company with Rule 56C which requires

25   that an affidavit or a declaration be used to oppose a

1   summary judgment motion as well as to support such a motion

2   be made on personal knowledge and set out facts that would

3   be admissible in evidence and show that the declarant is

4   competent to testify on the matters stated.

5          The only evidence submitted by the defendant, his

6   affidavit relating a conversation that he says he had with

7   Mr. Parmar in April of 2021, is classic hearsay.  Mr. Schoor

8   is attempting to provide testimony not based on what he

9   knows or could prove at trial but what -- but on what he

10  says Mr. Parmar would say if called to testify at trial.

11          That affidavit attempts to prove that the original

12  loan he made in 2009 was to be used to pay certain business

13  debts, but again, it's a hearsay statement and it fails to

14  provide any specificity as to what purported business debts

15  it would have been paying and is also in opposition to the

16  history of the e-mails and communications between Mr. Schoor

17  and Mr. Parmar.

18          For those reasons, the statements contained within

19  paragraph 7 through 14 of the -- of the Schoor affidavit are

20  stricken as not in compliance with Rule 56 and are

21  inadmissible.

22          Turning then specifically to Section 548(a)(1)(A)

23  of the Bankruptcy Code, in order to prevail on such a

24  fraudulent transfer claim, three elements must be

25  established.  The property at issue must have been property

1    in which the Debtor had an interest at the time transferred.

2    There's no controversy on that issue.

3           The transfer must have occurred within two years

4    prior to the petition date.  There's no controversy on that

5    issue, either.  And the third element that the transfer must

6    have been made with actual intent to hinder, delay, or

7    defraud a creditor.  See In Re: Bruno MacHinery Corp., 435

8    B.R. 819 (N.D.N.Y. 2010) and In Re: Bayou Group, 396 B.R.

9    810 (S.D.N.Y. Bankr. 2008).

10          Here, it's clear from the uncontroverted evidence

11   before the Court that Mr. Parmar and Mr. Zaharis attempted

12   to create a sham to disguise the reason why the Debtors made

13   the payments to Mr. Schoor on Mr. Parmar's personal debt.

14          This includes the e-mail string that the Court has

15   already referred to including specifically the May 20, 2017

16   statement of Mr. Zaharis to Mr. Parmar, "We need to come up

17   with an invoice for a reason to pay Schoor," and then the

18   creation of the back-dated consulting agreement, which

19   there's no evidence in the record to support there was any

20   business reason nor any evidence that it actually existed at

21   any time on or near 2016.

22          The fact that Mr. Zaharis and Mr. Parmar went to

23   lengths to fabricate a reason why the Debtors paid Mr.

24   Schoor is clear, convincing, and uncontroverted evidence

25   that the payments themselves were made with intent to

1    defraud creditors, one or more.

2              It's also uncontroverted that plaintiff has

3    provided evidence that there were creditors who existed in

4    January of 2017 when the payments were made who remained

5    unpaid at the time of the bankruptcy case and still remain

6    unpaid.

7              The Court has before it a judgment that was

8    entered in the Southern District of Texas for obligations

9    owing to Jack McBride and Alan Knottingham.  Those two

10   gentlemen also filed a claim in the case.  They claimed

11   10,000 and won.  That judgment and those -- that claim

12   remain unpaid.

13             The Court has determined that the liquidating

14   Trustee has also met his burden of proof under New York

15   Debtor & Creditor Law Section 276, which provides that every

16   conveyance made and every obligation incurred with actual

17   intent to hinder, delay, or defraud either present or future

18   creditors is fraudulent both as to present and future

19   creditors.  See In Re: MarketXT Holdings, 376 B.R. 390

20   (Bankr. S.D.N.Y.) as well as (indiscernible) Distributors.

21             The evidence again that this Court is relying on

22   are the fake consulting agreement which was attempted to be

23   backdated to create a business justification for one or more

24   of the Debtors having paid Mr. Parmar's personal obligation.

25   That document and the contemporaneous e-mails concerning the

1   creation of that document and the fact that that document or

2   those e-mails were wrote after an internal accounting

3   manager of one or more of the Debtors questioned the

4   payments to Mr. Schoor constitute clear and convincing

5   evidence of an actual fraudulent intent to pay Mr. Schoor

6   and thereby place those funds beyond the reach of legitimate

7   creditors of the Debtors.

8           This Court has also reviewed the badges of fraud

9   that many courts often look at to determine whether or not

10  an actual fraud or fraudulent transfer can be found, and in

11  those badges of fraud, as an alternative basis, the Court

12  could find a violation of Section 276.

13          I'll briefly discuss each of the six badges of

14  fraud typically cited.  First is gross inadequacy of

15  consideration.  Again, here the Debtors didn't owe any Mr.

16  Schoor any money yet the Debtors made the payments.  That

17  evidence is grossly inadequate consideration.

18          As far as a close relationship between the

19  transferor and transferee, certainly Mr. Schoor and Mr.

20  Parmar were neighbors and friends, at least in 2016 -- 2009

21  when the loan was made and apparently had an adequate

22  relationship in 2017 that Mr. Parmar set upon a course to

23  have one or more of the Debtors repay the balance of their

24  loan which was a personal loan and never a business loan.

25          As far as the third badge in solvency, the

1    evidence is not as strong on whether or not the Debtors were

2    or were rendered insolvent at the time of the transfers.

3    There's evidence before the Court that in January just

4    before the payments were made in 2017 the Debtors were

5    juggling their financial commitments and funds available and

6    had to, quote, "short pay" certain other creditors in order

7    to pay Mr. Schoor.  Specifically, it was asked if the

8    Debtors can short pay India and use the $160,000 to pay Mr.

9    Schoor and then pay the India obligation later.

10            It's not clear from the summary judgment record,

11   though, whether or not the juggled payments due to the India

12   vendor were ultimately paid or not, but again, insolvency is

13   not necessary to be established in an actual

14   fraud/fraudulent transfer.

15            With respect to the badge of whether or not the

16   transfer was in the ordinary course of business, this was

17   clearly -- these were clearly payments made outside the

18   ordinary course of the business of the Debtors.

19            As far as the fifth and sixth badges, the secrecy

20   of the transfer, the transfers were not kept secret.  In

21   fact, they were discovered and questioned by an internal

22   accounting manager.  Then finally as far as retention of

23   control over the property that does not appear to be an

24   issue here.

25            On balance, the Court would find there was

1  adequate evidence under the badges of fraud to conclude as a

2  matter of law that these transfers were actual fraudulent

3  transfers.

4          Finally, as I've partly noted, in an actual fraud

5  transfer under the New York DCL, it is not necessary to

6  prove insolvency or even prove unfair consideration.  As the

7  first appellate department noted in Wallstreet Associates v.

8  Brodsky, DCL 276, until Sections 273 and 275, concerns

9  actual fraud as opposed to constructive fraud and does not

10  require proof of unfair consideration or insolvency, 257

11  A.D.2d 526 (1st Dept 1999.)  See also Korea Deposit

12  Insurance Corp. v. Young, 59 (indiscernible) 442, Superior

13  Court New York County -- Supreme Court New York County 2017.

14          Under DCL 276, a transfer made with actual intent

15  to hinder, delay, or defraud present or future creditors is

16  fraudulent (indiscernible) such creditors whether or not the

17  Debtor receives fair consideration.  See United States v.

18  McCombs, 30 F.3d 310 (2d Cir. 1994.)

19          Finally, the Court notes that Mr. Schoor attempted

20  to allege that the funds that he advanced Mr. Parmar were

21  somehow used on expenses of one or more businesses.  There's

22  simply no evidence in the record, no competent evidence in

23  the record, to support that.

24          For the reasons stated on the record, summary

25  judgment is granted in favor of the liquidating Trustee for

1    recovery of the $160,000 plus post-judgment interest

2    thereon.

3              The Trustee in the motion had made a request but

4    did not brief or provide invoices on attorney's fees

5    incurred in connection with this litigation.  The Court will

6    use the following protocol to determine whether or not to

7    grant attorney's fees to the Trustee and if so in what

8    amount.

9              The Trustee has 14 days from today, so that's June

10   17th, to submit any invoices which can be redacted for

11   privilege or work product but should be submitted with a

12   summary attached concerning any legal fees or out-of-pocket

13   expenses incurred in connection with this litigation as well

14   as any case law or argument in support of the grant of

15   attorney's fees.

16             Mr. Schoor will then have 14 days thereafter to

17   file any response.  Again, on an issue of attorney's fees I

18   don't need a reply.  Because of the July 4th holiday, that

19   response will be due on January -- excuse me -- on July 7.

20             So, June 17 for any attorney's fee invoices and

21   summary as well as argument and support and then July 7 for

22   any response.  The Court is also awarding costs incurred in

23   connection with the litigation as provided under the rules.

24             Mr. Nolan, I'm going to -- I'm going to have your

25   office submit a form of judgment, but because I've taken the

1    attorney's fees portion on submission on this protocol, I'm

2    simply going to wait and enter one final judgment at the

3    end.  There's nothing else in the litigation to be resolved

4    other than whether or not to award attorney's fees unless

5    there's something that we haven't addressed today.

6            MR. NOLAN:  That's correct, Your Honor.  This is

7    just the -- just the two parties to the litigation, to the

8    dispute, and I believe I submitted a proposed order to the

9    motion.  I'll look to make sure that that was in fact the

10   case and that's acceptable to the Trustee.

11           THE COURT:  All right.  So, again, I'll be

12   entering one order.  My protocol, as well as many other

13   trial courts, I'll enter one order granting the motion and

14   then one judgment in the amounts that the Court has

15   determined, but I'm not going to enter a partial judgment

16   now and then a final judgment after I resolve attorney's

17   fees.  I'm just going to enter one order and one judgment at

18   the end.

19           MR. NOLAN:  That's -- understood, Your Honor.

20           THE COURT:  All right.  All right.  Mr. Campbell?

21           MR. CAMPBELL:  Yes, Your Honor.

22           THE COURT:  I -- anything that you want to address

23   or any questions about the timing mechanics?

24           MR. CAMPBELL:  Not at this time, Your Honor.

25   Thank you, Your Honor.

Page 43

```
 1              THE COURT:  All right.  All right, very well.  So,

 2    then we'll be adjourned on 20-8042.  I'm not going to set a

 3    further hearing because what remains to be resolved in the

 4    adversary proceeding will be on submission as of July 7th.

 5              MR. NOLAN:  Understood.

 6              THE COURT:  All right.  Very well.

 7              MR. CAMPBELL:  Thank you, Your Honor.

 8              THE COURT:  Thank you both.

 9              MR. NOLAN:  Thank you, Your Honor.

10              THE COURT:  So, that will conclude then the

11    Court's calendar for the morning of July the 3rd.  The Court

12    will be in recess and we'll go off the record.

13              (Whereupon these proceedings were concluded)

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    I N D E X

2

3                    RULINGS

4                                      Page      Line

5

6    Motion Granted                     14         32

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  June 14, 2021

[& - added]

**&**

**&** 4:3,18 5:1,8
28:8 34:5 37:15

**0**

**07701** 5:4

**1**

**1** 32:17 34:5 35:22
**10** 21:11
**10,000** 37:11
**100,000** 31:20,23
**10007** 4:14
**10016** 4:22
**10017** 4:6 5:11
**10:11** 2:6
**11501** 45:23
**11722** 2:3
**12** 8:10
**125** 5:3
**12j** 6:21
**130** 34:11
**14** 35:19 41:9,16
44:6 45:25
**14th** 21:11 22:6
22:14,20,22 24:23
25:3 26:1,3,13
**15th** 22:21
**16** 26:4
**160,000** 28:21
33:4 39:8 41:1
**16th** 22:21,25
23:24 24:18 29:10
**17** 19:12 41:20
**17th** 41:10
**18-71748** 1:3 6:8
**1964** 34:11
**1994** 40:18
**1999** 40:11
**1st** 40:11

**2**

**2** 4:12 6:20 7:11
7:22 8:16 9:20
13:10,22 17:11

18:2,11 19:18
20:10,16 22:15
23:5,24 25:20
**20** 32:4 36:15
**20-08042** 1:4
**20-8042** 28:1,19
43:2
**20-8051** 6:11
**2001** 30:12,12
**2006** 30:13
**2008** 36:9
**2009** 30:14,18,25
33:11 35:12 38:20
**2010** 31:8 36:8
**2016** 32:17 36:21
38:20
**2017** 28:22 31:13
31:14,19 32:4,15
33:1,20 36:15
37:4 38:22 39:4
40:13
**2018** 12:15
**2019** 32:24 33:2
**2020** 28:20 33:4
**2021** 2:5 29:20
35:7 45:25
**20th** 5:10
**21** 32:9
**22** 32:15
**232** 4:21
**257** 40:10
**27** 3:4
**273** 40:8
**275** 40:8
**276** 34:6 37:15
38:12 40:8,14
**28** 29:6 31:7
**29** 29:1
**290** 2:2
**2d** 34:11 40:18
**2nd** 34:10

**3**

**3** 2:5
**30** 29:1 40:18
**300** 5:3 45:22
**310** 40:18
**31st** 30:25
**32** 44:6
**33** 29:8
**330** 45:21
**331** 34:11
**34th** 4:5
**363** 19:16
**376** 37:19
**390** 37:19
**396** 36:8
**3rd** 43:11

**4**

**4** 31:14
**4.8** 13:13,18
**41** 29:18
**42** 30:1
**43** 3:1
**435** 36:7
**442** 40:12
**4th** 41:18

**5**

**5** 24:21 25:2,17,23
31:19
**50** 34:10
**526** 40:11
**54** 20:4,14
**548** 34:5 35:22
**54b** 21:10 24:20
**56** 35:20
**56c** 34:24
**59** 40:12

**6**

**60,000** 31:22,24
**600,000** 30:15
31:2
**6th** 31:21

**7**

**7** 31:7 35:19 41:19
41:21
**747** 5:10
**780** 4:5
**7th** 43:4

**8**

**8007** 9:25
**810** 36:9
**819** 36:8
**8500** 4:13

**9**

**906** 4:21
**9th** 24:16,22 25:2
25:17,23

**a**

**a.d.2d** 40:11
**ability** 11:9
**able** 11:13 12:1
15:10
**absolutely** 9:9
**absurd** 15:19
**acceptable** 42:10
**access** 12:5,14,20
14:19,23,24
**account** 31:21,22
**accounting** 32:2
38:2 39:22
**accounts** 31:4
**accrual** 13:24
**accurate** 45:4
**acquaintance**
30:14
**acquired** 30:22
**action** 15:4
**actions** 28:24
**actual** 33:21 34:3
36:6 37:16 38:5
38:10 39:13 40:2
40:4,9,14
**added** 23:8

**addition** 9:7 16:17
33:9
**additional** 29:5,13
**address** 26:25
42:22
**addressed** 42:5
**addressing** 9:21
**adduce** 8:25
**adequate** 18:18
18:24 34:2 38:21
40:1
**adequately** 19:16
**adjourned** 43:2
**admissible** 35:3
**adv** 1:4
**advance** 21:19,23
**advanced** 20:24
40:20
**adversary** 6:10,21
7:10,24 14:14
24:19 27:2,21
28:1,4,19 31:24
43:4
**advise** 33:7
**advised** 21:7
**advising** 31:1 33:5
**affiant** 27:12
**affidavit** 22:3
24:7,10 27:7,9,11
27:14,15,16 29:17
29:18,21,25 32:7
34:25 35:6,11,19
**affidavits** 21:19
21:22 22:2 25:14
25:16,22,25 26:5
26:9 28:25 29:15
34:18
**affirmative** 18:2
**afternoon** 22:20
**age** 21:1
**ago** 15:21 19:12
19:12 34:10

**agreement** 11:23
27:13 32:10,13,16
32:17 36:18 37:22
**ahead** 17:8 22:2
**al** 1:13 6:12
**alan** 2:22 6:3 37:9
**allegations** 33:15
**allege** 40:20
**allowed** 29:12,14
**allowing** 9:3
**alternative** 38:11
**amended** 3:1
**amount** 9:10
11:10 12:21 15:9
15:10 19:24 41:8
**amounts** 42:14
**amy** 6:2
**answer** 19:20
23:20
**anticipate** 18:7
21:25
**antsy** 14:16
**anybody** 13:16
26:21
**apart** 15:22
**apartment** 6:21
7:11,16,18 9:15
10:3,8,8,11,20
11:3 12:14 15:5
15:20,23 16:16,18
16:22,24,25 17:23
**apologize** 14:5
**apparently** 38:21
**appeal** 8:1,3,13,13
8:15,22,22 9:8,23
10:13,22 15:17,18
16:1,3,3 20:8,11
20:16,20 21:10
23:5,17 24:2,21
25:7
**appealable** 8:20
10:21

**appealed** 10:16
**appear** 7:22 39:23
**appearances** 6:9
**appearing** 6:12
28:3,5
**appears** 8:1 11:22
**appellate** 10:15
40:7
**application** 11:8
23:8,9
**appreciate** 31:9
**approach** 24:14
**appropriate** 9:16
19:1,24
**approve** 20:23,23
**april** 29:20 35:7
**arguably** 11:15
**argue** 22:6
**argument** 41:14
41:21
**arguments** 7:4
15:5
**arrears** 9:11,14
9:18 14:17 16:9
16:13
**arvind** 5:9
**aside** 13:19,22
**asked** 19:19 33:9
39:7
**asking** 10:24
24:13 25:3 33:3
**asks** 20:15
**aspect** 18:11
**asset** 9:13 10:14
10:25 11:15,18
14:6,7 16:10,12
17:10
**assets** 13:23 31:5
**associated** 9:15
16:7
**associates** 5:8
40:7

**ast** 1:3,4
**attached** 32:7
41:12
**attachments**
34:20
**attempt** 10:19
11:14 12:5
**attempted** 36:11
37:22 40:19
**attempting** 8:16
10:6 35:8
**attempts** 35:11
**attorneys** 4:4,12
4:19 5:2,9
**attorney's** 41:4,7
41:15,17,20 42:1
42:4,16
**august** 30:25,25
31:8 32:17
**authorized** 14:23
32:20
**available** 22:14
23:23 39:5
**avenue** 4:5,21
5:10
**avoided** 34:4
**avoiding** 13:24
**award** 42:4
**awarding** 41:22
**aware** 10:1,12
11:1 12:10 23:14

**b**

**b** 2:21
**b.r.** 36:8,8 37:19
**back** 8:6,23 30:12
33:11 36:18
**backdated** 32:17
37:23
**badge** 38:25 39:15
**badges** 38:8,11,13
39:19 40:1
**balance** 31:10,16
38:23 39:25

**bank** 5:4 31:21,22
**bankr** 36:9 37:20
**bankruptcy** 1:1 2:1,23 6:24 10:12 23:14 34:4 35:23 37:5
**based** 7:6,6 8:24 10:5 15:18 24:15 31:6 35:8
**basis** 31:11 38:11
**bayou** 36:8
**bear** 28:11
**beef** 32:12
**beginning** 26:10
**behalf** 6:15,17,20 11:22 13:17 14:23 18:21 27:6 28:5,9
**believe** 17:17 19:3 23:20 42:8
**believed** 10:17,17 37:10 20:2
**best** 17:10 20:2
**better** 10:7 13:12 14:1 21:1 22:11
**beyond** 38:6
**bid** 15:9
**bit** 26:16
**board** 4:19 6:18 9:12 11:19 12:20 12:24 13:5,17 14:16 18:22 19:4 19:5,8 25:21
**bond** 9:10,17 11:8 11:10 16:8
**bottles** 21:1
**brief** 8:9 41:4
**briefly** 38:13
**bring** 13:12 19:18
**brodsky** 40:8
**broker** 17:15
**bruno** 36:7
**build** 14:17
**building** 12:5,6

**burden** 37:14
**business** 31:7,11 35:12,14 36:20 37:23 38:24 39:16 39:18
**businesses** 40:21
**businessperson** 30:19

**c**

**c** 4:1 6:1 45:1,1
**calendar** 27:25 43:11
**call** 6:6
**called** 35:10
**calling** 18:8
**campbell** 5:6 28:7 28:8,13 42:20,21 42:24 43:7
**capacity** 1:12
**case** 1:3,4 6:10,22 11:13 12:11,18 14:8,13 27:25 28:1 37:5,10 41:14 42:10
**catastrophic** 17:2
**caused** 9:12
**causes** 28:24
**center** 4:13
**central** 2:3
**certain** 20:21 35:12 39:6
**certainly** 10:9 11:11 12:10 13:15 13:17 16:4 17:12 20:17 38:19
**certified** 45:3
**challenge** 8:16 18:17 20:11 27:14
**chance** 9:6,6 24:11
**charged** 15:21
**charges** 12:16,23 15:3 16:14

**check** 19:3 22:24
**chief** 6:3
**ciesla** 5:1 28:8
**cir** 34:11 40:18
**circuit** 34:10
**circumstances** 20:19
**cited** 38:14
**claim** 14:19 16:23 35:24 37:10,11
**claimed** 37:10
**classic** 35:7
**clear** 34:9 36:10 36:24 38:4 39:10
**clearly** 31:3 39:17 39:17
**clerk** 6:2,7 27:25
**client** 11:22 17:22 17:24 18:22 19:4
**client's** 12:4 14:4 14:5
**close** 31:6 33:7 38:18
**cmecf** 8:3
**code** 10:12 34:4 35:23
**come** 8:23 24:14 32:5 36:16
**comments** 24:6
**commitments** 39:5
**common** 15:3
**communications** 35:16
**companies** 33:10
**company** 14:22 14:22,24 34:24
**competent** 33:19 34:8,12 35:4 40:22
**complaint** 28:20 28:20,24 30:24

**completely** 13:1
**compliance** 35:20
**concerning** 7:11 37:25 41:12
**concerns** 40:8
**conclude** 40:1 43:10
**concluded** 34:1 43:13
**conditioned** 9:9 9:17
**conditions** 16:7
**condo** 9:12 13:5
**condominium** 4:20 6:18 19:8
**conference** 28:15 30:2
**conflict** 22:13,20
**conjecture** 16:6
**connection** 24:7 41:5,13,23
**connoisseur** 20:25
**consider** 25:10,15
**consideration** 18:13,24 38:15,17 40:6,10,17
**constitute** 26:5 38:4
**constructive** 40:9
**consultant** 32:11 32:18
**consulting** 32:16 32:17 36:18 37:22
**contained** 35:18
**contemplate** 18:22 24:14
**contemplating** 17:7 18:3
**contemporaneous** 37:25
**contend** 13:16
**contending** 18:12

**contention** 15:19
34:23
**continue** 14:17
**continued** 13:24
**continuing** 14:1
**control** 26:14
39:23
**controlled** 21:18
**controversy** 25:10
36:2,4
**conversation**
23:19 29:19 35:6
**conveyance** 37:16
**convincing** 36:24
38:4
**corp** 36:7 40:12
**correct** 11:25
17:17 42:6
**cost** 12:22,23
**costs** 11:18 13:24
41:22
**counsel** 6:24 18:7
24:7
**country** 45:21
**county** 40:13,13
**couple** 12:2,15
15:14
**course** 23:7 38:22
39:16,18
**court** 1:1 2:1 6:5,9
7:3,6,13,20,21 8:1
8:10,11 9:2,19
10:11,25 11:10,12
11:17 12:18,24
13:3,11,14,19,21
14:10,20 15:4,6
15:12,15 17:5,19
18:1,10,15,20
19:10,13 20:2,5,8
20:18,21,23 21:24
22:3,15,18,24
23:2,4,5,11,13,14
23:15,22,25 24:12

24:18 25:1,14
26:15,20 27:5,8
27:11,20 28:3,10
28:14,14,16 29:10
29:12,17 30:1,4
30:11,21,23 32:14
32:19 33:16,19
34:1,1,2,7,12
36:11,14 37:7,13
37:21 38:8,11
39:3,25 40:13,13
40:19 41:5,22
42:11,14,20,22
43:1,6,8,10,11
**court's** 8:6,11
10:2 12:8 17:7,7
19:22 20:11 23:10
**courtroom** 6:3
22:10,22
**courts** 38:9 42:13
**court's** 26:2 29:3
30:5 33:13 43:11
**covered** 16:15
**create** 36:12
37:23
**creation** 36:18
38:1
**creditor** 34:6 36:7
37:15
**creditors** 37:1,3
37:18,19 38:7
39:6 40:15,16
**criminal** 18:7
**cross** 21:20 24:4
26:6 27:12,14,17
**current** 13:13
14:9 16:13
**currently** 8:17

**d**

**d** 6:1,16 44:1
**damage** 16:18,20
16:21

**dance** 20:7
**daniel** 6:23
**date** 7:17 36:4
45:25
**dated** 36:18
**day** 22:21 31:19
31:21 32:9
**days** 8:10 21:11
21:22 22:2 41:9
41:16
**dcl** 40:5,8,14
**deal** 31:7
**debt** 36:13
**debtor** 1:10 31:20
32:11,18 34:5
36:1 37:15 40:17
**debtors** 29:22
30:21,22,23 31:16
31:18,20,23 32:3
32:22,22,23 33:21
33:24,25 36:12,23
37:24 38:3,7,15
38:16,23 39:1,4,8
39:18
**debtors'** 32:2
**debts** 35:13,14
**december** 33:2
**decide** 24:15 25:1
25:21
**decision** 13:22
**declarant** 35:3
**declaration** 17:15
34:25
**declarations** 18:2
34:19
**defaulted** 15:3
**defendant** 15:17
28:22 29:6,13,15
29:18,20 34:22
35:5
**defendants** 1:17
6:21

**defendant's** 30:9
**defense** 33:7
**defraud** 36:7 37:1
37:17 40:15
**delay** 21:5,13 36:6
37:17 40:15
**deliver** 26:20
**deliverables**
32:12
**demand** 33:6
**demonstrates**
33:20
**denial** 12:14,20
**denied** 14:23,24
**deny** 14:19
**department** 40:7
**deposit** 40:11
**deposition** 30:9
**depreciation**
16:10,12
**deprivation** 12:22
12:22
**depriving** 12:20
**dept** 40:11
**deputy** 6:3
**detail** 30:4
**detailed** 30:23
**details** 29:19
33:10
**determination**
11:16 20:19 30:5
**determinations**
34:7,13
**determine** 8:12
24:18 33:16 34:3
34:15 38:9 41:6
**determined** 37:13
42:15
**didn't** 17:19 23:4
38:15
**direct** 14:12 16:15
21:18 24:9 26:5
27:11,16 29:21

**directed** 31:14,16
**disagrees** 17:11
**discovered** 39:21
**discuss** 18:6 38:13
**discussed** 13:4
**disguise** 36:12
**dismissed** 8:14,15
  9:23
**dispute** 30:6 42:8
**disputes** 21:7
**distributors** 37:20
**district** 1:2 8:1,10
  20:21 23:5,13
  37:8
**docket** 8:3 20:2
  29:1,6,8,18 30:1
  31:7
**document** 29:6
  32:19,20 37:25
  38:1,1
**documentary**
  25:24
**documented**
  34:17
**documents** 25:23
  25:25
**doesn't** 27:16
**dog** 14:12
**doing** 11:14
**don** 28:7
**donald** 5:6
**don't** 21:3 26:10
  41:18
**double** 19:3
**doubt** 13:10
**drawn** 30:9
**dressler** 34:10
**due** 9:12 24:22
  25:25 26:13 39:11
  41:19

**e**

**e** 2:21,21 4:1,1 6:1
  6:1 31:8,14 32:4,6
  32:13,19 33:5
  35:16 36:14 37:25
  38:2 44:1 45:1
**easily** 11:5
**eastern** 1:2 22:7
  23:2,24
**ecro** 2:25
**edith** 29:1
**effect** 9:22
**effort** 34:8
**ehrenberg** 1:12
  3:2,5 27:1 28:1,19
  33:3
**ehrenburg** 6:11
  6:25 17:16 22:13
  22:25 23:23
**either** 7:9 9:8
  10:22 11:4 14:12
  29:15 36:5 37:17
**element** 36:5
**elements** 35:24
**endeavor** 11:11
**ends** 7:19
**enforced** 16:2
**enter** 42:2,13,15
  42:17
**entered** 7:24
  26:18 37:8
**entering** 42:12
**entities** 30:21
**entitled** 17:12
  20:17 33:17
**equal** 13:5
**essentially** 9:13
  10:10 21:25 28:21
**established** 35:25
  39:13
**estate** 9:14 10:14
  10:14 13:8 15:22

**et** 1:13 6:12
**etcetera** 11:19
  13:25
**event** 18:5 26:8
**everybody's**
  17:10
**evidence** 18:23
  25:6,24 29:8,13
  30:11 33:14 34:2
  34:9,12,18 35:3,5
  36:10,19,20,24
  37:3,21 38:5,17
  39:1,3 40:1,22,22
**evidenced** 30:16
**evident** 15:21
**evidentiary** 17:13
  18:4,5 19:19 21:8
  24:11 25:5,15,21
  26:4,7,8
**examination**
  21:20 26:6 27:12
  27:14
**examine** 27:17
**examined** 24:4,4
**exchanged** 21:19
  21:22 25:16,22
**excuse** 41:19
**executed** 30:16
**executing** 13:7
**execution** 13:11
**exhibits** 21:23
  25:23 26:13,20
  29:2 34:19
**existed** 36:20 37:3
**exists** 13:24
**expect** 16:6 26:10
**expected** 15:25
**expense** 16:15
**expenses** 9:12,15
  11:19 13:25 17:1
  17:22 40:21 41:13
**experience** 12:4

**expert** 18:15
**extent** 27:7
**extremely** 14:16

**f**

**f** 2:21 45:1
**f.2d** 34:11
**f.3d** 40:18
**fabricate** 36:23
**face** 27:15
**fact** 9:24 12:1
  15:5 30:7 33:14
  34:24 36:22 38:1
  39:21 42:9
**factors** 24:2,5
**facts** 8:25 25:9,12
  29:5,5,23 30:5,7,7
  30:8 34:16,21,22
  35:2
**fails** 35:13
**fair** 18:12 19:24
  40:17
**fairly** 21:6,12
**fake** 37:22
**fallow** 15:23
**far** 38:18,25 39:19
  39:22
**fast** 31:13
**favor** 9:2 30:17
  40:25
**february** 33:4
**federal** 2:2
**fee** 41:20
**fees** 11:19 12:23
  41:4,7,12,15,17
  42:1,4,17
**fifth** 39:19
**fight** 14:1 15:1
  17:11
**fighting** 14:2
**figure** 18:11
**file** 9:25 20:5 23:5
  23:9,12 24:16,17
  24:21 41:17

**filed** 3:1,4 12:18 15:23 16:2,3,3,4 23:6 24:19 25:4 25:16,22 28:20 29:4,7 37:10
**filing** 16:5
**final** 7:24 8:19,19 10:17,18,21,23 11:16 20:4,14 23:17 42:2,16
**finally** 10:7 39:22 40:4,19
**financial** 11:9 39:5
**find** 38:12 39:25
**finding** 11:3
**fine** 17:12
**firm** 28:8
**first** 6:6,7 7:8,22 8:4 9:10,21 20:19 23:14 38:14 40:7
**fixing** 16:24
**flex** 22:1
**flood** 16:22
**floor** 4:5 5:10
**follow** 30:3 31:8
**following** 21:25 41:6
**follows** 28:18
**foregoing** 45:3
**form** 10:24 41:25
**format** 21:24
**forth** 11:8 28:24
**forward** 9:3 10:22 13:7 15:3,7
**forwarded** 32:16
**forwarding** 31:13
**found** 38:10
**frankly** 15:19 17:3
**fraud** 38:8,10,11 38:14 39:14 40:1 40:4,9,9

**fraudulent** 33:21 34:3 35:24 37:18 38:5,10 39:14 40:2,16
**free** 27:23
**freed** 31:5
**friend** 30:14
**friends** 38:20
**friendship** 31:6 31:11
**front** 8:10 13:13 20:10 24:15
**full** 8:9 9:10 26:2
**fully** 23:10
**funds** 38:6 39:5 40:20
**further** 8:23 16:9 16:21 21:13 29:16 43:3
**future** 9:9 37:17 37:18 40:15

**g**

**g** 6:1
**general** 6:24 25:12
**generally** 21:2
**gentlemen** 37:10
**genuine** 30:6,6 33:14 34:23
**getting** 7:15 14:16
**giordano** 5:1 28:8
**give** 21:8 22:1
**given** 9:14 17:3 19:20
**go** 10:22 12:5 13:7 15:7 19:11 20:2 24:12 27:23,23 43:12
**going** 6:9 9:3 13:8 15:3,8,10,20,23 23:18 24:12,14,18 24:21,25 25:8 26:11 27:13 41:24

41:24 42:2,15,17 43:2
**good** 6:2,13,16,19 6:23 28:7
**grant** 8:24 20:8 20:20 33:16 41:7 41:14
**granted** 9:7,16 30:3 40:25 44:6
**granting** 10:2 42:13
**great** 23:25
**greatly** 31:9
**gross** 38:14
**grossly** 38:17
**group** 4:11 6:20 36:8
**gyparakis** 5:14

**h**

**hadden** 4:16 6:19 6:20 7:13,14 9:19 9:21 11:25 13:15 14:4,21 17:19,23 18:1,5,14,19 22:15,18,19 23:3 23:4,6,12 27:19 27:24
**hadden's** 22:17
**half** 5:3
**halleran** 5:1 28:8
**handles** 16:20
**handling** 7:1
**happening** 17:2
**happens** 21:16
**hardship** 24:3
**hate** 17:8
**haven't** 42:5
**head** 12:9
**healthcorp** 1:8,13 6:8
**hearing** 3:1,4 6:4 7:2 17:13 18:4,6 18:23 21:9 24:5

24:11 25:5,15 26:4 27:10 29:10 43:3
**hearings** 7:7 13:5 21:9
**hearsay** 35:7,13
**held** 17:13 29:10
**he's** 24:6
**high** 31:15
**higher** 13:12
**hinder** 36:6 37:17 40:15
**history** 28:18 35:16
**hold** 13:2,4 14:18
**holding** 13:6
**holdings** 37:19
**holes** 16:19
**holiday** 41:18
**hon** 2:22
**honestly** 11:8
**honor** 6:14,19,23 7:12,14 8:8,21,23 8:24 9:7 14:15 15:13 16:11,17 17:4,18,21 18:6 19:2 22:12 23:1,3 23:6,13,23 24:1,9 27:4,18,19,24 28:7,13 42:6,19 42:21,24,25 43:7 43:9
**honorable** 6:3
**howard** 1:12,16 3:2,5 5:2 6:24 28:1,2,9 32:13
**hut** 14:12
**hyde** 3:25 45:3,8

**i**

**identified** 32:10 32:18
**ilan** 4:9 6:14

**inadequacy** 38:14
**inadequate** 38:17
**inadmissible** 35:21
**include** 24:2
**includes** 36:14
**including** 36:15
**incurred** 11:20 16:12 37:16 41:5 41:13,22
**india** 39:8,9,11
**indicated** 8:2 31:3
**indiscernible** 16:23 24:11 37:20 40:12,16
**informally** 23:7
**informed** 12:11 21:6
**initially** 9:24 12:16
**injudicious** 10:9
**injunctive** 8:24 9:9
**insolvency** 39:12 40:6,10
**insolvent** 39:2
**instructions** 29:3
**insurance** 16:23 40:12
**intent** 33:21,22,23 34:3 36:6,25 37:17 38:5 40:14
**interest** 7:23 17:10 36:1 41:1
**interested** 6:22 30:19
**interlocutory** 8:1 8:7,9,13,18 9:22 10:4,18 15:18 20:8
**internal** 38:2 39:21

**internally** 32:1
**investment** 31:12
**invoice** 32:5 36:17
**invoices** 41:4,10 41:20
**irs** 31:4
**islip** 2:3
**issue** 10:20 11:17 12:3 13:9 14:13 14:13 31:24 33:14 35:25 36:2,5 39:24 41:17
**issues** 9:20 17:23 17:25 19:17 21:4 21:6,11 22:6,6 24:24 25:1,2 26:17 34:23
**issuing** 26:15
**items** 29:1
**it's** 9:24 35:13 36:10 37:2
**i'll** 27:15 29:11 38:13 42:9,11,13
**i'm** 27:13 41:24 41:24 42:1,15,17 43:2
**i've** 40:4 41:25

**j**

**jack** 37:9
**january** 28:22 31:14,19,21 33:20 37:4 39:3 41:19
**jeff** 4:8 6:14 27:6 28:5
**john** 19:21
**joint** 29:4
**jones** 4:3 6:15
**joseph** 5:18
**judge** 2:23 6:3,7 6:16
**judgement** 20:4 23:17

**judges** 13:21
**judgment** 3:4 7:24 8:6,9,13,18 8:19,20 9:22 13:6 13:11,16,24 15:9 16:1,2 17:4 20:4 20:14 23:16 28:16 28:23,25 29:7,8 29:11,14 30:3,10 30:24 32:7 33:17 33:18,19 34:8,14 35:1 37:7,11 39:10 40:25 41:1 41:25 42:2,14,15 42:16,17
**juggled** 39:11
**juggling** 39:5
**july** 41:18,19,21 43:4,11
**june** 2:5 21:10 22:6,14,25 23:24 24:16,18,22,23 25:2,3,16,23 26:1 26:3,4,13 30:14 41:9,20 45:25
**justification** 37:23

**k**

**kept** 39:20
**kind** 21:16
**knew** 15:20
**knobs** 16:19
**knottingham** 37:9
**know** 9:13 11:2,6 11:9 14:10 17:6 19:20 20:18 21:17 22:5,10 24:5,13 25:3,7 26:16,21
**knowing** 15:4
**knowledge** 29:22 35:2
**known** 21:12

**knows** 35:9
**korea** 40:11
**kupetz** 6:24

**l**

**lack** 10:7 14:19
**laid** 21:12 26:14 26:23
**late** 31:2
**law** 4:11 6:20 11:5 28:8 33:18 34:6 37:15 40:2 41:14
**lawrence** 4:24 6:16
**leave** 8:16
**ledanski** 3:25 45:3 45:8
**legal** 41:12 45:20
**legitimate** 38:6
**lengths** 36:23
**letter** 31:1 33:3,6
**lev** 6:23,23 22:10 22:12,17,24 23:1 23:23
**liability** 14:22
**liable** 16:24
**lie** 15:23
**lien** 31:4
**likelihood** 9:6
**limine** 26:11
**limited** 14:22 18:9
**line** 44:4
**lined** 18:16
**liquidated** 33:2
**liquidating** 1:12 6:25 9:4 15:22 18:25 19:14 20:3 23:16 25:20 28:6 28:15 37:13 40:25
**list** 30:23
**litigation** 21:2 41:5,13,23 42:3,7
**little** 22:1 26:16

**live** 12:1 26:6
**living** 11:24,25
**llc** 6:21 7:16 10:10
    14:20 15:17
**llc's** 11:14
**llp** 4:3,18 5:8
**loan** 30:16 31:2
    31:10,10,17 32:24
    32:25 33:11 35:12
    38:21,24,24,24
**loaned** 30:15
**logged** 27:21
**long** 34:9
**look** 38:9 42:9
**looking** 19:13
**loss** 16:14
**losses** 9:15 16:12
    17:22
**lost** 13:8,9

**m**

**m** 1:12 3:2,5
**machinery** 36:7
**madison** 4:21
**mail** 31:9,14 32:6
    32:13,19 36:14
**mailed** 32:4 33:5
**mails** 35:16 37:25
    38:2
**main** 6:10,22
    14:13
**maintaining** 14:1
**maintenance**
    11:19 13:25
**making** 16:13
    33:25
**manager** 7:16
    14:5 32:2 38:3
    39:22
**managers** 4:19
    6:18
**managing** 20:2
**march** 8:6 28:20
    29:10

**marketed** 19:16
**marketing** 18:17
**marketxt** 37:19
**maryam** 6:19
**maryann** 4:16
**material** 33:14
    34:24
**matter** 1:6 6:7 7:7
    18:7 27:23,25
    33:18 40:2
**matters** 6:6,12
    13:2 35:4
**mcbride** 37:9
**mccombs** 40:18
**mechanics** 42:23
**meet** 23:10
**meets** 11:3
**merged** 30:22
**met** 37:14
**metaphysical**
    17:8
**midst** 7:17
**mile** 5:3
**million** 13:13,18
**mineola** 45:23
**minor** 16:18,20
**minute** 28:11
**missing** 16:19
**mister** 15:16
**mitigation** 12:13
**moment** 13:20,22
**monday** 26:17
**monetize** 17:10
**monetizing** 13:23
    14:2,6 15:1 16:24
**money** 14:3 15:2
    18:10 31:17 38:16
**monitoring** 6:25
**months** 19:12
**mooted** 8:22
**morning** 6:2,13
    6:16,19,23 23:21
    28:7 32:15 43:11

**motion** 3:1,4 6:10
    7:5 15:24 16:5
    17:6,14 19:9 20:9
    21:9,10,10 23:8
    24:17,20 25:6,12
    27:1,21 28:16,25
    29:7,11,12,23
    30:1,3,24 34:18
    35:1,1 41:3 42:9
    42:13 44:6
**motions** 25:2,15
    26:11
**move** 11:23
**moved** 28:23
    29:24
**msj** 29:12
**multiple** 31:4
**mute** 6:13 22:17
**mv** 34:11

**n**

**n** 4:1 6:1 44:1
    45:1
**n.d.n.y.** 36:8
**near** 36:21
**necessarily** 14:11
**necessary** 33:16
    34:12 39:13 40:5
**need** 21:3 23:9
    24:24 25:11,16,18
    26:21 27:8 31:3
    32:5 36:16 41:18
**needed** 32:12
**needs** 23:14
**neighbor** 30:13
**neighbors** 38:20
**never** 32:20,21,22
    32:23 33:12 38:24
**new** 1:2 2:3 4:6,14
    4:22 5:11 15:2
    34:5 37:14 40:5
    40:13,13
**nj** 5:4

**nolan** 4:8 6:14 7:1
    8:5 27:4,6,6,18
    28:5,5,25 34:20
    41:24 42:6,19
    43:5,9
**non** 6:17 7:24
**noon** 24:23 25:3
    26:1,3,13
**note** 16:11 30:16
**noted** 34:10 40:4
    40:7
**notes** 40:19
**notice** 3:1 17:20
    18:1
**notion** 15:16
**number** 28:1,1
    30:4
**numerous** 29:2
**ny** 4:6,14,22 5:11
    45:23

**o**

**o** 2:21 6:1 45:1
**object** 19:7,8
    26:11
**objected** 27:8
**objection** 29:7,25
**objections** 19:9,19
    25:25 26:8
**objective** 34:14
**obligation** 37:16
    37:24 39:9
**obligations** 37:8
**obtained** 19:24
**obviously** 10:11
    12:7 14:19 23:12
**occurred** 36:3
**offer** 13:13
**offers** 34:22
**office** 41:25
**officer** 31:15
**offset** 12:24
**oh** 6:7 22:18

oit  12:12
old  45:21
once  10:13,14
  25:4
ongoing  9:12,14
  13:2 16:13,14
  17:1,22
operations  33:10
opportunity
  20:11
oppose  34:25
opposed  14:2,6
  40:9
opposing  7:19
opposite  12:3
opposition  18:2
  23:7 29:14 35:15
optimistic  7:8
orbach  5:18
order  8:6 10:2,2,4
  10:17,18,18,21
  21:24 26:14,17,24
  33:16 35:23 39:6
  42:8,12,13,17
ordinary  39:16,18
original  35:11
orion  1:8,13 6:8
outline  7:5
outside  39:17
outstanding  10:20
outweighed  12:23
overall  7:9
owe  38:15
owed  12:23 31:17
owing  37:9
owned  14:21
  31:22
owner  15:2
ownership  10:3
  12:8

**p**

p  4:1,1 6:1
p.c.  5:1
p.m.  23:24 24:22
  25:2,17,23
pachulski  4:3
  6:14
package  26:2
page  44:4
paid  12:16 15:3
  28:21 31:17 33:1
  36:23 37:24 39:12
papers  19:9 20:5
paragraph  35:19
paris  5:14
park  4:20
parlatore  4:11
  6:20
parmar  9:8,16
  10:10 11:8 12:13
  14:21 18:8 24:3
  29:15,20,21 30:14
  30:17,18 31:1,14
  31:16 32:4,12,24
  33:1,5,6,9,11 35:7
  35:10,17 36:11,16
  36:22 38:20,22
  40:20
parmar's  30:15
  36:13 37:24
part  18:21 24:1
  30:9 32:6
partial  8:18 20:3
  23:17 32:25 42:15
particular  10:13
particularly
  19:21 34:19
parties  7:6 13:10
  21:6,20 24:17
  25:10,14,24 29:3
  30:8 34:21 42:7
partly  40:4

partner  14:25
party  6:17,22
  7:23 21:18 27:7
  34:22
party's  26:12,12
pattinsky  6:17
paul  30:14
pay  15:2 35:12
  36:17 38:5 39:6,7
  39:8,8,9
paying  9:11 11:20
  13:23 16:9 35:15
payment  9:18
  31:9
payments  16:13
  31:23 32:3,6,25
  33:20,23,25 36:13
  36:25 37:4 38:4
  38:16 39:4,11,17
payroll  31:3
pending  8:2 9:8
  15:17,25 20:16,20
  21:10 23:5 24:2
  24:21 25:6 29:23
percolating  21:4
performed  32:23
permit  15:6
person  19:11
  29:22
personal  7:15
  11:23 31:10 32:24
  32:25 35:2 36:13
  37:24 38:24
personally  33:1
petition  36:4
piece  11:1,2
piittinsky  4:24
pittinsky  4:18
  6:16,17 11:20
  12:2,9 14:10,15
  17:24 18:20 19:2
  24:1

pittinsky's  17:22
place  38:6
placed  31:4
plaintiff  3:2,4
  27:6 28:6 34:17
  37:2
plaintiffs  1:14
platform  21:14
plaza  2:2
pleadings  7:6
plus  41:1
pocket  41:12
point  10:11,19,22
  11:15 12:7 14:4
  14:20 19:6,22
points  15:14
politely  13:6
portion  25:5 42:1
portions  26:9
  29:25
position  8:5,8
  9:20 10:1,5,10
  11:7 12:4,17,17
  12:21 13:11 14:9
  16:4 19:3
positions  7:4
possession  16:16
possibility  10:13
  18:8
possible  22:20
possibly  11:5
post  41:1
posting  9:10 16:8
potentially  17:21
practical  17:8,9
practice  21:17
  25:12
precluding  25:6
predominance
  30:7
predominant
  29:24

**premature** 10:19
**premises** 11:3
**prep** 26:4
**prepared** 21:8
  29:4 32:10
**present** 5:16
  21:20 24:4 27:9
  37:17,18 40:15
**presentment** 3:1
**preserve** 14:6
**presidential** 25:1
**presume** 17:14
**presuming** 11:13
**prevail** 10:23
  35:23
**prevent** 8:25
**price** 15:8 18:12
  19:6,25 20:24
**principal** 30:20
**prior** 7:7 32:25
  36:4
**private** 15:11
  19:15
**privilege** 41:11
**probably** 22:1
**probative** 19:12
  19:21
**procedural** 20:1
  21:9 28:18
**procedurally**
  20:13
**procedure** 13:19
  13:21 19:7 34:14
**procedures** 18:24
  23:10
**proceed** 23:25
**proceeding** 6:11
  7:25 12:25 13:1
  24:19 28:4,19
  31:25 43:4
**proceedings**
  11:22 12:19 43:13
  45:4

**proceeds** 17:11
  33:11
**process** 18:17,24
  19:14,15,23,23
**product** 32:22
  41:11
**program** 22:1
**promissory** 30:16
**proof** 37:14 40:10
**property** 7:15
  8:17 9:1,4,11 11:1
  11:2,24 12:21
  13:8 14:2 35:25
  35:25 39:23
**property's** 19:16
**proposed** 42:8
**protect** 10:25
  11:14
**protocol** 7:10
  21:13,14 26:19,23
  41:6 42:1,12
**prove** 35:9,11
  40:6,6
**provide** 29:8,20
  33:10 35:8,14
  41:4
**provided** 17:15
  21:23 34:19 37:3
  41:23
**provides** 37:15
**purchase** 18:12
**purported** 35:14
**purpose** 8:12
**purposes** 18:9
  23:17
**put** 12:10 13:1
  17:8 19:9 21:5
  24:7,10
**puts** 10:9
**putting** 13:19,21
  17:24 18:3,22

**q**

**question** 7:8,9
  9:21 19:19
**questioned** 38:3
  39:21
**questions** 7:5,21
  7:21 32:1 42:23
**quite** 11:21,21
**quote** 31:2,6,6
  32:12 33:6,8 39:6

**r**

**r** 2:21 4:1 6:1 45:1
**raise** 8:4
**raised** 7:22 17:23
  17:25 32:1 33:15
**ranking** 31:15
**reach** 15:10 34:13
  38:6
**reached** 7:9 11:23
**reaching** 34:7
**ready** 22:5,8,9,16
**real** 9:14 10:14,14
  12:21 34:15
**really** 19:2,12,20
  19:23
**reason** 9:23,24
  12:9,16 21:5,13
  32:5 33:24 36:12
  36:17,20,23
**reasonable** 9:6
**reasons** 30:2
  35:18 40:24
**receive** 29:17
**received** 33:23
**receives** 40:17
**recess** 43:12
**record** 12:10 30:4
  30:10 32:7 34:9
  36:19 39:10 40:22
  40:23,24 43:12
  45:4
**recorded** 6:4

**recover** 28:21
**recovery** 41:1
**red** 5:4
**redacted** 41:10
**refer** 29:12
**referred** 36:15
**refiled** 25:19
**refrigerator**
  16:20
**refused** 12:5
**relating** 35:6
**relationship**
  38:18,22
**relevant** 29:23
  30:5,20
**relief** 8:24 9:7,9
  9:16 10:25 24:17
**relies** 29:6
**rely** 25:24 34:12
**relying** 24:6 34:8
  37:21
**remain** 37:5,12
**remained** 37:4
**remains** 25:9 43:3
**remedy** 10:15
**render** 20:13
  23:17 28:16
**rendered** 20:4
  39:2
**repaid** 31:17
  32:25
**repay** 38:23
**repayment** 31:1
**repeat** 31:10
**replies** 24:24
**reply** 31:5 41:18
**request** 15:6,24
  15:25 30:15 31:5
  41:3
**requested** 33:6
**require** 11:12
  21:22 40:10

**requires** 34:24
**residential** 4:19
**resolve** 42:16
**resolved** 31:4 42:3
  43:3
**respect** 9:8 39:15
**respond** 15:13
**responded** 33:12
**response** 32:4
  41:17,19,22
**responses** 24:22
**result** 19:24
**retain** 18:19
**retainer** 32:10
**retention** 39:22
**return** 33:3
**review** 33:6,13
**reviewed** 38:8
**right** 6:5 7:3,4,20
  7:23 8:11 9:19
  14:10 17:5,19
  18:15,20 19:10
  22:10,15 23:4,11
  23:15,22 27:3,17
  27:18,20 28:3,10
  28:11,14 42:11,20
  42:20 43:1,1,6
**risk** 16:17,21 17:1
  17:2
**river** 4:12 6:20
  7:11,22 8:16 9:20
  13:10,22 17:11
  18:3,11 19:18
  20:10,16 22:15
  23:5 25:20
**riverhouse** 4:20
  6:18
**road** 5:3 16:25
  45:21
**rockefeller** 4:20
**room** 21:15 26:21
**roseburg** 4:18
  6:17

**rosen** 5:8,13
**rule** 9:25 20:4,14
  24:20 25:8,12
  26:9 34:24 35:20
**rules** 41:23
**ruling** 20:9,11
  28:15,17 30:2
**rulings** 44:3
**run** 21:21

## s

**s** 2:22 4:1 6:1,3
**s.d.n.y.** 36:9 37:20
**sale** 6:10 7:11,18
  8:25 10:8,13 13:8
  14:13,13 15:6,8,8
  15:11,23 16:1,5
  17:5,13 18:4,17
  18:23 19:1,15,23
  19:23 20:23,23
  21:9 25:15 27:1
  27:21
**sales** 19:25
**sandpiper** 34:11
**sanford** 5:13
**sartison** 6:12 27:2
  27:21
**satisfied** 34:16
**says** 29:19 35:6,10
**scenario** 10:24
  11:6
**scharf** 6:13,14 7:1
  7:12 8:4,8,21 9:5
  15:13,16 17:17,21
  22:7,9 23:15,18
**schart** 4:9
**schedule** 22:10
**schoor** 1:16 5:2
  28:2,9,22 29:7,18
  29:19,25 30:13,15
  30:17,25 31:2,8
  31:17,20,21 32:3
  32:6,11,13,16,18
  32:20,21 33:1,3,5

33:9,22 35:7,16
  35:19 36:13,17,24
  38:4,5,16,19 39:7
  39:9 40:19 41:16
**scratches** 16:19
**second** 7:17 9:11
**secrecy** 39:19
**secret** 39:20
**section** 34:5,6
  35:22 37:15 38:12
**sections** 40:8
**secure** 15:11
**see** 8:3 12:9 16:4
  20:25 21:3,5,12
  24:13 26:23 36:7
  37:19 40:11,17
**seek** 8:23 15:17
  29:13
**seeking** 8:12
  12:24 14:5 24:17
**seeks** 28:21
**selecting** 7:17
**self** 15:21
**sell** 9:4 10:6,19
  15:1 23:8
**selling** 15:22
**sense** 11:18
**sent** 30:25 31:8,22
  33:3
**separate** 23:9
**service** 32:10
**services** 32:23
**set** 11:8,10 21:24
  24:16 28:24 30:1
  35:2 38:22 43:2
**setting** 19:15 25:1
**settled** 28:12
**settlement** 7:10
**seven** 21:22 22:2
**sever** 23:16
**shaking** 12:9
**sham** 36:12

**shelving** 13:20
**sheriff** 14:17
**sheriff's** 15:8
**short** 39:6,8
**shortly** 33:4
**shot** 19:21
**show** 35:3
**showings** 24:3
**side** 20:1 34:15
**sides** 12:3
**side's** 27:17
**signed** 32:20
**significant** 21:5
**significantly**
  13:18
**simply** 32:24
  40:22 42:2
**sit** 17:3
**situation** 10:16
**six** 38:13
**sixth** 39:19
**skate** 24:6
**social** 30:13
**sold** 8:18 10:11,14
  15:7,20 32:22
**sole** 11:15
**solutions** 45:20
**solvency** 38:25
**somebody** 16:23
  20:15
**somewhat** 23:7
**sonya** 3:25 45:3,8
**sorry** 6:7,13 16:12
  22:19
**sought** 8:2
**southern** 37:8
**speak** 9:2 14:24
**speaking** 12:7
**specific** 25:9
**specifically** 29:14
  32:2 35:22 36:15
  39:7

**specifications** 11:4
**specificity** 35:14
**sponsoring** 25:11
**spot** 17:24
**stage** 19:22
**standard** 22:7 33:22,23
**standing** 21:13,14 25:8
**standpoint** 17:9 25:21 26:3
**stang** 4:3 6:15
**stanton** 17:15
**stanton's** 22:4 25:18
**starting** 30:12
**state** 12:18,24 13:11
**stated** 31:2 35:4 40:24
**statement** 29:4 35:13 36:16
**statements** 35:18
**states** 1:1 2:1 40:17
**stating** 31:9 32:5
**status** 6:11 14:14 27:1
**stay** 8:2 9:8,25 10:24 15:17,24,25 16:8 20:16,20 21:10 23:5,8,10 24:2,20 25:6 27:22
**stipulated** 29:4 30:8 34:21
**stipulation** 31:7
**stricken** 35:20
**strike** 29:24 30:1
**string** 36:14
**strong** 39:1

**strongly** 15:6
**subject** 7:25 8:17 13:3 27:12
**submission** 42:1 43:4
**submit** 29:13,15 41:10,25
**submits** 27:7
**submitted** 34:21 35:5 41:11 42:8
**subsequently** 29:17
**substantial** 13:17
**substantially** 15:8
**substantive** 23:19
**success** 9:7
**sufficient** 27:9
**suite** 4:13,21 5:3 45:22
**sulmeyer** 6:24
**summary** 3:4 28:16,23,25 29:7 29:8,11,14 30:3 30:10,24 32:7 33:17,19 34:8,14 35:1 39:10 40:24 41:12,21
**sunday** 32:9
**superior** 40:12
**support** 15:1 34:15,18,23 35:1 36:19 40:23 41:14 41:21
**supported** 28:24
**supporting** 21:23
**suppose** 7:21 12:13
**supreme** 15:4 24:25 40:13
**sure** 15:15 19:10 42:9
**suspect** 23:20

**suspended** 12:18
**synchronicity** 20:21

**t**

**t** 45:1,1
**take** 6:5,9 7:4 19:3,19 21:15,18 26:6 27:15
**taken** 20:20 41:25
**takes** 20:7
**talk** 16:11 18:21 29:16
**talking** 16:23
**telephonically** 5:16
**temperate** 11:21
**tenorello** 6:2,6
**term** 10:7
**terms** 7:18
**terrace** 4:12 6:20 7:11,23 8:16 13:22 17:11 18:3 18:12 19:18 20:10 20:16 22:16 25:20
**terrace's** 9:20 13:10
**testify** 18:16 25:11 35:4,10
**testifying** 25:19 26:22
**testimonial** 18:9
**testimony** 21:15 21:18 26:5,10,12 27:11,16 35:8
**texas** 37:8
**texting** 22:12
**thank** 9:19 15:12 17:5 23:3 27:18 27:19,24 42:25 43:7,8,9
**that's** 11:4 14:9 31:7 41:9 42:6,10 42:19

**thereon** 41:2
**there'll** 26:19
**there's** 24:25 36:2 36:4,19 39:3 40:21 42:3,5
**thing** 12:12
**things** 13:3,5,20 16:19 21:16
**think** 8:22 9:5 10:19 13:9,16 14:21 21:6,17 22:3 23:18 24:25
**third** 4:5 5:10 36:5 38:25
**thoughts** 33:7
**three** 35:24
**tie** 20:22
**tight** 26:16
**time** 16:3 21:4 22:2,7,23 23:1,24 29:13 30:18 31:15 33:25 36:1,21 37:5 39:2 42:24
**timeline** 26:15
**timing** 42:23
**today** 6:11 7:1 26:16,25 28:15 30:2 41:9 42:5
**told** 19:11 21:1 32:11
**tomorrow** 23:21
**tonight** 23:21
**trade** 4:13
**transcribed** 3:25
**transcript** 45:4
**transfer** 12:8 35:24 36:3,5 38:10 39:14,16,20 40:5,14
**transferee** 38:19
**transferor** 38:19
**transferred** 31:20 36:1

**transferring** 10:2
**transfers** 31:24
  34:4 39:2,20 40:2
  40:3
**trial** 13:21 20:18
  21:21 35:9,10
  42:13
**true** 45:4
**trust** 2:22 6:4
**trustee** 1:12 4:4
  6:15,25 9:3,4 10:3
  10:6,7,17 12:8
  15:10,21 16:13,15
  16:16 17:3,16
  18:25,25 19:14,14
  20:3,5,24 22:7,9
  23:16,19 25:20
  28:6,19,23 29:5
  29:24 33:2,15,17
  37:14 40:25 41:3
  41:7,9 42:10
**trustee's** 8:5 10:1
  11:7 17:14
**trustee's** 28:15
  33:5
**try** 22:5
**trying** 18:11
**turning** 35:22
**two** 6:6 19:11
  20:22 31:23 33:20
  36:3 37:9 42:7
**type** 19:1,17
**types** 24:24 25:2
**typical** 19:16
**typically** 21:21
  25:7 38:14

### u

**u.s.** 2:23
**ultimately** 39:12
**unable** 12:14
**uncontroverted**
  30:10,24 33:13
  36:10,24 37:2

**underlying** 16:1
  34:14
**understanding**
  8:12
**understood** 42:19
  43:5
**undisputed** 32:21
**unfair** 40:6,10
**unfortunately**
  22:13 28:13
**unique** 11:1,2
**unit** 14:21 18:16
**united** 1:1 2:1
  40:17
**unknown** 2:25
**unoccupied** 16:18
**unpaid** 37:5,6,12
**untimely** 10:6
**unusual** 9:14
**upkeep** 11:19
  13:25
**use** 12:14 39:8
  41:6

### v

**v** 1:15 6:12 27:1
  28:1 34:11 40:7
  40:12,17
**value** 9:11 13:12
  18:16 27:15
**vantage** 19:22
**variety** 30:19
**vendor** 32:21
  39:12
**ventures** 30:19
**veritext** 45:20
**versions** 34:16
**view** 19:6
**violation** 38:12
**virtual** 21:14
**virtually** 21:20
**vocal** 11:21

### w

**wait** 42:2
**waive** 27:14,16
**walia** 5:9
**wallstreet** 40:7
**want** 6:6 14:12,20
  17:6 23:16 25:10
  25:14 26:25 42:22
**wanted** 26:16
**wants** 19:18 20:3
  20:16
**wasting** 9:13
  11:18
**way** 11:7 20:2,13
  34:13
**week** 22:21
**weeks** 15:21 31:3
**weigh** 14:12 25:21
**welcome** 20:12
  27:22
**went** 18:25 36:22
**we'll** 26:2 29:16
  43:2,12
**who's** 26:21
**wine** 20:25 21:1
**wish** 25:24
**witness** 18:2
  21:15 25:11,19,22
  26:5,12,22,22
  27:9
**witnesses** 17:6,14
  18:3 21:19 26:6
**witness's** 26:10
**won** 37:11
**wong** 29:1 32:8
  34:20
**work** 12:12 27:13
  41:11
**worked** 12:19
  29:22
**working** 7:15
**world** 4:13

**would've** 19:9
**wrote** 38:2

### x

**x** 1:5,11,18 27:14
  44:1

### y

**year** 29:11
**years** 12:2,15
  19:11 30:12 31:13
  34:10 36:3
**york** 1:2 2:3 4:6
  4:14,22 5:11 34:5
  37:14 40:5,13,13
**young** 40:12
**you'll** 26:23
**you're** 26:11
  27:22,22

### z

**zaharis** 29:16,21
  31:14 32:4,9,15
  36:11,16,22
**ziehl** 4:3 6:15

### '

**'** 31:6
**'our** 31:6

# EXHIBIT B



**PACHULSKI
STANG
ZIEHL
JONES**

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910

FACSIMILE: 310/201 0760

Jeffrey P. Nolan                    December 9, 2019                    jnolantz@pszjlaw.com

**REPLY REQUESTED BY
December 23, 2019**

Howard Schoor
Schoor Companies, LLC
655 Park Avenue, Ste. 2
Freehold, NJ  07728

Howard Schoor
174 Carmela Court
Jupiter, FL  33478

Howard Schoor
603 Mattison Avenue, Ste. 321
Ashbury Park, NJ  07712

SAN FRANCISCO

150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000

FACSIMILE: 415/263 7010

DELAWARE

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100

FACSIMILE: 302/652 4400

NEW YORK

780 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700

FACSIMILE: 212/561 7777

Re:   **In re: Orion HealthCorp, Inc., et al.
USBC Eastern Dist. of New York
Case No. 18-71748 (AST)**

Dear Mr. Schoor:

This firm is counsel to Howard M. Ehrenberg (the "Liquidating Trustee"), in his capacity as the Liquidating Trustee under that Liquidating Trust Agreement by and among Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc. and certain of their affiliates (collectively, the "Debtors" or "Debtor Entities"). On March 16, 2018, each of the Debtors except NYNM (the "Initial Debtors") filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.

On April 4, 2018, the Office of the United States Trustee appointed the Committee in the Initial Debtors' chapter 11 cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 82].  On July 5, 2018, NYNM filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  On July 26, 2018, the United States Trustee appointed the Committee in NYNM's case [Docket No. 433]. The Debtors' cases including NYNM's case are jointly administered for administrative purposes only [Docket Nos. 34 and 381].



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

December 9, 2019
Page 2

On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York entered an order (the "Confirmation Order") [Docket No. 701] confirming the Debtors' Third Amended Joint Plan of Liquidation (the "Plan").

As of March 1, 2019, the Plan became effective (the "Effective Date"). As of the Effective Date, the Liquidating Trustee was tasked with, among other things, the prosecution of any cause of action of the Debtors' Estates not otherwise released under the Plan for the benefit of holders of Allowed Claims and Allowed Interests. The Liquidating Trustee has analyzed potential avoidance claims for recovery of transfers made by the Debtors. According to the Debtors' records, you received $100,000.00 from the Debtor on January 5, and $60,000 on January 6, 2017 (the "Transfer") (See bank documents attached hereto as Exhibit A). The Transfer was made on account of a personal loan to benefit Paul Parmar individually. (See email dated August 16, 2010, attached hereto as Exhibit B)

Transfers made to benefit third parties are not made for "fair" consideration under the bankruptcy code. Christian & Porter Aluminum Co., 584 F.2d 326, 337 (9th Cir. 1978) (a general assignment of a debtor's property must be considered fraudulent if not made solely for the benefit of creditors). Id. Citing to 4 Collier on Bankruptcy, P. 67.33. The transfer of $160,000 from funds of the Debtor went to satisfy a personal obligation of Parmar. In fact, the Debtor bounced payroll obligations such that the funds could be sent on this debt.

Secondly, even assuming arguendo the Transfer was not intentionally fraudulent under 11 USC 548(a)(1)(A), the Transfer was constructively fraudulent and avoidable under 11 USC 548(a)(1)(B) as the Transfer benefitted Parmar, not the creditors of the Debtor. The term "fraudulent transfer" as used in insolvency law does not necessarily signify an element of fraud. A fraudulent transfer is one in which the debtor, voluntarily or involuntarily, conveyed to a creditor or other person property for which the debtor received less than "reasonably equivalent value..." No intent of wrongdoing is required. William L. Norton, III and Roger G. Jones, Norton Creditors Possessive Rights Handbook, § 11:6, (November 2003)

To the extent that a transfer is avoided under section 548, the trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property from (1) the initial transferee of such transfer or the entity for whose benefit such transfer



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

December 9, 2019
Page 3

was made. *In re John Ray Hurtado*, 342 F.3d 528, 532 (6th Cir., 2003). Under section 550(a)(1) an "initial transferee" is strictly liable for any fraudulent transfers they receive. Id. The "initial transferee" from the debtor is strictly liable, without regard to whether he colluded with the debtor or was innocent in an unwitting recipient of fraudulently transferred property. *In re Bauer*, 318 B.R. 697, 700 (D. Minn. 2005) (citing to *Circuit Alliance*, 228 B.R. 225, 232).

The Liquidating Trustee is interested in engaging in discussions aimed toward resolving the claim without the attendant time and expense of litigation. If you share this interest in informal discussions, please contact me within the next fourteen (14) days.

This confidential letter is provided for settlement purposes only; any statements herein are inadmissible pursuant to Federal Rules of Evidence 408 and Federal Rules of Bankruptcy Procedure 9017. Nothing herein should be construed as an admission of fact or law by the Liquidating Trustee, the Debtors or their representatives.

If you have any questions regarding this demand, please contact me by phone at (310) 277-6910 or by email at jnolan@pszjlaw.com. I look forward to hearing from you.

Very truly yours,

Jeffrey P. Nolan

JPN:mam
Enclosure

# EXHIBIT A

# ORION HEALTHCORP INC

Payment Detail Report

**For Informational Purposes Only**

J.P.Morgan

---

## PAYMENT INFORMATION

| | | |
|---|---|---|
| **Account Number** | **Payment Method** | **Bank to Bank Transfer** |
| | Wire | No |
| **Account Name** | **Branch Location** | **Beneficiary Bank Country** |
| ORION HEALTHCORP INC | JPMorgan Chase Bank, N.A. (TX) | UNITED STATES - US |
| **Bank Name** | **Bank Id** | **Payment Amount** |
| JPMORGAN CHASE BANK, N.A. | | USD   60,000.00 |

---

Value Date:     01/06/2017

Status:    Completed

## ROUTING INFORMATION

## BENEFICIARY

Beneficiary ID Type
Account Number

Account Number
8049301783

Beneficiary Name
Howard Schoor

Country
UNITED STATES - US

Supplementary Bank ID Type
No ID

## BENEFICIARY BANK

Bank ID Type
United States FED ABA

United States FED ABA
031207607

Bank Name
PNC BANK, NATIONAL ASSOCIATION

City, State/Province, Zip/Postal Code
CHERRY HILL,NJ

Country
UNITED STATES - US

Supplementary Bank ID Type
No ID

---

# ORION HEALTHCORP INC

J.P.Morgan

Payment Detail Report

**For Informational Purposes Only**

---

**INTERMEDIARY BANK**

Bank ID Type

No ID

---

**REFERENCE INFORMATION**

**BANK TO BANK**

Charges                                              Priority

Remitter                                             No

---

| Date Created | Payment ID | Bank Reference | Settlement Reference |
|---|---|---|---|
| 01/06/2017 03:30 PM EST | 31373005 | 4828500006JO0000 | FED Ref: 0106B1QGC06C007912 |

## RE: Support documents required for disbursements in 2017

**From:**
Sam Zaharis <"/o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=ee3b50afeb8b4c0f9b7150385aa45585-sam.zaharis">
**To:**
Ravi Chivukula <ravi.chivukula@orionhealthcorp.com>
**Date:**
Sun, 14 May 2017 23:20:27 -0400

| Document No | Check Date | Vendor Name | Amount | Base Curr |
|---|---|---|---|---|
| Wire 1/5/17 | 1/5/2017 | VN014751--Howard Schoor | 100,000.00 | USD |

From: Ravi Chivukula
Sent: Sunday, May 14, 2017 7:57 PM
To: Sam Zaharis <Sam.Zaharis@constellationhealthgroup.com>
Subject: Support documents required for disbursements in 2017

| Document No | Check Date | Vendor Name | Amount | Base Curr |
|---|---|---|---|---|
| Wire 1/5/17 | 1/5/2017 | VN014751--Howard Schoor | 100,000.00 | USD |

# EXHIBIT B

## Message from Howard Schoor

**From:**
Barbara Noviello <barbara@schoorcompanies.com>
**To:**
Paul Parmar <"/o=first organization/ou=first administrative group/cn=recipients/cn=pparmar">
**Date:**
Mon, 16 Aug 2010 12:46:26 -0400

Paul:

I would greatly appreciate payment on the balance of your personal loan. Again, I repeat that this loan was done on the basis of our "friendship" not as a business investment. I can certainly understand losses related to business endeavors where one invests dollars with anticipation of profits. We both know that this is not the instant case and you have an obligation to make good on your commitment which is long overdue.

I will be around for a while; when can I pick up a check?

Please advise.

Howard

*Thank you,*

*Barbara L. Noviello*

*On Behalf of Howard M. Schoor*

Schoor Companies LLC
655 Park Avenue, Suite 2
Freehold, NJ 07728
(732) 303-0040 (telephone)
(732) 409-7410 (fax)
barbara@schoorcompanies.com

# EXHIBIT C

Ilan D. Scharf
Jeffrey P. Nolan (Admitted Pro Hac Vice)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone:  (212) 561-7700
Facsimile:   (212) 561-7777
ischarf@pszjlaw.com
jnolan@pszjlaw.com

*Counsel for the Plaintiff,*
*Howard M. Ehrenberg in his capacity*
*as Liquidating Trustee of Orion Healthcorp, Inc., et al.,*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC. | Case No. 18-71748 (AST) |
| Debtors. | (Jointly Administered) |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Pro. No. 20-08042 (AST) |
| Plaintiff, | |
| v. | |
| HOWARD M. SCHOOR, Defendant(s). | |

------------------------------------------

## PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE

TO:       Defendant, Howard M. Schoor

FROM:   Plaintiff, Howard M. Ehrenberg, Liquidating Trustee Of Orion Healthcorp, Inc.,
            et al.,

1

Pursuant to Federal Rules of Civil Procedure 36, made applicable by Federal Rule of

Bankruptcy Procedure 7036, Plaintiff, by its undersigned attorneys, hereby propounds the

following Requests For Admissions to Defendants. Plaintiff hereby requests that Defendant

answer the following requests to admit facts, within thirty (30) days of the date of service hereof.

## DEFINITIONS

1.    As used in these requests for admissions, the following words and terms

shall mean and include the following:

2.    The term "DOCUMENT(S)" means and includes, without limitation, the

following: any and all writings of whatever kind, including the originals and all non-identical

copies, whether different from the originals by reason of any notation made on such copies or

otherwise (including without limitation correspondence, memoranda, notes, diaries, statistics,

letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns,

summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers,

notations of any sort of conversations, telephone calls, meetings or other communications,

bulletins, printed matter, computer printouts, teletypes, telefax, invoices, work sheets, and all

drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or

aural records or representations of any kind (including without limitation, photographs, charts,

graphs, microfiche, microfilm, videotape, recordings, motion pictures), and electronic,

mechanical or electric records or representations of any kind (including without limitation tapes,

cassettes, discs, recordings).

2

3.     "CONCERN" or "CONCERNING" means relate to, refer to, describe, evidence or constitute.

4.     "DEBTOR" means ORION HEALTHCORP, INC., Constellation Healthcare Technologies, Inc; NEMS Acquisition, LLC : Northeast Medical Solutions, LLC; NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC ; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC (unknown) Northstar FHA, LLC.; Northstar First Health, LLC; Vachette Business Services, Ltd.; Phoenix Health, LLC.; MDRX Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; New York Network Management, LLC.

5.     "YOU" or "YOUR" or "DEFENDANT" means Defendant, Howard M. Schoor, and shall include his agents, representatives, attorneys, accountants, and all other persons acting on his behalf or under his control.

6.     "PERSON" means and includes natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

7.     "COMMUNICATION" means every manner or means of disclosure, transfer, or exchange of information, words, thoughts or ideas, whether orally or by document, whether face-to-face, by telephone, mail, personal delivery, electronic communication or otherwise.

3

8.      "COMPLAINT" means the pleading Complaint For Avoidance And

Recovery Of: (1) Fraudulent Transfers; And (2) Recovery Of (2) Avoided Transfers Pursuant TO

11 U.S.C. §§ 544, 548 AND 550 filed in Adv. No. 20-08042.

9.      "ACTION" means the legal proceeding commenced herein with the

Complaint filed against DEFENDANT in the United States Bankruptcy Court for the Eastern

District of New York, Adv. No. 20-08042.

10.     "TRANSFERS" means any and all payments or credits made to YOU

including to or on YOUR behalf.

11.     "ANSWER" means DEFENDANT'S answer to complaint and affirmative

defenses filed in this adversary.

12.     PETITION DATE means March 16, 2018.

13.     PARMAR means Parmjit Parmar, a/k/a Paul Parmar.

## **GENERAL PROVISIONS AND INSTRUCTIONS**

IF YOU FAIL TO COMPLY WITH THE PROVISIONS OF FEDERAL RULES OF

BANKRUPTCY PROCEDURE 7026 AND 7036, INCORPORATING THE PROVISIONS OF

FEDERAL RULES OF CIVIL PROCEDURE 26 AND 36, WITH RESPECT TO THIS SET OF

REQUESTS FOR ADMISSIONS, THE MATTERS ABOUT WHICH AN ADMISSION ARE

REQUESTED SHALL BE DEEMED ADMITTED.

4

## REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Admit that YOU received those TRANSFERS identified on EXHIBIT "A" to the

COMPLAINT.

### REQUEST FOR ADMISSION NO. 2:

Admit that YOUR loan to PAMAR of $600,000 had no restrictions as to how the

funds could be used by PARMAR.

### REQUEST FOR ADMISSION NO. 3:

Admit that up to the time YOU loaned the money to PARMAR, YOU had

conducted no business or performed no services for the DEBTOR.

### REQUEST FOR ADMISSION NO. 4:

Admit that up to the time YOU received each TRANSFER identified on

EXHIBIT "A" to the COMPLAINT, YOU had conducted no business or performed no service

for the DEBTOR.

### REQUEST FOR ADMISSION NO. 5:

Admit that each TRANSFER identified on EXHIBIT "A" to the COMPLAINT,

was received by YOU in satisfaction of a debt PARMAR owed to YOU personally.

### REQUEST FOR ADMISSION NO. 6:

Admit that PARMAR advised YOU in 2009, he did not have the money to pay

back the loan.

### REQUEST FOR ADMISSION NO. 7:

Admit that PARMAR advised YOU in 2010, he did not have the money to pay

back the loan.

5

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU sought collateral from PARMAR to secure the loan.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the Debtor received no value as a result of the loan in 2009 to

PARMAR.

Dated:  May 1, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

Andrew W. Caine (Admitted *pro hac vice*)
Jeffrey P. Nolan (Admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

*Counsel for Plaintiff, the Rescap Liquidating Trust
and the duly authorized Liquidating Trust Manager,
Quest Turnaround Advisors, LLC*

6

# PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I, Sophia L. Lee, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4100.

On May 1, 2020, I caused to be served the **PLAINTIFF'S REQUEST FOR ADMISSIONS PROPOUNDED TO DEFENDANT, SET ONE** in this action by placing a true and correct copy of said document(s) in sealed envelopes in the U.S. mail addressed as follows:

Donald F. Campbell, Jr., Esq.
GIORDANO, HALLERAN & CIESLA, P.C.
125 Half Mile Road, Suite 300
Red Bank, NJ 07701

☑ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown. The transmission was reported as complete and without error. (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☐ (BY PERSONAL SERVICE) By causing to be delivered by hand to the offices of the addressee(s).

☐ (BY OVERNIGHT DELIVERY) By sending by **FEDERAL EXPRESS** to the addressee(s) as indicated on the attached list.

I declare that I am employed in the office of a member of the bar of this Court at whose direction was made. Executed on May 1, 2020, at Los Angeles, California.

Sophia L. Lee

7

DOCS_LA:329283.2 65004/003

# EXHIBIT D

Donald F. Campbell, Jr., Esq. (DC8924-NJ)
*(Admitted Pro Hac Vice)*
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701
Tel: (732) 741-3900
Fax: (732) 224-6599
dcampbell@ghclaw.com
*Counsel for Defendant, Howard M. Schoor*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK | |
| In Re: ORION HEALTHCORP, INC. | Case No: 18-71748 (AST) (Jointly Administered) <br><br> Chapter: 11 <br> Hearing Date: <br> Judge: AST |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP. INC., et al. Plaintiff v. HOWARD M. SCHOOR Defendant | Adv. Pro. No. 20-08042 (AST) |

**DEFENDANT'S *RESPONSES* TO PLAINTIFF'S
REQUEST FOR ADMISSIONS. SET ONE**

TO:    Plaintiff, Howard M. Ehrenberg, Liquidating Trustee Of Orion Healthcorp, Inc., et al

FROM:  Defendant, Howard M. Schoor

Defendant, Howard M. Schoor ("Defendant") responds to Plaintiff's, Howard M. Ehrenberg,

Liquidating Trustee Of Orion Healthcorp, Inc., et al, ("Plaintiff") Request for Admissions, Set

One.

## GENERAL OBJECTIONS

1. All responses are provided without admitting that they are relevant, material or admissible

   for purposes of the instant litigation.  Defendant hereby reserve the right to object to the

   admissibility into evidence of any information provided pursuant to Plaintiff's Request for

   Admissions on said grounds of relevancy, materiality or admissibility or any other applicable

   grounds.

2. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek

   information that is irrelevant and not reasonably calculated to lead to the discovery of

   admissible evidence.

3. Defendant objects to Plaintiff's Request for Admissions to the extent that they are vague and

   ambiguous.

4. Defendant objects to Plaintiff's Request for Admissions to the extent that they are overly

   broad or unduly burdensome.

5. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek

   information already in the possession, custody and/or control of Plaintiff's or information

   that is as readily accessible to Plaintiff's as it is to Defendant.

6. Defendant objects on the grounds that a request for this category of information is unduly

   burdensome and that such duplicate production is expensive, time-consuming and not

   reasonably calculated to lead to the discovery of admissible evidence.

2

7. Defendant objects to Plaintiff's Request for Admissions to the extent that they request information in the possession or control of third parties. The scope of Defendant's response will be limited to only that information within the possession, custody or control of Defendant.

8. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek to impose on Defendant obligations that are greater than those required by the Federal Rules of Civil Procedure.

9. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek information that is protected under the attorney-client privilege and/or work-product privilege. Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of Defendant to object to the use of any such information in any proceeding.

10. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek information and/or documents prepared in anticipation of litigation and/or trial. Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of Defendant to object to the use of any such information in any proceeding.

11. Defendant objects to Plaintiff's Request for Admissions to the extent that they seek documents, which disclose opinions, mental impressions, conclusions, strategies or legal theories of Defendant, its counsel or other representatives. Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for

objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of Defendant to object to the use of any such information in any proceeding.

## *RESPONSES*

**REQUEST FOR ADMISSION NO. 1**:

Admit that YOU received those TRANSFERS identified on EXHIBIT "A" to the COMPLAINT.

*RESPONSE: Admitted*

**REQUEST FOR ADMISSION NO. 2**:

Admit that YOUR loan to PAMAR of $600,000 had no restrictions as to how the funds could be used by PARMAR.

*RESPONSE: Denied.  They were intended to be used as a bridge loan for his business.*

**REQUEST FOR ADMISSION NO. 3**:

Admit that up to the time YOU loaned the money to PARMAR, YOU had conducted no business or performed no services for the DEBTOR.

*RESPONSE: Admitted.*

**REQUEST FOR ADMISSION NO. 4**:

Admit that up to the time YOU received each TRANSFER identified on EXHIBIT "A" to the COMPLAINT, YOU had conducted no business or performed no service for the DEBTOR.

*RESPONSE: Denied.  Upon information and belief, the funds were used by the Debtor or one of the debtor's affiliated entities.*

**REQUEST FOR ADMISSION NO. 5:**

Admit that each TRANSFER identified on EXHIBIT "A" to the COMPLAINT, was received by YOU in satisfaction of a debt PARMAR owed to YOU personally.

*RESPONSE: Admitted that I loaned the money, but denied that it was for Parmar personally. It was a loan to his business, which I believe is the Debtor or one of its affiliates.*

5

**REQUEST FOR ADMISSION NO. 6**:

Admit that PARMAR advised YOU in 2009, he did not have the money to pay back the loan.

*RESPONSE:  Admitted; however, he stated neither he nor his businesses had the funds to repay the loan.*

**REQUEST FOR ADMISSION NO. 7**:

Admit that PARMAR advised YOU in 2010, he did not have the money to pay back the loan.

*RESPONSE: Admitted; however, he stated neither he nor his businesses had the funds to repay the loan.*

**REQUEST FOR ADMISSION NO. 8**:

Admit that YOU sought collateral from PARMAR to secure the loan.

RESPONSE:   Admitted.

**REQUEST FOR ADMISSION NO. 9**:

Admit that the Debtor received no value as a result of the loan in 2009 to PARMAR.

*RESPONSE: Denied.  Upon information and believe, the funds were used as a bridge loan by the Debtor and/or its affiliated entity.*

## CERTIFICATION

I hereby certify the foregoing statements made by me in these Request for Admissions are true.
To the extent any of the foregoing statements made by me are willfully false, I am subject to
punishment.

Dated: 10/13/2020

_____

HOWARD M. SCHOOR

7

# EXHIBIT E

## POST DISCOVERY

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|----------------------|------|--------|
| 10/14/2020 | J. Nolan | | 1 | $  825.00 |
| 10/14/2020 | J. Nolan | | 0.8 | $  660.00 |
| 10/14/2020 | J. Nolan | | 0.5 | $  412.50 |
| 10/14/2020 | J. Nolan | | 0.5 | $  412.50 |
| 10/20/2020 | J. Nolan | | 0.6 | $  495.00 |
| 10/20/2020 | J. Nolan | | 0.7 | $  577.50 |
| 11/4/2020 | J. Nolan | | 0.4 | $  330.00 |
| 11/11/2020 | J. Nolan | | 0.6 | $  495.00 |
| 11/11/2020 | J. Nolan | | 1 | $  825.00 |
| 11/11/2020 | J. Nolan | | 0.5 | $  412.50 |
| 11/11/2020 | J. Nolan | | 0.2 | $  165.00 |
| 11/12/2020 | J. Nolan | | 1 | $  825.00 |
| 11/12/2020 | J. Nolan | | 0.6 | $  495.00 |
| 11/16/2020 | J. Nolan | | 0.3 | $  247.50 |
| 11/20/2020 | J. Nolan | | 0.4 | $  330.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 11/20/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 11/20/2020 | J. Nolan | | 1 | $ 825.00 |
| 11/24/2020 | J. Nolan | | 0.8 | $ 660.00 |
| 11/25/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 12/2/2020 | J. Nolan | | 1.50 | $ 1,237.50 |
| 12/2/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/3/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/3/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/4/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 12/9/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 12/10/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 12/10/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/11/2020 | J. Nolan | | 2 | $ 1,650.00 |
| 12/11/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/11/2020 | L. Canty | | 2.2 | $ 1,012.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 12/13/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/13/2020 | J. Nolan | | 0.8 | $ 660.00 |
| 12/14/2020 | J. Nolan | or | 1.2 | $ 990.00 |
| 12/15/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/16/2020 | J. Nolan | | 2.3 | $ 1,897.50 |
| 12/17/2020 | J. Nolan | | 1.4 | |
| 12/17/2020 | J. Nolan | | 3.6 | $ 2,970.00 |
| 12/17/2020 | L. Canty | | 4 | $ 1,840.00 |
| 12/21/2020 | J. Nolan | | 0.4 | $ 330.00 |
| 12/21/2020 | J. Nolan | | 0.2 | $ 165.00 |
| 12/22/2020 | J. Nolan | | 0.5 | $ 412.50 |
| 12/23/2020 | J. Nolan | | 0.3 | $ 247.50 |
| 12/23/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/29/2020 | J. Nolan | | 1 | $ 825.00 |
| 12/30/2020 | J. Nolan | | 0.9 | $ 742.50 |
| 12/31/2020 | J. Nolan | | 1.3 | $ 1,072.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 1/14/2021 | J. Nolan | ██████████████████████ | 0.8 | $   740.00 |
| 1/14/2021 | J. Nolan | ██████████████████████ | 0.4 | $   370.00 |
| 1/14/2021 | J. Nolan | ██████████████████████ | 0.2 | $   185.00 |
| 1/14/2021 | I. Scharft | ██████████████████████ | 0.5 | $447.50 |
| 1/15/2021 | J. Nolan | ██████████████████████ | 0.5 | $   462.50 |
| 1/18/2021 | J. Nolan | ██████████████████████ | 0.6 | $   555.00 |
| 1/18/2021 | J. Nolan | ██████████████████████ | 0.4 | $   370.00 |
| 1/18/2021 | L. Canty | ██████████████████████ | 1.1 | $   506.00 |
| 1/20/2021 | J. Nolan | ██████████████████████ | 0.4 | $   370.00 |
| 1/21/2021 | J. Nolan | ██████████████████████ | 0.3 | $   277.50 |
| 1/21/2021 | J. Nolan | ██████████████████████ | 0.3 | $   277.50 |
| 1/22/2021 | J. Nolan | ██████████████████████ | 0.3 | $   277.50 |
| 1/25/2021 | J. Nolan | ██████████████████████ | 0.3 | $   277.50 |
| 1/28/2021 | J. Nolan | ██████████████████████ | 0.4 | $   370.00 |
| 1/29/2021 | J. Nolan | ██████████████████████ | 0.8 | $   740.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|----------------------|------|--------|
| 1/29/2021 | J. Nolan | | 0.6 | $ 555.00 |
| 1/29/2021 | L. Canty | | 2.5 | $ 1,150.00 |
| 2/1/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/1/2021 | J. Nolan | | 0.5 | $ 462.50 |
| 2/2/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/2/2021 | J. Nolan | | 2 | $ 1,850.00 |
| 2/10/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/10/2020 | J. Nolan | | 0.2 | $ 185.00 |
| 2/11/2021 | J. Nolan | | 1.6 | $ 1,480.00 |
| 2/11/2021 | J. Nolan | | 0.2 | $ 185.00 |
| 2/12/2021 | J. Nolan | | 0.6 | $ 555.00 |
| 2/15/2021 | J. Nolan | | 3.5 | $ 3,237.50 |

LA Doc 338273

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 2/16/2021 | J. Nolan | | 2.5 | $ 2,312.50 |
| 2/16/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 2/16/2021 | J. Nolan | | 0.3 | $ 277.50 |
| 2/16/2021 | J. Nolan | | 0.7 | $ 647.50 |
| 2/16/2021 | J. Nolan | | 1.5 | $1,342.50 |
| 2/16/2021 | J. Nolan | | 0.8 | $740.00 |
| 2/16/2021 | J. Nolan | | 0.4 | $370.00 |
| 2/17/2021 | J. Nolan | | 3 | $ 2,775.00 |
| 2/18/2021 | J. Nolan | | 1 | $ 925.00 |
| 2/19/2021 | J. Nolan | | 0.5 | $ 462.50 |
| 2/19/2021 | J. Nolan | | 0.5 | $ 462.50 |
| 2/26/2021 | J. Nolan | | 0.3 | $ 277.50 |
| 3/3/2021 | J. Nolan | | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | | 3.5 | $ 3,237.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|------|------|------|------|
| 3/5/2021 | J. Nolan | | 1.2 | $ 1,110.00 |
| 3/9/2021 | J. Nolan | | 1.3 | $ 1,202.50 |
| 3/16/2021 | J. Nolan | | 2.5 | $ 2,312.50 |
| 3/18/2021 | J. Nolan | | 0.5 | $ 462.50 |
| 3/19/2021 | J. Nolan | | 0.3 | $ 277.50 |
| 3/19/2021 | L. Canty | | 1.3 | $ 598.00 |
| 4/6/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 4/6/2021 | J. Nolan | | 0.4 | $ 370.00 |
| 4/7/2021 | J. Nolan | | 0.2 | $ 185.00 |
| 5/7/2021 | J. Nolan | | 0.4 | $370.00 |
| 5/7/2021 | J. Nolan | | 0.3 | $277.50 |
| 5/10/2021 | J. Nolan | | 0.3 | $277.50 |
| 5/12/2021 | J. Nolan | | 2.5 | $2,312.50 |
| 5/12/2021 | J. Nolan | | 0.5 | $462.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|---|---|---|---|---|
| 5/12/2021 | J. Nolan | ████████████████ ████ | 0.5 | $462.50 |
| 5/12/2021 | J. Nolan | ██████████████████ | 0.3 | $277.50 |
| 5/13/2021 | J. Nolan | ███████████████ | 0.4 | $370.00 |
| 5/13/2021 | J. Nolan | ██████████████████ ████████ | 0.4 | $370.00 |
| 5/13/2021 | L. Canty | ████████████████████████ ████████████████████████ ████ | 1.9 | $1,334.00 |

**95.1 $ 77,517.50**

| Year | Hourly Rate | Billing Party |
|---|---|---|
| 2020 | $825.00 | Jeffrey P. Nolan |
| 2021 | $925.00 | Jeffrey P. Nolan |
| 2021 | $895.00 | Ilan D. Scharf |
| 2021 | $460.00 | La Asia Canty |

# EXHIBIT F

## DEPOSITION

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 11/20/2020 | J. Nolan | Meet and confer regarding deposition of Howard Schoor | 0.4 | $ 330.00 |
| 12/2/2020 | J. Nolan | Review pertinent documents; Telephone conference with Veritext regarding set-up of Schoor deposition; Review platform. | 1.50 | $ 1,237.50 |
| 12/2/2020 | J. Nolan | Draft correspondence to Defendant, Howard Schoor regarding deposition availability | 0.3 | $ 247.50 |
| 12/4/2020 | J. Nolan | Draft Notice of Deposition of Defendant, Schoor; Serve | 0.4 | $ 330.00 |
| 12/10/2020 | J. Nolan | Meet with Veritext regarding set-up for exhibits for Schoor deposition; Discuss with La Asia Canty | 0.5 | $ 412.50 |
| 12/10/2020 | J. Nolan | Draft Notice of Link of deposition of Schoor. | 0.3 | $ 247.50 |
| 12/11/2020 | J. Nolan | Review documents; Compile exhibits for deposition of H. Schoor; Upload to software | 2 | $ 1,650.00 |
| 12/11/2020 | J. Nolan | Preparation for Schoor deposition | 2.2 | $ 1,012.00 |
| 12/13/2020 | J. Nolan | Compile discovery documents for deposition of Defendant, Howard Schoor | 0.8 | $ 660.00 |
| 12/14/2020 | J. Nolan | Legal research ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ preparation for 12/.17/20 deposition of Defendant, Schoor | 1.2 | $ 990.00 |
| 12/16/2020 | J. Nolan | Preparation for 12/17/20 deposition of H. Schoor | 2.3 | $ 1,897.50 |
| 12/17/2020 | J. Nolan | Preparation for deposition of H. Schoor; Connect IT and Veritext for deposition and coordinate with witness | 1.4 | |
| 12/17/2020 | J. Nolan | Deposition of H. Schoor. | 3.6 | $ 2,970.00 |
| 12/17/2020 | L. Canty | Prepare for and assist at Schoor deposition. | 4 | $ 1,840.00 |
| 12/21/2020 | J. Nolan | Research ▓▓▓▓▓▓▓▓▓▓ regarding Schoor | 0.4 | $ 330.00 |
| 12/21/2020 | J. Nolan | Coordinate deposition transcript for Defendant, Schoor | 0.2 | $ 165.00 |
| | | | 21.5 | $ 14,319.50 |

| Year | Hourly Rate | Billing Party |
|------|-------------|---------------|
| 2020 | $825.00 | Jeffrey P. Nolan |
| 2020 | $425.00 | La Asia Canty |

# EXHIBIT G

## MOTION FOR SUMMARY JUDGMENT FEES

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 10/14/2020 | J. Nolan | Review Schoor written discovery responses; Prepare for 10/15/20 argument to set Summary Judgment hearing | 1 | $ 825.00 |
| 11/12/2020 | J. Nolan | Review case law regarding summary judgment motion against Defendant, Schoor | 0.6 | $ 495.00 |
| 12/3/2020 | J. Nolan | Compile documents for the Separate Statement of Facts in support of request for summary judgment hearing regarding Schoor | 1 | $ 825.00 |
| 12/3/2020 | J. Nolan | Draft Separate Statement of Facts with Defendant, Schoor | 1 | $ 825.00 |
| 12/15/2020 | J. Nolan | Revise Separate Statement of Facts for use in Schoor request for summary judgment | 1 | $ 825.00 |
| 12/23/2020 | J. Nolan | Draft correspondence to counsel for Defendant, Schoor regarding briefing schedule. | 0.3 | $ 247.50 |
| 12/23/2020 | J. Nolan | Revise Separate Statement of Fact for submission to court in Schoor adversary | 1 | $ 825.00 |
| 12/29/2020 | J. Nolan | Legal research case law to support Schoor summary judgment motion. | 1 | $ 825.00 |
| 12/30/2020 | J. Nolan | Legal research case law to support Schoor theory of liability. | 0.9 | $ 742.50 |
| 12/31/2020 | J. Nolan | Receipt deposition transcript of Defendant, Schoor; Review and revise Separate Statement of Fact in support of submission to Court; Forward to opposing counsel with comment. | 1.3 | $ 1,072.50 |
| 1/14/2021 | J. Nolan | Review intentional fraudulent conveyance claim versus Defendant, Schoor | 0.8 | $ 740.00 |
| 1/14/2021 | J. Nolan | Exchange correspondence with Defendant, Schoor regarding extension | 0.2 | $ 185.00 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 1/15/2021 | J. Nolan | Revise Separate Statement of Facts in the Schoor adversary; Forward correspondence to opposing counsel | 0.5 | $ 462.50 |
| 1/18/2021 | J. Nolan | Revise and finalize Separate Statement of Fact for filing with Court in Schoor adversary on 1/21/21; Meet with Don Campbell; Finalize | 0.6 | $ 555.00 |
| 1/21/2021 | J. Nolan | Defendant correspondence to Defendant, Schoor with dates for briefing schedule | 0.3 | $ 277.50 |
| 1/29/2021 | J. Nolan | Revise Schoor briefing letter to the Court; Exchange copies with opposing counsel. | 0.8 | $ 740.00 |
| 1/29/2021 | J. Nolan | Review documents from Debtor regarding Redline litigation and good faith §548(c) so contradict Schoor good faith defense. | 0.6 | $ 555.00 |
| 2/11/2021 | J. Nolan | Draft Declaration of FTI in support of Schoor summary judgment motion; Compile and attach exhibits; Forward to FTI with comment | 1.6 | $ 1,480.00 |
| 2/11/2021 | J. Nolan | Review letter from Defendant, Schoor regarding extension | 0.2 | $ 185.00 |
| 2/12/2021 | J. Nolan | Meet with E. Wong regarding Affidavits in support of Schoor summary judgment motion; Revise Affidavit | 0.6 | $ 555.00 |
| 2/15/2021 | J. Nolan | Draft Motion for Summary Judgment versus Defendant, Schoor; Draft Request for Judicial Notice in support of Motion for Summary Judgment | 3.5 | $ 3,237.50 |
| 2/16/2021 | J. Nolan | Revise and supplement the Request for Judicial Notice; Revise Points and Authorities of Summary Judgment Motion versus Defendant, Schoor | 2.5 | $ 2,312.50 |
| 2/16/2021 | J. Nolan | Revise Declaration of Jeffrey P. Nolan in support of Summary Judgment Motion versus Defendant, Schoor | 0.4 | $ 370.00 |
| 2/16/2021 | I. Scharf | Review Schoor MSJ pleadings. | 1.5 | $1,342.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|--------------|------------------------|------|--------|
| 2/16/2021 | J. Nolan | Meet with L. Forrester regarding additional law to support Motion for Summary Judgment. | 0.8 | $740.00 |
| 2/16/2021 | J. Nolan | Finalize Declaration of E. Wong; Forward to FTI with comment. | 0.4 | $370.00 |
| 2/17/2021 | J. Nolan | Revise and finalize Motion for Summary Judgment versus Defendant, Schoor | 3 | $ 2,775.00 |
| 3/3/2021 | J. Nolan | Review opposition of Defendant, Schoor to Motion for Summary Judgment | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | Legal research case law submitted by Defendant, Schoor in support of opposition | 0.6 | $ 555.00 |
| 3/4/2021 | J. Nolan | Draft Reply Brief in response to Defendant, Schoor Opposition; Draft Affidavit | 3.5 | $ 3,237.50 |
| 3/5/2021 | J. Nolan | Revise Reply in support of Summary Judgment Motion versus Defendant, Schoor | 1.2 | $ 1,110.00 |
| 3/9/2021 | J. Nolan | Review, finalize and file Reply brief in support of Schoor motion for summary judgment | 1.3 | $ 1,202.50 |
| 4/6/2021 | J. Nolan | Exchange correspondence ███████ regarding Schoor litigation ██████ ███████ | 0.4 | $ 370.00 |
| 4/6/2021 | J. Nolan | Meet and confer with Defendant, Schoor regarding extension and summary judgment motion | 0.4 | $ 370.00 |
| 5/7/2021 | J. Nolan | Receipt of opposition of Defendant, Schoor. | 0.4 | $ 370.00 |
| 5/10/2021 | J. Nolan | Review the transcript from 3/16/21 hearing regarding Schoor Sur-Reply. | 0.3 | $ 277.50 |

| Date | Billing Party | Description of Service | Time | Amount |
|------|---------------|------------------------|------|--------|
| 5/12/2021 | J. Nolan | Draft Reply and Motion to Strike the Certification of Howard Schoor in opposition to Summary Judgment Motion; Legal research case law; Finalize. | 2.5 | $ 2,312.50 |
| 5/12/2021 | J. Nolan | Review recording of Schoor and Parmar conversation submitted to Court. | 0.5 | $ 462.50 |
| 5/12/2021 | J. Nolan | Draft Affidavit of Jeffrey P. Nolan in support of Schoor Reply. | 0.5 | $ 462.50 |
| 5/13/2021 | J. Nolan | Finalize Motion to Strike regarding Schoor. | 0.4 | $ 370.00 |
| 5/13/2021 | L. Canty | Further revise Objection and Request to Strike the Certification of Howard M. Schoor, finalize, coordinate filing of same, and serve same. | 1.9 | $ 874.00 |
|  |  |  | **41.9** | **$ 36,919.00** |

| Year | Hourly Rate | Billing Party |
|------|-------------|---------------|
| 2020 | $825.00 | Jeffrey P. Nolan |
| 2021 | $925.00 | Jeffrey P. Nolan |
| 2021 | $895.00 | Ilan D. Scharf |
| 2021 | $460.00 | La Asia Canty |

# EXHIBIT H

Account Number

424YJ459P
PACHULSKI
STANG ZIEHL
& JONES LLP
LOS
ANGELES
CA

4253Y4K2G
PACHULSKI
STANG ZIEHL
& JONES LLP -
COURTLINK
LOS
ANGELES
CA

| Date Range | Report Date |
|---|---|
| 11/01/2020 - | 6/16/2021 |

| | | | | | | | | CONTRACT USE | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLIENT | USER NAME | DATE | PRICING CATEGORY | ACTIVITY DESCRIP | TYPE OF ( | QUANTITY | GROSS AM | ADJUSTME | NET AMOU | TOTAL BEF( | TOTAL CHARGE | HIGH LEVEL CONTENT |
| 65004.003 | NOLAN, JEFFREY P. | APR-07-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -446.48 | 48.52 | 48.52 | 48.52 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | APR-07-2021 | LEXIS ANSWER CARD | LEXIS ANSWER CA | DOC ACC | 1 | 53 | -47.8 | 5.2 | 5.2 | 5.2 | US DERIVED CONTENT |
| 65004.003 | NOLAN, JEFFREY P. | APR-12-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.29 | 9.71 | 9.71 | 9.71 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | APR-14-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -448.45 | 46.55 | 46.55 | 46.55 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | APR-14-2021 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -357.18 | 38.82 | 38.82 | 38.82 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | APR-15-2021 | LEXIS | SEARCH | ACCESS C | 10 | 990 | -896.92 | 93.08 | 93.08 | 93.08 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | DEC-13-2020 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -270.05 | 26.95 | 26.95 | 26.95 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | FEB-04-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -178.53 | 19.47 | 19.47 | 19.47 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | FEB-09-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -535.59 | 58.41 | 58.41 | 58.41 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-11-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -88.64 | 10.36 | 10.36 | 10.36 | N/A |
| 65004.003 | MORI, ROLANDA | FEB-11-2021 | ****NO PRICING CATEGOR | COURTLINK DOCK | DOCKET I | 1 | 7 | -6.22 | 0.78 | 0.78 | 0.78 | N/A |
| 65004.003 | MORI, ROLANDA | FEB-11-2021 | DOCKETS | US DOCKETS | DOC ACC | 1 | 7 | -6.22 | 0.78 | 0.78 | 0.78 | US DOCKETS |
| 65004.003 | MORI, ROLANDA | FEB-11-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -176.04 | 21.96 | 21.96 | 21.96 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-12-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -177.26 | 20.74 | 20.74 | 20.74 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-15-2021 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -265.91 | 31.09 | 31.09 | 31.09 | N/A |
| 65004.003 | FORRESTER, LESLIE ANN | FEB-16-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -535.59 | 58.41 | 58.41 | 58.41 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-16-2021 | LEXIS | SEARCH | ACCESS C | 8 | 792 | -709.07 | 82.93 | 82.93 | 82.93 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-17-2021 | LEXIS | SEARCH | ACCESS C | 13 | 1287 | -1152.24 | 134.76 | 134.76 | 134.76 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | FEB-23-2021 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -265.91 | 31.09 | 31.09 | 31.09 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-04-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -448.44 | 46.56 | 46.56 | 46.56 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-06-2021 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -358.74 | 37.26 | 37.26 | 37.26 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-07-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.68 | 9.32 | 9.32 | 9.32 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-20-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -179.38 | 18.62 | 18.62 | 18.62 | N/A |
| 65004.003 | NOLAN, JEFFREY P. | JAN-28-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.68 | 9.32 | 9.32 | 9.32 | N/A |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 65004.003 | MORI, ROLANDA | JAN-29-2021 | DOCKETS | US DOCKETS | DOC ACC | 2 | 14 | -12.14 | 1.86 | 1.86 | 1.86 US DOCKETS |
| 65004.003 | MORI, ROLANDA | JAN-29-2021 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -343.63 | 52.37 | 52.37 | 52.37 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-01-2021 | LEXIS | SEARCH | ACCESS C | 15 | 1485 | -1338.58 | 146.42 | 146.42 | 146.42 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-02-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.23 | 9.77 | 9.77 | 9.77 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | JUN-04-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -447.71 | 47.29 | 47.29 | 47.29 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-06-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -535.43 | 58.57 | 58.57 | 58.57 N/A |
| 65004.003 | NOLAN, JEFFREY P. | JUN-13-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -89.23 | 9.77 | 9.77 | 9.77 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | JUN-14-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -447.71 | 47.29 | 47.29 | 47.29 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | JUN-14-2021 | TREATISES, SECONDARY M | US TREATISES | DOC ACC | 1 | 53 | -47.92 | 5.08 | 5.08 | 5.08 US ANALYTICAL MATERIALS |
| 65004.003 | NOLAN, JEFFREY P. | JUN-14-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -178.47 | 19.53 | 19.53 | 19.53 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAR-03-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -91.76 | 7.24 | 7.24 | 7.24 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAR-07-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -183.54 | 14.46 | 14.46 | 14.46 N/A |
| 65004.003 | MORI, ROLANDA | MAR-09-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -183.54 | 14.46 | 14.46 | 14.46 N/A |
| 65004.003 | GRAY, ERIN | MAR-15-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -91.76 | 7.24 | 7.24 | 7.24 N/A |
| 65004.003 | GRAY, ERIN | MAR-15-2021 | TREATISES, SECONDARY M | US TREATISES | DOC ACC | 4 | 380 | -352.23 | 27.77 | 27.77 | 27.77 US ANALYTICAL MATERIALS |
| 65004.003 | GRAY, ERIN | MAR-19-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -91.76 | 7.24 | 7.24 | 7.24 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-12-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -554.93 | 39.07 | 39.07 | 39.07 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-18-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -92.48 | 6.52 | 6.52 | 6.52 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-19-2021 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -277.46 | 19.54 | 19.54 | 19.54 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-20-2021 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -462.44 | 32.56 | 32.56 | 32.56 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | MAY-21-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -185.74 | 12.26 | 12.26 | 12.26 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-25-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -92.48 | 6.52 | 6.52 | 6.52 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | MAY-26-2021 | LEXIS | SEARCH | ACCESS C | 6 | 594 | -557.19 | 36.81 | 36.81 | 36.81 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | MAY-27-2021 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -92.87 | 6.13 | 6.13 | 6.13 N/A |
| 65004.003 | NOLAN, JEFFREY P. | MAY-28-2021 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -184.97 | 13.03 | 13.03 | 13.03 N/A |
| 65004.003 | MORI, ROLANDA | NOV-05-2020 | ****NO PRICING CATEGOR | COURTLINK DOCK | DOCKET | 2 | 14 | -12.78 | 1.22 | 1.22 | 1.22 N/A |
| 65004.003 | MORI, ROLANDA | NOV-05-2020 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -361.37 | 34.63 | 34.63 | 34.63 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-09-2020 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -347.79 | 48.21 | 48.21 | 48.21 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | NOV-11-2020 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -87.34 | 11.66 | 11.66 | 11.66 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | NOV-12-2020 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -87.34 | 11.66 | 11.66 | 11.66 N/A |
| 65004.003 | FORRESTER, LESLIE ANN | NOV-13-2020 | LEXIS | SEARCH | ACCESS C | 4 | 396 | -349.35 | 46.65 | 46.65 | 46.65 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-17-2020 | LEXIS | SEARCH | ACCESS C | 1 | 99 | -86.96 | 12.04 | 12.04 | 12.04 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-24-2020 | LEXIS | SEARCH | ACCESS C | 3 | 297 | -260.85 | 36.15 | 36.15 | 36.15 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-27-2020 | LEXIS | SEARCH | ACCESS C | 9 | 891 | -782.52 | 108.48 | 108.48 | 108.48 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-29-2020 | LEXIS | SEARCH | ACCESS C | 2 | 198 | -173.9 | 24.1 | 24.1 | 24.1 N/A |
| 65004.003 | NOLAN, JEFFREY P. | NOV-30-2020 | LEXIS | SEARCH | ACCESS C | 5 | 495 | -434.73 | 60.27 | 60.27 | 60.27 N/A |
| Total: | | | | | | | 19734 | -17829.43 | 1904.57 | 1904.57 | 1904.57 |

Billing data reports include estimated taxes. The official invoice includes taxes based on actual usage for usage-based services or/and default location for non-usage-based services at invoice period end.

# EXHIBIT I

## COSTS IN ADVERSARY
## ORION HEALTHCORP vs. HOWARD SCHOOR

| Date | Description | Cost |
|---|---|---|
| 3/12/2020 | Filing Fees | $350.00 |
| 12/31/2020 | Deposition of Howard Schoor | $2,282.55 |
| 10/14/20-5/13/21 | Lexis Research | $1,904.57 |
| | | $4,537.12 |

## David Feldman, A Veritext Corp - New York Region

Tel. 212-705-8585 Email: billing-dfw@veritext.com
Fed. Tax ID: 20-3132569



VERITEXT
LEGAL SOLUTIONS

| | |
|---|---|
| Bill To: Jeffrey Nolan Esq<br>Pachulski Stang Ziehl Young Jones & Weintraub LLP<br>10100 Santa Monica Blvd<br>Floor 13<br>Los Angeles, CA, 90067-4003 | **Invoice #:** 4747053<br>**Invoice Date:** 12/31/2020<br>**Balance Due:** $2,282.50 |

| | |
|---|---|
| **Case: Orion Healthcorp v. Howard Schoor (1871748(AST))** | **Proceeding Type: Depositions** |

Job #: 4373627    |    Job Date: 12/17/2020    |    Delivery: Normal

Location:  Miami, FL

Billing Atty:  Jeffrey Nolan Esq

Scheduling Atty:  Jeffrey Nolan Esq | Pachulski Stang Ziehl & Jones

| Witness: Howard M. Schoor | Quantity | Amount |
|---|---|---|
| Original with 1 Certified Transcript | 139.00 | $632.45 |
| Attendance | 1.00 | $105.00 |
| Exhibits | 45.00 | $20.25 |
| Realtime Services - Remote | 139.00 | $312.75 |
| Rough Draft | 139.00 | $271.05 |
| Veritext Virtual Primary Participants | 1.00 | $295.00 |
| Litigation Package (all Electronic Files) | 1.00 | $75.00 |
| Production & Processing | 1.00 | $48.00 |
| Concierge Technical Support | 1.00 | $150.00 |
| Exhibit Share | 1.00 | $345.00 |
| Electronic Delivery and Handling | 1.00 | $28.00 |

| Notes: | | |
|---|---|---|
| | **Invoice Total:** | **$2,282.50** |
| | **Payment:** | **$0.00** |
| | **Credit:** | **$0.00** |
| | **Interest:** | **$0.00** |
| | **Balance Due:** | **$2,282.50** |

TERMS:   Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.  No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

| | |
|---|---|
| Please remit payment to:<br>Veritext<br>P.O. Box 71303<br>Chicago IL 60694-1303<br>Fed. Tax ID: 20-3132569 | To pay online, go to www.veritext.com<br>Veritext accepts all major credit cards<br>(American Express, Mastercard, Visa, Discover) |

To pay online, go to www.veritext.com

**Invoice #:** 4747053
**Invoice Date:** 12/31/2020
**Balance Due:** $2,282.50

30558

# EXHIBIT J

**In re Orion**
**Howard Ehrenberg v. Howard M. Schoor**
**Adv. Proc. No. 20-0842**
**Attorneys Fees**

| Date | Atty | Description | Time | Cost |
|------|------|-------------|------|------|
| 12/3/2019 | JPN | | 0.1 | $79.50 |
| 12/5/2019 | JPN | | 1 | $ 795.00 |
| 12/6/2019 | JPN | | 0.9 | $ 715.50 |
| 12/9/2019 | JPN | | 0.7 | $ 556.50 |
| 12/9/2019 | MAM | | 0.4 | $ 150.00 |
| 12/9/2019 | MAM | | 0.2 | $ 75.00 |
| 12/24/2019 | JPN | | 0.6 | $ 477.00 |
| 1/3/2020 | JPN | | 1.3 | $ 1,072.50 |
| 1/3/2020 | MAM | | 1.2 | $ 474.00 |
| 1/19/2020 | JPN | | 1.5 | $ 1,237.50 |
| 1/28/2020 | JPN | | 0.3 | $ 274.50 |
| 1/29/2020 | JPN | | 0.3 | $ 274.50 |
| 1/29/2020 | MAM | | 0.3 | $ 118.50 |
| 2/12/2020 | JPN | | 0.5 | $ 412.50 |
| 2/12/2020 | JPN | | 0.3 | $ 247.50 |
| 3/6/2020 | JPN | | 0.5 | $ 412.50 |
| 3/6/2020 | JPN | | 0.5 | $ 412.50 |
| 3/6/2020 | MAM | | 0.2 | $ 79.00 |
| 3/9/2020 | JPN | | 1.3 | $ 1,072.50 |
| 3/10/2020 | JPN | | 1 | $ 825.00 |
| 4/13/2020 | JPN | | 0.4 | $ 330.00 |



| Date | Initials | | Hours | | Amount |
|------|----------|---|-------|---|--------|
| 4/13/2020 | JPN | | 0.3 | $ | 247.50 |
| 4/13/2020 | JPN | | 0.8 | $ | 660.00 |
| 4/16/2020 | JPN | | 0.3 | $ | 247.50 |
| 4/30/2020 | JPN | | 1.2 | $ | 990.00 |
| 4/30/2020 | JPN | | 1.5 | $ | 1,237.50 |
| 4/30/2020 | JPN | | 1.3 | $ | 1,072.50 |
| 5/1/2020 | JPN | | 0.5 | $ | 412.50 |
| 5/28/2020 | JPN | | 0.2 | $ | 165.00 |
| 7/8/2020 | JPN | | 0.3 | $ | 247.50 |
| 8/13/2020 | JPN | | 0.2 | $ | 165.00 |
| 8/18/2020 | JPN | | 0.3 | $ | 247.50 |
| 8/26/2020 | JPN | | 0.3 | $ | 247.50 |
| 8/26/2020 | JPN | | 0.3 | $ | 247.50 |
| 9/8/2020 | JPN | | 0.4 | $ | 330.00 |
| 9/21/2020 | JPN | | 0.2 | $ | 165.00 |
| 10/5/2020 | JPN | | 0.4 | $ | 330.00 |
| 10/6/2020 | JPN | | 0.4 | $ | 330.00 |
| 10/7/2020 | JPN | | 1 | $ | 825.00 |
| 10/8/2020 | JPN | | 0.4 | $ | 330.00 |
| 10/9/2020 | JPN | | 0.4 | $ | 330.00 |
| 10/14/2020 | JPN | | 1 | $ | 825.00 |
| 10/14/2020 | JPN | | 0.8 | $ | 660.00 |
| 10/14/2020 | JPN | | 0.5 | $ | 412.50 |
| 10/14/2020 | JPN | | 0.5 | $ | 412.50 |
| 10/20/2020 | JPN | | 0.6 | $ | 495.00 |
| 10/20/2020 | JPN | | 0.7 | $ | 577.50 |
| 11/4/2020 | JPN | | 0.4 | $ | 330.00 |

| Date | | | | Amount |
|---|---|---|---|---|
| 11/11/2020 | JPN | | 0.6 | $ 495.00 |
| 11/11/2020 | JPN | | 1 | $ 825.00 |
| 11/11/2020 | JPN | | 0.5 | $ 412.50 |
| 11/11/2020 | JPN | | 0.2 | $ 165.00 |
| 11/12/2020 | JPN | | 1 | $ 825.00 |
| 11/12/2020 | JPN | | 0.6 | $ 495.00 |
| 11/16/2020 | JPN | | 0.3 | $ 247.50 |
| 11/20/2020 | JPN | | 0.4 | $ 330.00 |
| 11/20/2020 | JPN | | 0.5 | $ 412.50 |
| 11/20/2020 | JPN | | 1 | $ 825.00 |
| 11/24/2020 | JPN | | 0.8 | $ 660.00 |
| 11/25/2020 | JPN | | 0.4 | $ 330.00 |
| 12/2/2020 | JPN | | 1.50 | $ 1,237.50 |
| 12/2/2020 | JPN | | 0.3 | $ 247.50 |
| 12/3/2020 | JPN | | 1 | $ 825.00 |
| 12/3/2020 | JPN | | 1 | $ 825.00 |
| 12/4/2020 | JPN | | 0.4 | $ 330.00 |
| 12/9/2020 | JPN | | 0.5 | $ 412.50 |
| 12/10/2020 | JPN | | 0.5 | $ 412.50 |
| 12/10/2020 | JPN | | 0.3 | $ 247.50 |
| 12/11/2020 | JPN | | 2 | $ 1,650.00 |

| Date | Code | | Hours | Amount |
|---|---|---|---|---|
| 12/11/2020 | JPN | | 0.3 | $ 247.50 |
| 12/11/2020 | LSC | | 4.2 | $ 1,932.00 |
| 12/13/2020 | JPN | | 1 | $ 825.00 |
| 12/13/2020 | JPN | | 0.8 | $ 660.00 |
| 12/14/2020 | JPN | | 1.2 | $ 990.00 |
| 12/15/2020 | JPN | | 1 | $ 825.00 |
| 12/16/2020 | JPN | | 2.3 | $ 1,897.50 |
| 12/17/2020 | JPN | | 1.4 | |
| 12/17/2020 | JPN | | 3.6 | $ 2,970.00 |
| 12/17/2020 | LSC | | 4 | $ 1,840.00 |
| 12/21/2020 | JPN | | 0.4 | $ 330.00 |
| 12/21/2020 | JPN | | 0.2 | $ 165.00 |
| 12/22/2020 | JPN | | 0.5 | $ 412.50 |
| 12/23/2020 | JPN | | 0.3 | $ 247.50 |
| 12/23/2020 | JPN | | 1 | $ 825.00 |
| 12/29/2020 | JPN | | 1 | $ 825.00 |
| 12/30/2020 | JPN | | 0.9 | $ 742.50 |
| 12/31/2020 | JPN | | 1.3 | $ 1,072.50 |
| 1/14/2021 | JPN | | 0.8 | $ 740.00 |
| 1/14/2021 | JPN | | 0.4 | $ 370.00 |

| Date | Code | | Hours | Amount |
|------|------|---|-------|--------|
| 1/14/2021 | JPN | | 0.2 | $ 185.00 |
| 1/14/2021 | IDS | | 0.5 | $447.50 |
| 1/15/2021 | JPN | | 0.5 | $ 462.50 |
| 1/18/2021 | JPN | | 0.6 | $ 555.00 |
| 1/18/2021 | JPN | | 0.4 | $ 370.00 |
| 1/18/2021 | LSC | | 1.1 | $ 506.00 |
| 1/20/2021 | | | 0.4 | $ 370.00 |
| 1/21/2021 | | | 0.3 | $ 277.50 |
| 1/21/2021 | JPN | | 0.3 | $ 277.50 |
| 1/22/2021 | JPN | | 0.3 | $ 277.50 |
| 1/25/2021 | JPN | | 0.3 | $ 277.50 |
| 1/28/2021 | JPN | | 0.4 | $ 370.00 |
| 1/29/2021 | JPN | | 0.8 | $ 740.00 |
| 1/29/2021 | JPN | | 0.6 | $ 555.00 |
| 1/29/2021 | LSC | | 2.5 | $ 1,150.00 |
| 2/1/2021 | JPN | | 0.4 | $ 370.00 |
| 2/1/2021 | JPN | | 0.5 | $ 462.50 |
| 2/2/2021 | JPN | | 0.4 | $ 370.00 |
| 2/2/2021 | JPN | | 2 | $ 1,850.00 |
| 2/10/2021 | JPN | | 0.4 | $ 370.00 |

| Date | Type | | Hours | Amount |
|---|---|---|---|---|
| 2/10/2020 | JPN | | 0.2 | $ 185.00 |
| 2/11/2021 | JPN | | 1.6 | $ 1,480.00 |
| 2/11/2021 | JPN | | 0.2 | $ 185.00 |
| 2/12/2021 | JPN | | 0.6 | $ 555.00 |
| 2/15/2021 | JPN | | 3.5 | $ 3,237.50 |
| 2/16/2021 | JPN | | 2.5 | $ 2,312.50 |
| 2/16/2021 | JPN | | 0.4 | $ 370.00 |
| 2/16/2021 | JPN | | 0.3 | $ 277.50 |
| 2/16/2021 | JPN | | 0.7 | $ 647.50 |
| 2/16/2021 | IDS | | 1.5 | $1,342.50 |
| 2/16/2021 | JPN | | 0.8 | $740.00 |
| 2/16/2021 | JPN | | 0.4 | $370.00 |
| 2/17/2021 | JPN | | 3 | $ 2,775.00 |
| 2/18/2021 | JPN | | 1 | $ 925.00 |
| 2/19/2021 | JPN | | 0.5 | $ 462.50 |
| 2/19/2021 | JPN | | 0.5 | $ 462.50 |
| 2/26/2021 | JPN | | 0.3 | $ 277.50 |
| 3/3/2021 | JPN | | 0.6 | $ 555.00 |
| 3/4/2021 | JPN | | 0.6 | $ 555.00 |

| Date | Type | | Hours | Amount |
|------|------|---|-------|--------|
| 3/4/2021 | JPN | | 3.5 | $ 3,237.50 |
| 3/5/2021 | JPN | | 1.2 | $ 1,110.00 |
| 3/9/2021 | JPN | | 1.3 | $ 1,202.50 |
| 3/16/2021 | JPN | | 2.5 | $ 2,312.50 |
| 3/18/2021 | JPN | | 0.5 | $ 462.50 |
| 3/19/2021 | JPN | | 0.3 | $ 277.50 |
| 3/19/2021 | LSC | | 1.3 | $ 598.00 |
| 4/6/2021 | JPN | | 0.4 | $ 370.00 |
| 4/6/2021 | JPN | | 0.4 | $ 370.00 |
| 4/7/2021 | JPN | | 0.2 | $ 185.00 |
| 5/7/2021 | JPN | | 0.4 | $370.00 |
| 5/7/2021 | JPN | | 0.3 | $277.50 |
| 5/10/2021 | JPN | | 0.3 | $277.50 |
| 5/12/2021 | JPN | | 2.5 | $2,312.50 |
| 5/12/2021 | JPN | | 0.5 | $462.50 |
| 5/12/2021 | JPN | | 0.5 | $462.50 |
| 5/12/2021 | JPN | | 0.3 | $277.50 |
| 5/13/2021 | JPN | | 0.4 | $370.00 |
| 5/13/2021 | JPN | | 0.4 | $370.00 |
| 5/13/2021 | LSC | | 1.9 | $1,334.00 |
| | | | 121.3 | $ 97,356.50 |